# EXHIBIT A

Trent Copeland (State Bar No. 136890)
    tcopeland@ellisgeorge.com
Keian Vahedy (State Bar No. 316708)
    kvahedy@ellisgeorge.com
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

K&L GATES LLP
Ryan Q. Keech (State Bar No. 280306)
    Ryan.Keech@klgates.com
Kevin S. Asfour (State Bar No. 228993)
    Kevin.Asfour@klgates.com
Zachary T. Timm (State Bar No. 316564)
    Zach.Timm@klgates.com
10100 Santa Monica Blvd., 8th Floor
Los Angeles, CA 90067
Telephone: (310) 552-5000
Facsimile: (310) 552-5001

Attorneys for Plaintiff Jacquelyn "Jackie" Lacey
(in her individual capacity and as trustee of the D
and J Lacey Family Trust)
Estate of David Lacey

Electronically FILED by
Superior Court of California,
County of Los Angeles
5/21/2024 12:23 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By Y. Ayala, Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| JACQUELYN "JACKIE" LACEY, in her individual capacity; and JACQUELYN "JACKIE" LACEY as trustee of the D and J Lacey Family Trust dated November 23, 2016,<br><br>          Plaintiffs,<br><br>    vs.<br><br>STATE FARM GENERAL INSURANCE COMPANY, an Illinois corporation, and DOES 1-50, inclusive,<br><br>          Defendants. | Case No. 24STCV12766<br><br>**COMPLAINT FOR (1) BREACH OF INSURANCE CONTRACT; AND (2) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (BAD FAITH)**<br><br>Trial Date: None Set |

2398872

COMPLAINT FOR (1) BREACH OF INSURANCE CONTRACT; AND (2) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (BAD FAITH)

Exhibit A
Page 8

Jackie Lacey, in her individual capacity, and as Trustee of The D and J Lacey Family Trust dated November 23, 2016, which is the successor in interest to the late David Lacey (collectively, the "Laceys" or "Plaintiffs"),[1] for claims against defendants State Farm General Insurance Company ("State Farm") and Does 1 through 50, allege as follows:

## PRELIMINARY STATEMENT

1. State Farm is an insurance giant. As a Fortune 500 company and the largest home insurer in California, the company has woven its presence into the fabric of American culture. Their slogan "Like a good neighbor, State Farm is there" is as ubiquitous as its trademarked three red oval emblems.

2. But it is their slogan – which encapsulates a promise, a sense of reliability and a warm, neighborly care that is betrayed by their sinister, deceitful, and unlawful conduct towards customers when they are needed most. To be sure, if State Farm was your neighbor, they would not be one you would want.

3. Indeed, when Jackie and David Lacey needed the reliability and care that State Farm touts in its glossy advertisements, State Farm abandoned them leaving them to largely fend for themselves.

4. As a career public servant, and the county of Los Angeles' chief law enforcement officer, Jackie Lacey knew the value of a secure home. And having paid insurance premiums to State Farm for over a decade, the Laceys assumed that their "neighborly" insurance company would stand by them. But that was not the insurance company they had. They had State Farm.

5. When the Laceys' property was invaded by a crowd of "activists," who impermissibly accessed their porch in the darkness of an early winter morning and repeatedly rang their doorbell, Mr. Lacey had little choice but to confront them, and instructed them to leave.

---

[1] David Lacey is the now-deceased husband of Jackie Lacey. Mr. Lacey passed away during the course of the underlying action, on September 5, 2022. When referring to events that occurred *prior* to Mr. Lacey's death, the terms "Laceys" and "Plaintiffs" include David Lacey and Jackie Lacey. When referring to events that occurred *after* Mr. Lacey's death, those terms mean Jackie Lacey in her individual capacity and in her capacity as Trustee of the D and J Lacey Family Trust dated November 23, 2016.

2398872

-1-

COMPLAINT FOR (1) BAD FAITH BREACH OF INSURANCE CONTRACT AND (2) BAD FAITH BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Although he (lawfully) was holding a gun, he never fired it, nor made any physical contact with the activists. He had no intention or expectation of causing them any harm; he simply wanted them to leave. And they did leave—but subsequently filed a civil action against the Laceys, alleging, *inter alia*, claims there were plainly covered under the Lacey's State Farm insurance policies. In response to the lawsuit, State Farm provided a defense to Mrs. Lacey, but simply abandoned Mr. Lacey and declined to defend him or otherwise provide him with coverage – erroneously claiming that his alleged conduct was not within the terms of the policy.

6. Only after he hired his own defense lawyers did State Farm begrudgingly and belatedly agree to defend Mr. Lacey many months later, but only under a "reservation of rights" and subject to State Farm's unilaterally imposed condition that the insurer could withdraw the defense at any time.

7. It was against this backdrop that Mr. Lacey retained his own counsel with the (eventual) explicit consent of State Farm who – again begrudgingly – agreed to pay the attorneys' fees arising out of his retention of counsel, as the insurer is obligated to do under its insurance policies and California law. The Laceys assumed that State Farm would pay those reasonable attorneys' fees as they had been promised by their insurance company. But again, this was not the insurance company they had. They had State Farm.

8. Within months of the representation commencing, State Farm either "slow paid," "low paid" or, as time went on, "no paid" Mr. Lacey's legal fees – leaving the Laceys exposed to massive legal expenses which State Farm had agreed to pay and was obligated by law to pay.

9. But this unjustified and malicious behavior was only the beginning. Because State Farm's conduct became increasingly worse. Even sinister.

10. As the Laceys' trial team began ramping up for trial to defend against the claims of the "activists," State Farm initiated backdoor negotiations through its panel counsel – who State Farm demanded be given some access to Mr. Lacey's attorneys' meetings and work product. Through this lawyer, State Farm was able to leverage his "access" to the Lacey trial team to surreptitiously negotiate a settlement with the activists' lawyer of their claims against Mr. Lacey— all without the knowledge, involvement or consent of the insureds or their independent counsel, in

2398872                                   -2-
COMPLAINT FOR (1) BAD FAITH BREACH OF INSURANCE CONTRACT AND (2) BAD FAITH BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Exhibit A
Page 10

1  violation of State Farm's legal obligations to its insureds.

## THE PARTIES

11. Plaintiff Jacqueline "Jackie" Lacey is an individual and brings this action in her individual capacity and also in her capacity as Trustee of the D and J Lacey Family Trust dated November 23, 2016 ("Trust"), which is the successor in interest to David Lacey. David Lacey was Jackie Lacey's husband, who passed away on September 5, 2022, during the course of the underlying action.

12. Plaintiffs are informed and believe that defendant State Farm is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Bloomington, Illinois.

13. Plaintiffs are informed and believe, and thereon allege, that State Farm is and was an insurer that issued and delivered policies of home insurance in the State of California.

14. Plaintiffs are unaware of the true names and capacities of each of the defendants designated and sued herein as a Doe defendant. Plaintiffs are informed and believe, and thereon allege, that each of the defendants designated herein as a Doe is in some manner responsible for the damages and injuries alleged in this complaint. Upon ascertaining the true names and capacities of the Doe defendants, Plaintiffs will amend this complaint to state them.

15. Plaintiffs are informed and believe, and thereon allege, that, at all times relevant hereto, each of the defendants was the agent, servant, and/or employee of each of the other defendants and was acting within the scope of his/her/its agency, servitude, and/or employment.

## THE INSURANCE POLICIES

16. By the insurance policy numbered 71-C7-M007-7, with an applicable term of February 22, 2020, to February 22, 2021 (the "Homeowners Policy"), Plaintiffs, as named insureds, held, and continue to hold, homeowners' insurance through State Farm. The Homeowners Policy provides, *inter alia*, Personal Liability coverage on an occurrence basis during the period encompassing the alleged events on which the underlying plaintiffs sued the Laceys.

    a. The Homeowners Policy's Personal Liability coverage extends to any claim or suit that is brought against an insured for bodily injury or property damage caused by an

2398872                                -3-
COMPLAINT FOR (1) BAD FAITH BREACH OF INSURANCE CONTRACT AND (2) BAD FAITH BREACH OF
IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Exhibit A
Page 11

1  "occurrence." *See* Coverage L – Personal Liability of State Farm Policy.  The policy defines "occurrence" to mean "an accident, including exposure to conditions, which first results in bodily injury."  "Bodily injury" is defined to include, *inter alia*, "physical injury."

      b.    The limit of the Homeowners Policy's Personal Liability coverage is $300,000, not including defense fees and costs.

17.    By the insurance policy numbered 71-GB-A528-2, with an applicable term of June 12, 2019, to June 12, 2020 (the "Umbrella Policy"), Plaintiffs, as named insureds, held, and continue to hold, excess liability insurance through State Farm.  The Umbrella Policy provides, *inter alia*, certain liability coverages on an occurrence basis during the period encompassing the alleged events on which the underlying plaintiffs sued the Laceys.

      a.    The Umbrella Policy's coverages supplement and broaden the liability coverage of the Homeowner's Policy.  Specifically, in addition to covering the same "bodily injury" and "property damage" covered by the Homeowner's Policy (with additional limits), the Umbrella policy also provides coverage for any claim or suit that is brought against an insured for "personal injury."  The Umbrella Policy defines "personal injury" as an "injury other than bodily injury arising out of one or more of the following offenses: . . . false imprisonment . . . ."

      b.    The applicable limit of the Umbrella Policy is $1,000,000, not including defense fees and costs.

18.    The State Farm Policy and the Umbrella Policy are collectively referred to herein as the "Insurance Policies."

19.    All premiums for the Insurance Policies were paid by Plaintiffs.

**THE UNDERLYING INCIDENT AND CLAIMS AGAINST THE INSUREDS**

20.    At approximately 5:00 a.m. on March 2, 2020, more than 30 self-described protesters arrived at the Laceys' home and began loudly demonstrating.  Three of the protesters approached the Laceys' front door and repeatedly rang the doorbell.  Mr. Lacey, fearful for the safety of his family, eventually opened the door, holding a handgun that he lawfully possessed.  He instructed the protesters to get off his porch.  Mr. Lacey fired no shots; made no physical contact with any of the protesters; had no intention of harming the protesters; and had no expectation that they would

2398872
-4-
COMPLAINT FOR (1) BAD FAITH BREACH OF INSURANCE CONTRACT AND (2) BAD FAITH BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Exhibit A
Page 12

suffer any harm as a result of his actions (nor would any reasonable person have such an expectation). He simply wanted them to leave. The protesters ultimately left the property.

21. On or about October 19, 2020, the three protesters who had confronted Mr. Lacey at his front door, Melina Abdullah, Dahlia Ferlito, and Justin Marks (collectively, "Underlying Plaintiffs"), sued the Laceys in the Los Angeles Superior Court action styled *Abdullah, et al. v. Lacey, et al.* Case No. 20STCV40080 ("Abdullah Action"). Immediately upon learning of the Abdullah Action, the Laceys reported it to State Farm.

22. The Abdullah Action entailed allegations against the Laceys that fell within the Insurance Policies' liability coverages and policy periods, thereby triggering State Farm's duty to defend them in the action. Among other things, the original complaint in the Abdullah Action alleged claims for negligence, civil rights violations, and assault and battery, and sought to recover damages for, *inter alia*, bodily injury stemming from the above-described incident, thereby implicating the Insurance Policies' liability coverages. Moreover, the Underlying Plaintiffs later amended their complaint to add a claim for false imprisonment, which is expressly included among the Umbrella Policy's liability coverages.

23. The three Underlying Plaintiffs collectively demanded the limits of the Insurance Policies from the outset of the Abdullah Action. State Farm refused to fund such a settlement. Thereafter, the losses suffered by the Laceys, as a result of defending against a lawsuit occasioned by this conduct, totaled in excess of $2.1 million.

**STATE FARM'S PATTERN OF BAD FAITH CONDUCT**

24. From 2020 to present, the Laceys repeatedly requested that State Farm defend and indemnify them against the claims in the Abdullah Action. But State Farm was, and continues to be, defiant. Knowing the Laceys did not have private counsel at the time, State Farm fabricated excuse after excuse to delay and shirk its coverage obligations regarding the Abdullah Action, including mischaracterizing the nature of the claims at dispute, misrepresenting the terms of applicable coverage, and later even hiring outside counsel to intimidate the Laceys from seeking coverage altogether.

25. Although State Farm eventually retained panel counsel (Harry Safarian of The

2398872                                     -5-
COMPLAINT FOR (1) BAD FAITH BREACH OF INSURANCE CONTRACT AND (2) BAD FAITH BREACH OF
IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Exhibit A
Page 13

Safarian Firm, APC) on or about November 26, 2020, to defend Jackie Lacey, State Farm expressly instructed panel counsel not to defend David Lacey.

26. State Farm's separation of the insureds in this manner would ultimately prove to be a particularly pernicious example of its bad faith. Separating out the defense of each of its insureds was not in the best interests of the case: it was in the best interests of *State Farm*. Were State Farm acting in good faith and in accordance with the terms of its policy, it would have recognized true best interests of each insured would be served by defending them *together*. But it was not acting in good faith. What was more important to State Farm was defending this case on the cheap. In fact, State Farm was told by its panel counsel that it would take a budget of *$30,000* through *trial* to assert the defense that Mrs. Lacey was not downstairs at the time of the incident. It did not care that this defense prejudiced *the interests of both insureds by implicitly conceding the impropriety of the conduct* in a way that supported its *coverage position*. And it *expressly instructed* Mr. Safarian to not engage in the far more time and resource-intensive question of defending the *actual conduct* – which involved complex legal and constitutional questions of law.

27. Thereafter, on December 15, 2020, State Farm formally denied David Lacey's tender of defense, disclaiming any coverage obligations to him. The decision was shocking to say the least. Plaintiffs had already paid State Farm thousands of dollars in premiums only to be denied coverage when they needed it the most. But State Farm would not and did not budge. The job of defending the underlying conduct would be left to the insureds alone, paying for Mr. Lacey's defense. And it was a job that would be made even *more difficult throughout the case* by State Farm's simultaneous insistence on its panel counsel's reliance on the "not downstairs" defense.

28. For its stated reasons in denying coverage outright, State Farm provided little more than excerpts of certain portions of the Insurance Policies. What's more, the very excerpts of the applicable policies that State Farm based its denial of coverage on actually proved that State Farm was always required to defend Mr. Lacey in the Abdullah Action. For example, the Underlying Plaintiffs were seeking damages for "bodily injury" under their causes of action for negligence. Specifically, they alleged "intense and severe pain and suffering to their minds **and bodies**." As noted above, Mr. Lacey fired no shots; made no physical contact with any of the protesters; had no

2398872                                                -6-
COMPLAINT FOR (1) BAD FAITH BREACH OF INSURANCE CONTRACT AND (2) BAD FAITH BREACH OF
IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Exhibit A
Page 14

intention of harming the protesters; and had no expectation that they would suffer any harm as a result of his actions—nor would any reasonable person have such an expectation. Mr. Lacey's sole aim and expectation was that the protesters would leave, which they did. As such, any injury that the protesters allegedly suffered was purely accidental, unintended, and unforeseen from the standpoint of Mr. Lacey, and thus expressly covered under the Insurance Policies' coverage for bodily injury. Moreover, the Underlying Plaintiffs alleged various facts to support their claim that Mr. Lacey acted "negligently" toward them.

29. After State Farm's denial of coverage, the Laceys had no choice but to incur additional expenses by hiring counsel on their own, Ellis George LLP (formerly known as Browne George Ross O'Brien Annaguey & Ellis LLP) ("Ellis George"), to defend David Lacey in the Underlying Action and protect his interests.

30. For several months, the Laceys and Ellis George wrote to State Farm – in December 2020, January 2021, and February 2021 – repeatedly articulating what should have been obvious to State Farm, *i.e.*, that the insurer was obligated to defend David Lacey in the Underlying Action and demanding that State Farm reconsider its denial of coverage. State Farm consistently refused.

31. State Farm's delay tactics and refusals were entirely without justification. In a letter dated February 19, 2021, Ellis George issued to State Farm final notice of the error of its ways. The letter detailed the illegality of State Farm's conduct, including its consequential waiver of any ability to participate in or control Mr. Lacey's defense in the Abdullah Action because of its failure to promptly acknowledge and fulfill its defense obligations. *Amtel Corp. v. St. Paul Fire & Marine*, 426 F. Supp. 2d 1039, 1047-48 (N.D. Cal. 2005) (an insurer breaches its duty to defend, it "forfeit[s] its right to participate in or control the defense," whether by limiting its damages under California Civil Code § 2860 or otherwise); *see also State of California v. Pacific Indem. Co.*, 63 Cal. App. 4th 1535, 1544 (2d Dist. 1998) (same).

32. It was not until March 12, 2021, *when the Abdullah Action had already been pending for approximately five months*, that State Farm reluctantly agreed to extend a limited defense to Mr.

2398872
-7-
COMPLAINT FOR (1) BAD FAITH BREACH OF INSURANCE CONTRACT AND (2) BAD FAITH BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Exhibit A
Page 15

Lacey – subject to a purported reservation of rights[2] and a significant hourly rate reduction (both unilaterally imposed by State Farm) allegedly pursuant to Section 2860 of the California Civil Code, leaving Mr. Lacey responsible for the difference between the reasonable hourly rates actually charged by Ellis George versus the reduced rates State Farm agreed to pay. But by that point, State Farm had already forfeited any right to control Mr. Lacey's defense or to impose rate-capping under Section 2860 by virtue of its prolonged and improper denial of coverage for him. In short, State Farm had abandoned its insured for more than five months, and the damage was already done. Thereafter, State Farm's disturbing tactics only intensified from March 2021 to present.

33. Indeed, despite its belated and inadequate promise to pay a *portion* of Mr. Lacey's defense fees, State Farm failed even to do that. State Farm went from low paying, to slow paying, and ultimately *not paying* a dime for Mr. Lacey's attorneys' fees – leaving the Laceys exposed to massive legal expenses. Mrs. Lacey as Trustee of the Trust (and as a beneficiary thereof), in particular, remains damaged as she is left holding the bag for Mr. Lacey's (and later the Trust's) attorneys' fees.

34. Most striking about State Farm's bad faith refusal and breach of its duty to defend Mr. Lacey is that State Farm assumed its duty to defend and indemnify his wife, Mrs. Lacey, which duty arose from the same complaint, allegations, and causes of action asserted against Mr. Lacey. *See Campbell v. Superior Court,* 44 Cal. App. 4th 1308, 1319 (1996) (observing that "if an insurer unreasonably fails to defend, it has breached the implied covenant of good faith and fair dealing"). By breaching its duty to defend Mr. Lacey, State Farm forfeited its right to participate in his defense.

---

[2] In its reservation of rights letter, State Farm purported to "reserve the right to withdraw this defense if we determine there is no duty to defend or indemnify you." State Farm further stated that "[i]f we withdraw from the defense, we will provide you with the reasons for such decision," and that "[a]ny expense incurred in your defense *from that point forward* will be your personal responsibility." (Emphasis added.) Notably, however, State Farm did *not* purport reserve the right to seek *reimbursement* from Mr. Lacey for any defense fees and costs or settlements paid by State Farm that it might later allege were allocable to non-covered claims, as it was required to do in order to preserve any such ability. *See Buss v. Superior Court*, 16 Cal. 4th 35 (1997); *Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal. 4th 489 (2001).

2398872
-8-
COMPLAINT FOR (1) BAD FAITH BREACH OF INSURANCE CONTRACT AND (2) BAD FAITH BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Exhibit A
Page 16

35. Mr. Lacey and Ellis George were left to fend for themselves in mounting a defense in the Abdullah Action. And effectuating a vigorous defense is what they did:

    a. First, Mr. Lacey successfully demurred to three iterations of the Underlying Plaintiffs' complaint, each time defeating their second cause of action for civil rights violations. Notably, in its June 23, 2021, ruling, the court held that the Underlying Plaintiffs alleged "free speech rights" do not extend to the Laceys' private property.

    b. Second, Mr. Lacey's counsel filed a Motion for Summary Adjudication ("MSA") on November 4, 2022, seeking adjudication of (1) the fifth cause of action for "False Imprisonment" because he did not act to confine or deprive the Underlying Plaintiffs of their freedom of movement and (2) the Underlying Plaintiffs' punitive damages claims because they do not survive his death as a matter of law. The court agreed. On February 7, 2023, Mr. Lacey prevailed on both issues and the court entered its order.

    c. Third, the Underlying Plaintiffs' negligence cause of action was voluntarily dismissed.

    d. Fourth, the Underlying Plaintiffs could not establish causation for their emotional distress claims.

    e. Fifth, the Underlying Plaintiffs' case boiled down to two causes of action: assault and intentional infliction of emotional distress, and they raised the possibility of dropping the second claim shortly before trial.

36. Meanwhile, in or about July 2023, State Farm, acting via its panel counsel, extended settlement offers on behalf of Jackie Lacey, only. The Underlying Plaintiffs accepted those settlement offers, and accordingly dismissed Mrs. Lacey from the case as a defendant in her individual capacity.

37. Notwithstanding Mr. Lacey's undeniable success through Ellis George, State Farm – knowing it acted unlawfully in failing to provide a timely and reasonable defense to Mr. Lacey – was determined to protect its own interests at the expense of Mr. Lacey's defense. This time State Farm would use its hired gun to do the dirty work: The Safarian Firm, APC, which had been defending Jackie Lacey as panel counsel appointed and engaged by State Farm.

2398872 -9-
COMPLAINT FOR (1) BAD FAITH BREACH OF INSURANCE CONTRACT AND (2) BAD FAITH BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Exhibit A
Page 17

38. State Farm – with its panel counsel – hatched a plan to exert some control and influence in Ellis George's representation of the Estate of David Lacey.[3] The plan was simple but audacious. State Farm only needed to have their panel counsel insert himself – at State Farm's direction – into The Estate of David Lacey's trial team.

39. On July 20, 2023, and without any advance notice, Harry Safarian of The Safarian Firm, APC, announced to Ellis George – at the behest of State Farm – that he was associating into the Abdullah Action as associate counsel for the Estate of David Lacey.

> Gang,
>
> I have been instructed to stay on board to assist with trial as associate counsel for the Estate of David Lacey. I will prepare an association of attorneys. I'm around today if you all want to discuss logistics.
>
> Harry A. Safarian
> THE SAFARIAN FIRM, APC
> 3150 Montrose Avenue
> Glendale, California 91214
> 818.334.8528
> 818.334.8107 Fax

Not only was this announcement highly inappropriate in light of State Farm's earlier forfeiture of its right to participate in or control the defense of the Abdullah Action, it was also unethical because – again at the instruction of State Farm – Mr. Safarian revealed (i) that he was already privately communicating with and soliciting the Estate of David Lacey's representative, Jackie Lacey (after her role as an individual defendant had ended), without Ellis George's knowledge or consent, (ii) that he was going to appear in court and on the record on behalf of Mr. Lacey, and (iii) that he would interject himself in all privileged matters involving Mr. Lacey's defense for trial.

---

[3] As noted above, the correct successor in interest to David Lacey following his death is the Trust (acting by and through Mrs. Lacey as Trustee). In the Abdullah Action, however, following the death of Mr. Lacey, the Underlying Plaintiffs proceeded with their claims against him by erroneously naming "The Estate of David Lacey" as his successor.

2398872   -10-
COMPLAINT FOR (1) BAD FAITH BREACH OF INSURANCE CONTRACT AND (2) BAD FAITH BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Exhibit A
Page 18

> Ryan, thanks for your email.
>
> My plan is to appear on Friday and so inform the Court. State Farm is funding the defense and is not going to budge on the subject. Also, Jackie is in support of my staying on and I intend to proceed accordingly. It is not a matter in which I have a choice, though it certainly is my privilege.

40. To make matters worse, Mr. Safarian also revealed on July 20, 2023, that he was having private conversations with opposing counsel, Carl Douglas, in the Abdullah Action. Mr. Safarian and Mr. Douglas were privately discussing Mr. Lacey's defense strategies and settlement logistics as well.

41. In addition to its willful disruption of Mr. Lacey's defense strategies in the Abdullah Action, State Farm continued to push its agent, Mr. Safarian, to further sabotage the merits of Mr. Lacey's defense for trial. So much so, that Mr. Lacey's representative – Jackie Lacey – was forced to intervene in July 2023 and make clear to Mr. Safarian that State Farm was not allowed to make any key, strategic decisions in her late husband's case. Mrs. Lacey instructed Mr. Safarian that only her independent counsel, comprised of Ellis George LLP and K&L Gates, LLP (collectively "Independent Counsel"),[4] had complete authority over all aspects of the Estate of David Lacey's defense. Still, State Farm refused to honor its insureds' wishes and doubled down on its improper efforts to exert control over the defense of Mr. Lacey.

---

[4] In the midst of the defense of the Abdullah Action, one of the principal Ellis George litigators defending Mr. Lacey, Ryan Keech, moved from Ellis George to the K&L Gates firm. Nonetheless, given his years-long experience with the case, Mr. Keech remained in his role as a member of Mr. Lacey's defense team, and continued to work on the case seamlessly with his former colleagues at Ellis George.

2398872                                -11-
COMPLAINT FOR (1) BAD FAITH BREACH OF INSURANCE CONTRACT AND (2) BAD FAITH BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Exhibit A
Page 19

42. Mr. Safarian's conduct continued with even more duplicitous behavior – which now included arranging to pay for plaintiff's counsel's meals during so-called "chance" encounters:

> a. I was having lunch with a client at a nice restaurant near the Stanley Mosk Courthouse in late-June 2023 (before the settlement of Ms. Lacey). I observed a young female associate of Mr. Douglas having lunch with her mother. I asked the server to put their meal on my tab, walked over, and told the mother she had much to be proud of, and then walked away. I did not discuss the Abdullah/Lacey matter in that exchange. Mr. Douglas later expressed thanks and told me he was surprised that I actually had a "heart." So that there is no suggestion of nefarious motives, I would have likely done the same for you if I saw you dining with your mother around that time, as that is just who I am.
>
> b. I saw Mr. Douglas at Tres Hermanos, a Mexican Restaurant across the street soon after I ran into him in the hallway. I did not speak with him at the restaurant. I had three individuals at my table (the two listed above and a personal friend). I asked the waiter to let me pick up Mr. Douglas' tab. The waiter mentioned he had already paid. There was no further discussion.

43. As Independent Counsel began preparing for their March 2024 trial in the Abdullah Action, State Farm's unethical tactics reached a new low. Mr. Safarian, under State Farm's advice and direction, restarted his backdoor negotiations with the Underlying Plaintiffs' counsel, Carl Douglas, while continuing to have private and improper communications with Mrs. Lacey, the Estate's representative. It is believed and understood that Mr. Safarian's private communications with the Underlying Plaintiff's counsel took place via private text messages, phone conversations and email from at least July 2023 - March 2024. When Mrs. Lacey—his putative client—asked him to turn over these text messages, Mr. Safarian refused! In disregard of his and State Farm's fiduciary obligation to the Laceys, Mr. Safarian prioritized the interests of *opposing counsel*, Mr. Douglas, instead, claiming "absent Mr. Douglas' consent I cannot produce the messages."

44. Through Mr. Safarian, State Farm was able to leverage his "access" to the Lacey trial

2398872                                          -12-
COMPLAINT FOR (1) BAD FAITH BREACH OF INSURANCE CONTRACT AND (2) BAD FAITH BREACH OF
IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Exhibit A
Page 20

team and surreptitiously negotiate a settlement with Mr. Douglas of the Underlying Plaintiffs' claims against Mr. Lacey—without the consent or involvement of the insured or Independent Counsel—culminating in a settlement agreement, in principle, between State Farm and the Underlying Plaintiffs on or about March 27, 2024.[5]

45.  State Farm's assertion of control over Mr. Lacey's defense—and its eventual decision to settle the claims against him, without the consent or even the involvement of the insured (Mrs. Lacey, as her deceased husband's representative) or her Independent Counsel, was inappropriate and unlawful on multiple grounds.  First, as discussed above, State Farm had forfeited any right to participate in the defense of Mr. Lacey (or impose statutory rate-capping) by virtue of its prolonged failure and refusal to defend him for upwards of five months.  Second, even if *arguendo* State Farm had *not* completely forfeited such rights, State Farm would nonetheless have a clear legal obligation to involve the insured and her Independent Counsel in any such settlement discussions, given that it was defending Mr. Lacey subject to a reservation of rights.  *See, e.g., Novak v. Low, Ball & Lynch*, 77 Cal. App. 4th 278 (1999).

46.  At a minimum, State Farm's improper conduct in unilaterally brokering a settlement of the claims against Mr. Lacey without the consent or involvement of the insured or Independent Counsel insulates the insureds from any obligation to contribute toward the settlement and, likewise, bars State Farm from seeking recovery from the insureds for any portion of the settlement payment (irrespective of any contentions State Farm may have otherwise had that the settlement is attributable to uninsured claims).  Moreover, as discussed in footnote 2, *supra*, State Farm never purported to reserve the right to seek such reimbursement, in any event, as it was required to do in order to preserve any such ability.[6]

---

[5] It is important to separately note that as to Plaintiffs' claims against Jacquelyn Lacey—more than one year after reaching a settlement in principle—State Farm *still* has not fully consummated the settlement, nor has it paid the settlement fees as mandated by the law, thereby continuing to expose Mrs. Lacey to the enforcement provisions of California Civil Code § 664.6.

[6] At present, Mrs. Lacey understands that State Farm has no intention of seeking any such contribution or reimbursement from the insureds.  If at any point, however, State Farm were to assert such a demand, then Mrs. Lacey will promptly amend this complaint to seek declaratory relief on that issue (and to bolster her bad faith cause of action accordingly).

2398872
-13-
COMPLAINT FOR (1) BAD FAITH BREACH OF INSURANCE CONTRACT AND (2) BAD FAITH BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Exhibit A
Page 21

47. Additionally, State Farm's improper unilateral settlement has deprived Mrs. Lacey of her prerogative to have her "day in court," and her ability to vindicate her late husband's name against the Underlying Plaintiffs' unjust accusations.

48. Moreover, State Farm still has wrongfully failed and refused to pay a vast amount of the attorneys' fees incurred in the defense of Mr. Lacey, leaving Mrs. Lacey holding the bag for these sums.

49. State Farm persists in its wrongful behavior by (i) refusing to acknowledge its illegal conduct and (ii) blatantly mischaracterizing Plaintiffs' claims as simply a "rate dispute." Nothing could be further from the truth.

50. Plaintiffs' claims arise out of State Farm's bad faith breach of its insurance policies and, *inter alia*, its wrongful refusal to defend Mr. Lacey for upwards of five months – even after agreeing (belatedly) to defend him.  These are facts State Farm cannot escape.

## FIRST CAUSE OF ACTION

**(For Breach of Contract)**

**(On Behalf of All Plaintiffs; Against State Farm and Does 1-50)**

51. Plaintiffs reallege and incorporate herein by reference each and every allegation set forth above in paragraphs 1 through 46, above, inclusive.

52. Valid insurance agreements in the form of the Insurance Policies exist between Plaintiffs and defendant insurer State Farm.

53. All Plaintiffs have performed all obligations, covenants, and conditions under the Insurance Policies, except for those that were waived, excused, or rendered impossible by reason of State Farm's conduct.

54. Despite Plaintiffs' timely and sufficient tender of the Abdullah Action to State Farm, State Farm breached the Insurance Policies by, *inter alia*, failing and refusing to timely and reasonably provide for a legal defense of Mr. Lacey, including payment of his attorneys' fees related to the Abdullah Action.

55. As a result of State Farm's breach of contract, Plaintiffs have been damaged in an amount to be proved at trial but that exceeds $2.1 million.

2398872

-14-

COMPLAINT FOR (1) BAD FAITH BREACH OF INSURANCE CONTRACT AND (2) BAD FAITH BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Exhibit A
Page 22

## SECOND CAUSE OF ACTION

**(For Breach of the Implied Covenant of Good Faith and Fair Dealing)**

**(on Behalf of All Plaintiffs; Against State Farm and Does 1-50)**

56. Plaintiffs reallege and incorporate herein by reference each and every allegation set forth above in paragraphs 1 through 51 above, inclusive.

57. Implied by law in the State Farm Insurance Policies is a duty of good faith and fair dealing prohibiting State Farm from doing anything to deprive Plaintiffs of the benefits of the Insurance Policies and requiring that State Farm deal fairly and in good faith with its insureds.

58. State Farm and Does 1 through 50 breached the duty of good faith and fair dealing owed to Plaintiffs by engaging in the conduct alleged above.

59. Plaintiffs have been damaged by this breach of the implied covenant of good faith and fair dealing.

60. As a result of this breach of the implied covenant of good faith and fair dealing, defendants are liable to Plaintiffs for the compensatory damages and other general and specific damages that they have suffered, and continue to suffer, including, but not limited to the unpaid loss of $2.1 million, as well as all attorneys' fees and costs incurred in attempting to secure benefits under the Insurance Policies, including the prosecution of this action, all in an amount to be proved at trial.

61. The wrongful acts of defendants alleged hereinabove were undertaken maliciously, oppressively, and/or with the intent to defraud Plaintiffs, and Plaintiffs therefore are entitled to punitive and exemplary damages against defendants in an amount that is appropriate to punish State Farm and set an example.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief against defendants as follows:

1. For compensatory damages.
2. For interest as provided by law;
3. For attorney's fees and costs of suit incurred herein;
4. For punitive damages in an amount sufficient to deter and make an example of

2398872
-15-
COMPLAINT FOR (1) BAD FAITH BREACH OF INSURANCE CONTRACT AND (2) BAD FAITH BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Exhibit A
Page 23

| | |
|---|---|
| 1 | defendants; and |
| 2 | 5.  For such other and further relief as the Court deems just and proper. |

| | | |
|---|---|---|
| 3 | DATED: May 21, 2024 | ELLIS GEORGE LLP |
| 4 | | Trent Copeland |
| | | Keian Vahedy |
| 5 | | |
| 6 | | |
| 7 | | By _[signature]_ |
| | | Trent Copeland |
| 8 | | Attorneys for Plaintiff Jacquelyn "Jackie" Lacey, in her individual capacity, and as Trustee of The D and J Lacey Family Trust dated November 23, 2016 |
| 9 | | |
| 10 | DATED: May 21, 2024 | K&L GATES LLP |
| | | Ryan Q. Keech |
| 11 | | Kevin s. Asfour |
| | | Zachary T. Timm |
| 12 | | |
| 13 | | |
| 14 | | By    */s/ Ryan Q. Keech* |
| | | Ryan Q. Keech |
| 15 | | Attorneys for Plaintiff Jacquelyn "Jackie" Lacey, in her individual capacity, and as Trustee of The D and J Lacey Family Trust dated November 23, 2016 |

2398872

-16-

COMPLAINT FOR (1) BAD FAITH BREACH OF INSURANCE CONTRACT AND (2) BAD FAITH BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Exhibit A
Page 24