1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
2      Including Professional Corporations
   JENNIFER HOFFMAN, Cal. Bar No. 240600
3  333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
4  Telephone: 213.620.1780
Email:     jhoffman@sheppardmullin.com
5
  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
6      A Limited Liability Partnership
    Including Professional Corporations
7  JEFFREY S. CROWE, Cal. Bar No. 216055
650 Town Center Drive, 4th Floor
8  Costa Mesa, California 92626-1993
Telephone: 714.513.5100
9  Email:     jcrowe@sheppardmullin.com

10 SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
11     Including Professional Corporations
   ANDREA S. WARREN, Cal. Bar No. 327033
12 501 West Broadway, 18th Floor
San Diego, California 92101-3598
13 Telephone: 619.338.6500
E mail:    awarren@sheppardmullin.com
14
  Attorneys for Defendant
15 STATE FARM GENERAL INSURANCE COMPANY

16             **UNITED STATES DISTRICT COURT**

17    **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| 18 JACQUELYN "JACKIE" LACEY, in her individual capacity; and | Case No.: 2:24-cv-05205-FMO-MAA |
| 19 JACQUELYN "JACKIE" LACEY as | Hon. Fernando M. Olguin |
| 20 trustee of the D and J Lacey Family Trust dated November 23, 2016, | **DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S:** |
| 21       Plaintiffs, | |
| 22     v. | **(1) NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; AND** |
|   STATE FARM GENERAL | |
| 23 INSURANCE COMPANY, an Illinois corporation, and DOES 1-50, inclusive, | **(2) MEMORANDUM OF POINTS AND AUTHORITIES.** |
| 24       Defendants. | Date:    October 24, 2024 |
| 25 | Time:   10:00 a.m.<br>Crtrm:  6D |
| 26 | |
| 27 | |
| 28 | |

SMRH:4869-1918-4595.9        STATE FARM'S MOTION TO COMPEL ARBITRATION

**TO THE HONORABLE COURT, PLAINTIFF JACQUELYN "JACKIE" LACEY, IN HER INDIVIDUAL CAPACITY; AND JACQUELYN "JACKIE" LACEY, AS TRUSTEE OF THE D AND J LACEY FAMILY TRUST DATED NOVEMBER 23, 2016 ("PLAINTIFF") AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 24, 2024, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Fernando M. Olguin in Courtroom 6D of the United States District Court, Central District of California, located at the United States Courthouse, 350 W. First Street, 5th Floor, Los Angeles, California 90012, Defendant State Farm General Insurance Company ("State Farm"), will and hereby do move this Court, for an order:

Compelling this action to arbitration pursuant to California Civil Code section 2860, which mandates arbitration of fee disputes between an insurer and independent or "*Cumis*" counsel.  At a minimum, State Farm seeks an order compelling the fee dispute to arbitration and staying the remainder of the case to the extent any issues remain after arbitration completes.

This Motion is made following the pre-filing conference of counsel pursuant to Local Rule 7-3, which took place on September 10, 2024.  (Declaration of Jennifer Hoffman ("Hoffman Dec."), ¶¶2-4).

Defendant's Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Jennifer M. Hoffman and Chad Zimmerman, the Index and Compendium of Exhibits, the Request for Judicial Notice, the papers, records and documentary materials on file or deemed to be on file in this action, those other matters of which this Court may take judicial notice, the oral arguments of counsel made at the hearing, and upon such other evidence and materials as this Court deems necessary.

Dated:  September 24, 2024  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By        _/s/ Jennifer M. Hoffman_____
                JENNIFER M. HOFFMAN
                ANDREA S. WARREN

                Attorneys for Defendant
          STATE FARM GENERAL INSURANCE
                     COMPANY

1
2

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND FACTS ................................................................................. 4

    A.      David Lacey Confronts Demonstrators with a Gun, and They Sue ....... 4

    B.      The Laceys Tender Defense of the *Abdullah* Action to State Farm ................................................................................................... 5

    C.      The *Abdullah* Plaintiffs Amend Their Complaint and State Farm Accepts Mr. Lacey's Re-Tender of Defense ......................................... 6

    D.      State Farm Pays Defense Fees at the Agreed Rates and Fully Funds the Settlement of the *Abdullah* Action ...................................... 8

    E.      Mrs. Lacey Files This Suit, Which Centers on the Attorneys' Fee Dispute ................................................................................................ 10

III.    THE COURT SHOULD COMPEL ARBITRATION OF THIS FEE DISPUTE ....................................................................................................... 12

    A.      The Legal Framework: California Civil Code Section 2860 ............... 12

    B.      Mrs. Lacey Cannot Plead Around Mandatory Section 2860 Arbitration .......................................................................................... 13

    C.      Lacey's Arguments Against Mandatory Arbitration Fail .................... 16

IV.     CONCLUSION ................................................................................................ 21

Case No. 2:24-cv-05205-FMO-MAA
STATE FARM'S MOTION TO COMPEL ARBITRATION

## TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Abdullah et al. v. Lacey et al.*
  Los Angeles Superior Court Case No. 20STCV40080 ...............................*passim*

*Am. Rena. Int'l Corp. v. Sis-Joyce Int'l Co.*
  2015 WL 12732433 (C.D. Cal. Dec. 14, 2015) ................................................. 16

*Arrowood Indem. Co. v. Bel Air Mart*
  2013 U.S. Dist. LEXIS 78535 (E.D. Cal. June 3, 2013) .............................. 17, 20

*Arrowood Indem. Co. v. Bel Air Mart*
  2013 WL 2434830 (E.D. Cal. June 4, 2013) ..................................................... 13

*Blue Ridge v. Jacobsen*
  25 Cal.4th 489 (2001) ...................................................................................... 18

*Caiafa Prof. Law Corp v. State Farm Fire & Cas. Co.*
  15 Cal.App.4th 800 (1993) ............................................................................... 13

*Commercial Union Ins. Co. v. Super. Ct.*
  196 Cal.App.3d 1205 (1987) ............................................................................ 19

*Compulink Mgmt. Ctr., Inc. v. St. Paul Fire & Marine Ins. Co.*
  169 Cal.App.4th 289 (2008) .................................................................. 17, 20, 21

*Delgado v. Interinsurance Exch. of Auto. Club of S. Cal.*
  47 Cal.4th 302 (2009) ...................................................................................... 18

*Fontana Union Water Co. v. Arch Ins. Co.*
  2016 WL 9045966 (C.D. Cal. Apr. 13, 2016) ............................................. 13, 17

*Grouse River Outfitters, Ltd. v. Oracle Corp.*
  848 Fed. Appx. 238 (9th Cir. Feb. 26, 2021) ................................................... 16

*Intergulf Develop. LLC v. Sup. Ct.*
  183 Cal.App.4th 16 (2010) .................................................................... 19, 20, 21

*Janopaul + Block Cos., LLC v. Sup. Ct.*
  200 Cal.App.4th 1239 (2011) ..................................................................... 19, 20

*Karsant Family Ltd. Partnership v. Allstate Ins. Co.*
   2009 WL 188036, 2009 U.S. Dist. LEXIS 7558 (N.D. Cal. Jan. 27, 2009) ......17

*Lahari v. Universal Music & Video Distrib. Corp.*
   606 F.3d 1216 (9th Cir. 2010) ..............................................................16

*Long v. Century Indem. Co.*
   163 Cal.App.4th 1460 (2008) ...............................................12, 13, 17, 20

*Merced Mut. Ins. Co. v. Mendez*
   213 Cal.App.3d 41 (1989) ....................................................................18

*Pepsi-Cola Metro. Bottling Co. v. Ins. Co. of N. Am.*
   2010 WL 10875087 (C.D. Cal. Dec. 28, 2010) ..................................21

*Scheffler v. Allstate Ins. Co.*
   196 F.Supp.2d 1003 (C.D. Cal. Mar. 19, 2002) ..................................18

*Stellar v. State Farm General Ins. Co.*
   157 Cal.App. 1498 (2007) ...................................................................18

*Travelers Cas. Ins. Co. of Am. v. Visemer De Gelt, LLC*
   2014 WL 12495643 (C.D. Cal. Mar. 11, 2014) ..................................13

*Truck Ins. Exch. v. Dynamic Concepts, Inc.*
   9 Cal.App.4th 1147 (1992) ..................................................................20

*Truck Ins. Exch. v. Superior Court*
   51 Cal.App.4th 985 (1996) ...........................................................17, 20

*Wallis v. Centennial Ins. Co.*
   982 F.Supp.2d 1114 (E.D. Cal. 2013) ................................................13

*Yeager v. Bowlin*
   2010 WL 1689225 (E.D. Cal. Apr. 26, 2010) ....................................16

Statutes

Cal. Evid. Code § 1119.........................................................................9

Cal. Evid. Code §§ 1120, 1123...........................................................10

California Civil Code § 2860.......................................................*passim*

California Civil Code § 2860(c) ...........................................2, 12, 21

Case No. 2:24-cv-05205-FMO-MAA
STATE FARM'S MOTION TO COMPEL ARBITRATION

Other Authorities

Rule 26 ..........................................................................................................11, 14

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

This purported "bad faith" suit is a thinly veiled attorneys' fee dispute that does not belong, and should never have been filed, in any court.  California law mandates arbitration of such predictable and manufactured disputes under California Civil Code section 2860.

Plaintiff Jacqueline "Jackie" Lacey purports to bring this suit, although it appears driven by her late husband's former attorneys at Ellis George and K & L Gates.  Those two law firms defended Mr. Lacey in an underlying suit that arose out of Mr. Lacey's decision to confront Black Lives Matter demonstrators on his property with a gun.  Those demonstrators filed a civil suit against the Laceys in October 2020, titled *Abdullah et al. v. Lacey et al.*, Los Angeles Superior Court Case No. 20STCV40080 (the "*Abdullah* Action").

The Laceys tendered defense of the *Abdullah* Action to their homeowners' insurer, State Farm.  Because nothing in the complaint suggested that Mrs. Lacey brandished the gun or knew her husband would do so, State Farm immediately accepted Mrs. Lacey's defense without reservation of rights and retained counsel to defend her.

Different considerations applied to Mr. Lacey, however.  Because the complaint alleged, and Mr. Lacey did not dispute, that he purposely confronted the demonstrators with a gun, it did not involve a potentially covered "occurrence" or accident as to him or trigger a duty to defend.  State Farm accordingly declined Mr. Lacey's initial tender of defense.

Several months later, circumstances changed.  The plaintiffs in the *Abdullah* Action filed a Second Amended Complaint alleging a new cause of action for "false imprisonment."  That new theory conflicted with plaintiffs' factual allegations that Mr. Lacey told them to leave while brandishing the gun.  In February 2021, Mr. Lacey tendered defense of the Second Amended Complaint (which included the new

1  "false imprisonment" cause of action) to State Farm.  Because the Laceys also held

2  a State Farm umbrella policy that applied to an "offense," including "false

3  imprisonment," State Farm accepted Mr. Lacey's tender of defense of the Second

4  Amended Complaint within a few weeks of Mr. Lacey's tender, notwithstanding the

5  conflict between that new legal theory (that Mr. Lacey falsely imprisoned plaintiffs)

6  and the factual allegations in the Second Amended Complaint (that Mr. Lacey told

7  plaintiffs to leave).  State Farm's March 2021 acceptance letter reserved rights based

8  on that inconsistency and other coverage questions.  State Farm also agreed to

9  provide Mr. Lacey with independent or "*Cumis*" defense counsel subject to Section

10  2860.

11      Mr. Lacey selected Ellis George as his *Cumis* counsel.  Ellis George agreed to

12  State Farm's payment of $225 an hour pursuant to Section 2860 (which exceeded

13  the rate State Farm paid Mrs. Lacey's defense counsel).[1]  Ellis George also provided

14  an estimated budget at the $225 an hour rate, which totaled about $500,000 through

15  trial.  State Farm proceeded to pay Ellis George based on that agreement, beginning

16  with its first payment in July 2021.

17      Mr. Lacey passed away in September 2022.  Months later, one of his defense

18  attorneys moved to K & L Gates and informed State Farm that both firms would

19  proceed to defend Mr. Lacey's Estate.  Counsel never requested or obtained State

20  Farm's agreement to the arrangement.  State Farm nonetheless paid both Ellis

21  George and K & L Gates' invoices at the agreed rates, subject to its reservation of

22  rights.

---

[1] Section 2860(c) provides: "The insurer's obligation to pay fees to the independent counsel selected by the insured is limited to the rates which are actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended. … Any dispute concerning attorney's fees … shall be resolved by final and binding arbitration by a single neutral arbitrator selected by the parties to the dispute."

In July 2023, the *Abdullah* plaintiffs dismissed Mrs. Lacey with prejudice. State Farm's retained defense counsel secured that result on her behalf by negotiating a de minimis settlement. That settlement payment, along with retained counsel's defense fees for Mrs. Lacey, totaled less than $70,000, which State Farm paid in full.

Ellis George and K & L Gates, in contrast, purportedly racked up more than $3 million in fees to defend Mr. Lacey and his Estate at their *full* rate without even trying the case. State Farm paid more than $800,000 to defend Mr. Lacey – nearly twice their estimated budget through trial, and more than ten times what it paid Mrs. Lacey's counsel. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Yet, counsel wanted more – *$2.2 million* more. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ellis George was writing the Complaint against State Farm in this action.

The Complaint attempts to manufacture disputes between Mrs. Lacey and State Farm (which did not exist) in an effort to avoid arbitration of the fee dispute. Those efforts fail. The *only* compensatory damages requested are the $2.2 million in *Cumis* fees, or the difference between the rate State Farm paid pursuant to Section 2860 and *Cumis* counsel's full billed rate, which increased from $550 to up to $900 an hour during their representation. California law mandates arbitration of fee disputes between *Cumis* counsel and an insurer, and California courts consistently reject attempts to avoid mandatory arbitration by alleging coverage disputes under similar circumstances.

So long as the insurer agreed to defend and agreed to pay *Cumis* counsel, that same counsel cannot avoid mandatory fee arbitration by alleging a separate coverage dispute. That rule applies with force here, where State Farm accepted Mr. Lacey's defense within weeks of receipt of the Second Amended Complaint and months of the filing of the *Abdullah* Action, and proceeded to pay *Cumis* counsel

1  more than $800,000 over the next three years towards the defense of Mr. Lacey and

2  the Estate.

3          Any dispute regarding the reasonableness or necessity of *Cumis* counsel's

4  fees, and the sufficiency of State Farm's payments, must be resolved through

5  mandatory arbitration pursuant to Section 2860.  The Court should grant State

6  Farm's motion and refer the entire action to arbitration or, at a minimum, refer the

7  fee dispute to arbitration and stay the remainder of the case to the extent any issues

8  remain after arbitration completes.

9              **II.  <u>BACKGROUND FACTS</u>**

10  **A.    <u>David Lacey Confronts Demonstrators with a Gun, and They Sue</u>**

11          Mrs. Lacey held the office of District Attorney for Los Angeles County when

12  the Black Lives Matter movement began.  On March 2, 2020, Black Lives Matter

13  demonstrators assembled at the Laceys' home in Granada Hills, California to protest

14  her office's handling of matters involving the Los Angeles Police Department.  Mrs.

15  Lacey's late husband, David Lacey, confronted three of those demonstrators with a

16  gun.  (ECF 1-1, ¶ 5).

17          The California Attorney General's Office charged Mr. Lacey with three

18  counts of assault with a firearm arising out of the March 2, 2020 incident.

19  (Declaration of Chad Zimmerman ("Zimmerman Dec."), ¶7; Compendium of

20  Exhibits ("COE"), Ex. 4).  Mr. Lacey claimed that he lacked criminal intent to harm

21  in brandishing the gun.  (*Id.*)  However, he did not deny (and Mrs. Lacey

22  affirmatively alleges in this case) that he confronted the demonstrators while

23  holding a gun because he "wanted them to leave."  (ECF 1-1, ¶ 5).

24          The three demonstrators also filed a civil suit against the Laceys in late

25  October 2020 in Los Angeles Superior Court, *Abdullah, et al. v. Lacey*, Case No.

26  20STCV40080 (the "*Abdullah* Action").  (Request for Judicial Notice ("RJN") No.

27  1; COE, Ex. 3).  The plaintiffs in the *Abdullah* Action alleged:

28

> "Mr. LACEY holds the door with one hand while pointing a large handgun at the Plaintiffs with the other.  'Get off my porch!' he growls waving the gun at the unarmed visitors.  'Good morning,' replies Dr. ABDULLAH.  'Get off my porch or I will shoot you,' LACEY growls once more.  The Plaintiffs see that LACEY's finger is on the trigger, and he had cocked the hammer back on the gun.  He points the gun first at Dr. ABDULLAH's chest, and then towards Mx. FERLITO and Mr. MARKS.  'I will shoot you!' he growls again before closing the door."

(RJN No. 1; COE, Ex. 3, ¶ 14).

**B.    The Laceys Tender Defense of the *Abdullah* Action to State Farm**

On October 20, 2020, the Laceys tendered their defense of the *Abdullah* Action to State Farm and enclosed a copy of the Complaint in the *Abdullah* Action. (Zimmerman Dec., ¶6; COE, Ex. 3).

At the time, the Laceys held two State Farm insurance policies: a homeowners policy, Policy No. 71-C7-M007-7 (the "Homeowners Policy"), and a personal liability umbrella policy, Policy No. 71-GB-A528-2 (the "PLUP"). (Zimmerman Dec., ¶¶4-5; COE, Exs. 1-2).  Subject to its terms and conditions, the Homeowners Policy provided that State Farm would defend and indemnify the Laceys against a claim or a suit "for damages because of **bodily injury** … to which this coverage applies, caused by an **occurrence**…."  (Zimmerman Dec., ¶4; COE, Ex. 1, p. 34).  As amended by endorsement, "**occurrence**" means "an accident, including exposure to conditions, which first results in [] **bodily injury** . . . during the policy period."  (*Id*., p. 47).

Subject to its terms and conditions, the PLUP applied to "damages because of a **loss**."  (Zimmerman Dec., ¶5; COE, Ex. 2, p. 72).  "Loss" means (i) an accident, or (2) the commission of an offense which first results in **personal injury** during the policy period.  (*Id*., p. 68).  "Personal injury" means an "injury other than **bodily injury** arising out of one or more of the following offenses: a. false arrest, false imprisonment, wrongful eviction, wrongful detention of a person…."  (*Id*.).

Because the Complaint did not allege purposeful, wrongful conduct by Mrs. Lacey, State Farm acknowledged that the plaintiffs in the *Abdullah* Action

1  potentially sought covered damages against her under the Homeowners Policy, and

2  accepted her tender of defense.  (Zimmerman Dec., ¶¶9-10; COE, Exs. 5-6; ECF 1-

3  1, ¶25).  State Farm retained Harry Safarian of The Safarian Firm to defend Mrs.

4  Lacey in the *Abdullah* Action.  (Zimmerman Dec., ¶¶ 9-10; COE, Exs. 5-6).

5      In contrast to the allegations against Mrs. Lacey, the Complaint in the

6  *Abdullah* Action alleged *only* purposeful conduct by Mr. Lacey, and not an accident

7  or any potentially covered "offense" under the State Farm policies.  (RJN No. 1;

8  COE, Ex. 3).  Accordingly, State Farm declined Mr. Lacey's tender of defense of

9  the Complaint in the *Abdullah* Action.  (Zimmerman Dec., ¶11).

10  **C.    The *Abdullah* Plaintiffs Amend Their Complaint and State Farm Accepts**

11  **Mr. Lacey's Re-Tender of Defense**

12      On February 5, 2021, the plaintiffs in the *Abdullah* Action filed a Second

13  Amended Complaint ("SAC").  The SAC continued to allege that Mr. Lacey

14  purposefully confronted the demonstrators on his porch with a gun and demanded

15  that they leave his property.  However, it also inconsistently alleged a new cause of

16  action for "false imprisonment," which conflicted with the factual allegations of the

17  SAC and Mr. Lacey's stated intent.   (RJN No. 2; COE, Ex. 7).

18      On February 19, 2021, Mr. Lacey through his counsel, Ellis George LLP,[2]

19  sent a copy of the SAC to State Farm.  (Zimmerman Dec., ¶12; COE, Ex. 7;

20  Hoffman Dec., ¶7, COE, Ex. 22 (Trustee's Response to RFA no. 2)).

21      Because the SAC continued to allege only purposeful conduct by Mr. Lacey,

22  and not an "accident," no potential of coverage for him existed under the

23  Homeowners Policy.  (Zimmerman Dec., ¶13).  However, because the SAC also

24  alleged a cause of action for "false imprisonment," which appeared meritless but

25  nonetheless constituted an "offense" under the PLUP, State Farm accepted Mr.

26  _____

27  [2] At the time, Ellis George was known as Browne, George, Ross O'Brien, Annaguey

28  & Ellis LLP.  (ECF 1-1, ¶29).

1   Lacey's tender of defense of the SAC subject to a reservation of rights.

2   (Zimmerman Dec., ¶¶14-15; COE, Exs. 8-9; Hoffman Dec., ¶7, COE, Ex. 22

3   (Trustee's Response to RFA no. 4)).  State Farm also acknowledged that its

4   reservation of rights triggered a right to independent counsel under California Civil

5   Code section 2860.  (Zimmerman Dec., ¶¶14-15; COE, Exs. 8-9).

6        In its March 12, 2021 letter memorializing its acceptance of Mr. Lacey's

7   tender under the PLUP, State Farm acknowledged that Mr. Lacey had retained Ellis

8   George as his defense counsel.  (Zimmerman Dec., ¶14; COE, Ex. 8).  State Farm

9   tentatively agreed to Mr. Lacey's selection subject to Ellis George's "compliance

10  with California Civil Code Section 2860, which clarifies the rights and duties of

11  independent counsel and insurance carriers."  (*Id.*)  The same day, State Farm

12  separately sent Ellis George a letter agreeing, among other things, to reimburse their

13  reasonable and necessary defense fees at a rate of $225 an hour, which exceeded the

14  rates State Farm paid other counsel in defending similar suits, including Mr.

15  Safarian in the *Abdullah* Action.  (Zimmerman Dec., ¶15; COE, Ex. 9; Hoffman

16  Dec., ¶7, COE, Ex. 22 (Trustee's Response to RFA no. 5).).  State Farm also

17  expressly reserved the right to request arbitration of any dispute over fees as

18  outlined in Section 2860.  (Zimmerman Dec., ¶15; COE, Ex. 9).

19       On May 18, 2021, Ryan Keech of Ellis George acknowledged State Farm's

20  acceptance and offered rate of $225 per hour.  (Zimmerman Dec., ¶16; COE, Ex. 10;

21  Hoffman Dec., ¶7, COE, Ex. 22 (Trustee's Response to RFA no. 6)).  Soon after, on

22  July 21, 2021, Mr. Keech submitted an estimated budget for Mr. Lacey's defense

23  which included "the effective rates after State Farm accepted the tender of defense

24  of Mr. Lacey subject to a reservation of rights as outlined in its March 12, 2021

25  letter."  (Zimmerman Dec., ¶17; COE, Ex. 11; Hoffman Dec., ¶7, COE, Ex. 22

26  (Trustee's Response to RFA no. 7)).  The budget included hourly rates of $225 an

27  hour for attorneys and, including costs, totaled $505,000 through trial.  (Zimmerman

28  Dec., ¶17; COE, Ex. 11).

On June 1, 2021, Ellis George first provided copies of its invoices to State Farm for services rendered to Mr. Lacey. (Zimmerman Dec., ¶18; Hoffman Dec., ¶6; COE, Ex. 19, pp. LACEY 000001 – LACEY 000014). The invoices included attorneys' fees for Mr. Keech billed at a rate of $550 an hour. (*Id*., COE, Ex. 19, p. LACEY 0000014). State Farm's coverage counsel, Amy Hulick (then of Wade & Lowe), sent a letter to Ellis George confirming that State Farm would pay for the defense of Mr. Lacey between the February 2021 tender of the SAC and the March 2021 acceptance letter at the full billed rate. (Zimmerman Dec., ¶19; COE, Ex. 12). After that, State Farm would pay the agreed rate of $225 an hour. (*Id*.)

**D.  <u>State Farm Pays Defense Fees at the Agreed Rates and Fully Funds the Settlement of the *Abdullah* Action</u>**

In September 2022, Mr. Lacey passed away. (Zimmerman Dec.,¶21). The plaintiffs in the *Abdullah* Action substituted "The Estate of David Lacey" as a defendant in his place, and State Farm continued defending the Estate. (*Id*.)

Ellis George subsequently filed a motion for summary adjudication seeking, among other things, judgment on the false imprisonment cause of action. In February 2023, the court in the *Abdullah* Action granted summary adjudication of the "false imprisonment" cause of action. (ECF 1-1, Complaint, ¶ 35). Thus, as of that time, no potentially covered "offense" was alleged in the *Abdullah* Action, and no potential of coverage existed for the Estate. (*Id*.). State Farm nonetheless continued to provide a defense to the Estate and paid Ellis George's attorneys' fees and costs at the agreed rate and subject to its reservation of rights.[3] (Zimmerman Dec.,¶22; COE, Ex. 13).

---

[3] State Farm separately reserved the right to seek reimbursement of all fees and costs paid after that date due to the absence of a potential of coverage, as memorialized in its coverage counsel's August 31, 2023 letter and reflected in its affirmative defense in this suit for reimbursement or offset. (Zimmerman Dec., ¶26; COE, Ex. 15; Hoffman Dec., ¶7, COE, Ex. 22 (Trustee's Response to RFA no. 10)).

1    In June 2023, State Farm began receiving invoices for the Estate's defense
2   from K & L Gates, LLP, which firm Mr. Keech had moved to in April of 2023.
3   (Zimmerman Dec., ¶23; Hoffman Dec. ¶6; COE, Ex. 20, pp. LACEY 00000264 –
4   LACEY 00000270).  The K & L Gates invoices now charged for Mr. Keech's
5   services at a rate of $850 an hour.  (Hoffman Dec. ¶6; COE, Ex. 20, p. LACEY
6   00000269).  When questioned regarding receipt of invoices from two firms, Mr.
7   Keech informed State Farm that both firms would now represent the Estate, without
8   requesting or obtaining State Farm's agreement to two firms defending the Estate.
9   (Zimmerman Dec., ¶25; COE, Ex. 14).  State Farm nonetheless paid invoices
10  submitted by both firms at the agreed rate of $225 an hour under a reservation of
11  rights.  (Zimmerman Dec., ¶26; COE, Exs. 13 & 15).

12    The following month, State Farm's defense of Mrs. Lacey, provided through
13  panel counsel Harry Safarian, prevailed.  In July 2023, the *Abdullah* Plaintiffs
14  dismissed all claims alleged against Mrs. Lacey in the *Abdullah* Action with
15  prejudice ███████████████████████.  (Zimmerman Dec., ¶27; Hoffman
16  Dec., ¶8; RJN No. 3, COE Ex. 23).  The attorneys' fees and costs for Mr. Safarian's
17  services over years of litigation to obtain that successful result totaled less than
18  $65,000.  (Zimmerman Dec., ¶28; COE, Ex. 13).  State Farm paid Mr. Safarian's
19  fees and ██████████ settlement amount, without any personal contribution from the
20  Laceys.  (Zimmerman Dec., ¶35; COE, Exs. 13 & 17; Hoffman Dec., ¶7, COE, Ex.
21  21 (Mrs. Lacey's Response to RFA nos. 2, 4-6)).

22    In March 2024, ██████████████████████████████████████
23  ███████████████████████████████████████████████
24  ███████████████████████████████████████████████████

25  _____
26  [4] Mrs. Lacey claims that the settlement agreement is subject to mediation
    confidentiality, which fails.  California's mediation privilege applies to
27  communications during a mediation.  Cal. Evid. Code § 1119.  It does not apply to
28  the fact of a mediation, the identity of attendees at a mediation, or a final and



6    State Farm thereafter received more invoices for payment from Ellis George

7    and K & L Gates.  (Hoffman Dec., ¶6; COE, Exs. 19-20).  The K & L Gates

8    invoices now charged $900 an hour for Mr. Keech's services.  (Hoffman Dec., ¶6;

9    COE, Ex. 20, p. LACEY 00000349).

10    In all, State Farm issued more than 35 separate payments to Ellis George and

11    11 separate payments to K & L Gates LLP from July 2021 to May 2024.

12    (Zimmerman Dec., ¶20; COE, Ex. 13).  State Farm's payments for Mr. Lacey's

13    defense totaled more than $800,000, ***more than ten times*** what it paid for Mrs.

14    Lacey's defense.  (Hoffman Dec., ¶5; COE, Ex. 18; Zimmerman Dec., ¶28; COE,

15    Ex. 13).  State Farm's payments also far exceeded Mr. Keech's estimated budget

16    through trial by hundreds of thousands of dollars.  (Zimmerman Dec., ¶17; COE,

17    Ex. 11).

18    Yet, Ellis George and K & L Gates LLP wanted more.

24    **E.    Mrs. Lacey Files This Suit, Which Centers on the Attorneys' Fee Dispute**

25    Even before dismissal of the *Abdullah* Action, and while State Farm

27    binding settlement agreement, even if reached during mediation.  Cal. Evid. Code §§

28    1120, 1123.

continued to pay towards the defense of the Estate, Plaintiff filed her Complaint on May 21, 2024.

Mrs. Lacey purports to bring the Complaint in both her individual capacity and as trustee of the D & J Lacey Family Trust, which she contends is the successor in interest to Mr. Lacey, not the Estate. She alleges two causes of action: one for breach of contract and the other for bad faith. However, she does not allege *any* actionable breach of contract as to her. Instead, the only breach she alleges is "failing and refusing to timely and reasonably provide for a legal defense of Mr. Lacey, including payment of his attorneys' fees related to the *Abdullah* Action." (ECF 1-1, ¶54). The Complaint alleges one other cause of action, for breach of the implied covenant of good faith and fair dealing, but does not specify any particular purported breach as to anyone. (Complaint, ¶¶56-61).

The only particular damages Mrs. Lacey claims in this action are attorneys' fees. Specifically, Mrs. Lacey seeks the difference between what State Farm paid, and what Ellis George and K & L Gates charged, for Mr. Lacey's and the Estate's defense. (Hoffman Dec., ¶5; COE, Ex. 18). Mr. Lacey's *Cumis* counsel, now Mrs. Lacey's coverage counsel, described those damages as her "basic core compensatory damages," which her Second Supplemental Rule 26 Disclosures make clear. (*Id.*) Specifically, Mrs. Lacey claims "unpaid attorney's fees and costs incurred in the underlying action totaling $2,208,840.19," which she purportedly calculated by subtracting what she concedes State Farm paid for Mr. Lacey's and the Estate's defense ($800,335.57) from what counsel billed ($3,009,175.76).[5] (*Id.*)

The only documents Mrs. Lacey produced to support her damages claims alleged in this action are the Ellis George and K & L Gates invoices. (Hoffman Dec., ¶6; COE, Exs. 19-20). As detailed below, those invoices reflect inefficient,

---

[5] Mrs. Lacey separately alleges *Brandt* fees, or attorneys' fees purportedly incurred in bringing this suit, of $34,580.11. (Hoffman Dec., ¶5; COE, Ex. 18).

duplicative, and unreasonable entries by numerous attorneys at two separate firms. They also reflect that State Farm paid more than $800,000 towards those inflated attorneys' fees, while the Laceys paid nothing.

Although this action centers on the *Cumis* fee dispute, which must be resolved through arbitration under Section 2860, Mrs. Lacey has failed and refused to arbitrate the dispute. (Hoffman Dec., ¶¶2-4). Accordingly, after its good faith meet and confer efforts failed, State Farm was forced to file this Motion. (*Id.*).

### III.  THE COURT SHOULD COMPEL ARBITRATION OF THIS FEE DISPUTE

### A.    The Legal Framework: California Civil Code Section 2860

California law limits a defending insurer's payment obligation when it accepts the defense of an insured entitled to independent or "*Cumis*" counsel and an insured's ability to sue for alleged underpayments. Originally enacted as part of a tort reform act sponsored by former Attorney General Bill Lockyer, Civil Code section 2860 provides two important limitations that streamline disputes like the one alleged here.

*First*, Section 2860(c) contains a rate-limiting provision, which limits an insurer's payment obligation for independent counsel to "rates which are actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended." Cal. Civ. Code § 2860(c). In other words, an insurer need not pay selected counsel more than the rates "which are actually paid by the insurer to attorneys retained by it" in similar actions. *See* Cal. Civ. Code § 2860(c); *Long v. Century Indem. Co.*, 163 Cal. App. 4th 1460, 1467, 1473 (2008).

*Second*, Section 2860(c) provides that "any dispute concerning attorney's fees . . . shall be resolved by final and binding arbitration by a single neutral arbitrator selected by the parties to the dispute." Mandatory arbitration under Section 2860 encompasses not only rate disputes, but also disputes regarding the reasonableness

1   and necessity of *Cumis* counsel's hours and invoicing.  *See, e.g.*, *Fontana Union*
2   *Water Co. v. Arch Ins. Co.*, 2016 WL 9045966, at *3 (C.D. Cal. Apr. 13, 2016)
3   ("[T]he plain language of the statute, i.e., the use of the word "any," requires the
4   arbitration of *Cumis* fee disputes beyond hourly rates."); *Arrowood Indem. Co. v.*
5   *Bel Air Mart*, 2013 WL 2434830, at *2-4 (E.D. Cal. June 4, 2013); *see also Wallis v.*
6   *Centennial Ins. Co.*, 982 F. Supp. 2d 1114, 1121-23 (E.D. Cal. 2013).

7   **B.**    **Mrs. Lacey Cannot Plead Around Mandatory Section 2860 Arbitration**

8        Here, the gravamen of Mrs. Lacey's Complaint is the alleged underpayment
9   of *Cumis* counsel's invoices, which is precisely the type of dispute that the
10  Legislature intended to relegate to arbitration.  *See* Cal. Civ. Code § 2860; *Long*,
11  163 Cal. App. 4th at 1474 (citing *Caiafa Prof. Law Corp v. State Farm Fire & Cas.*
12  *Co.*, 15 Cal. App. 4th 800, 803 (1993)) ("[T]he California legislature has spoken.  It
13  has decided that within the California courts these *Cumis* fee issues are to be
14  decided in an arbitration forum, not the state's judicial forum.").

15       California courts have thus repeatedly held that, where the gravamen of the
16  action is the fee dispute, the entire action should be compelled to arbitration,
17  notwithstanding inclusion of other allegations in the complaint.  *See Fontana Union*,
18  2016 WL 9045966 at *3 (compelling arbitration of entire action where "[t]he breach
19  of contract and bad faith allegations derive from the fee dispute.  In other words, if
20  there were no fee dispute, there would be no basis for the breach of contract or bad
21  faith allegations."); *Travelers Cas. Ins. Co. of Am. v. Visemer De Gelt, LLC*, 2014
22  WL 12495643, at *7 (C.D. Cal. Mar. 11, 2014) ("Rulings on the appropriateness of
23  arbitration have ultimately rested on what courts have deemed the 'gravamen of the
24  complaint' . . . . An assertion of additional claims such as bad faith and breach of
25  contract will not preclude arbitration if fees constitute the ultimate focus of the
26  dispute."); *Arrowood Indem. Co. v. Bel Air Mart*, 2013 WL 2434830, at *1, 4 (E.D.
27  Cal. June 4, 2013) (compelling arbitration where the breach claims hinged on
28  alleged underpayment of fees).

1    Mrs. Lacey attempts to plead around the arbitrable *Cumis* fee dispute in her

2    Complaint by fabricating other alleged ancillary issues.  For example, she includes

3    allegations regarding purported misconduct by her former counsel Harry Safarian,

4    who successfully defended her in the *Abdullah* Action.  Mrs. Lacey does not, and

5    cannot, dispute that Mr. Safarian obtained a dismissal with prejudice of all claims

6    alleged against her in the underlying action, without any personal contribution from

7    her.  (Hoffman Decl., ¶7, COE, Ex. 21 (Mrs. Lacey's Response to RFA nos. 2, 4-

8    7).).  State Farm paid the *de minimis* settlement that Mr. Safarian secured on her

9    behalf, and it paid Mr. Safarian's fees in their entirety, which were a small fraction

10   of what *Cumis* counsel charged for Mr. Lacey's defense.  (Zimmerman Dec., ¶¶28-

11   29, 35; COE, Exs. 14 & 17).  ████████████████████████████████████

12   ███████████████████████████████████████████████████████

13   █████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████

15   ███████████████████████████████████████[6]  Critically, Mrs.

16   Lacey does not identify ***any*** damages sought related to those issues, nor has she

17   articulated any to State Farm to date.  (Hoffman Dec., ¶5, COE, Ex. 18).

18    After two amendments, the *only* compensatory damages particularly alleged

19   in Mrs. Lacey's Rule 26 damages disclosures is the difference between what State

20   Farm paid *Cumis* counsel and what *Cumis* counsel charged for the Estate's defense.

21   (*Id.*).  The *only* documents Mrs. Lacey produced to support her damages claims in

22   this lawsuit are *Cumis* counsel's invoices.  (Hoffman Dec., ¶6, COE, Exs. 19-20).

23   The charges in those invoices far exceed what Section 2860 mandated, and what

24   *Cumis* counsel agreed to accept when State Farm accepted Mr. Lacey's defense.

25   (Zimmerman Dec., ¶18; COE, Ex. 12).

26

27   [6] *See* footnote 4, supra (explaining that mediation confidentiality does not apply to
     the fact of a mediation, the attendees at a mediation or a final written settlement
28   agreement).

They are also internally inconsistent and duplicative.  For example, Mr.
Keech initially submitted a budget providing for services at the agreed rate of $225
an hour.  (*Id.*).  Invoices from Ellis George subsequently charged $550 for his
services.  (Hoffman Dec., ¶6; COE, Ex. 19).  Later, when Mr. Keech moved to K &
L Gates, he began charging $850 an hour for his services.  (Hoffman Dec., ¶6; COE,
Ex. 20).  The most recent K & L Gates invoices bill $900 an hour for his services,
four times the agreed rate and the hourly rate State Farm paid Mr. Safarian to defend
Mrs. Lacey in the *Abdullah* Action.  (Hoffman Dec., ¶6; COE, Ex. 20; Zimmerman
Dec., ¶¶9, 18; COE, Ex. 12).

Both K & L Gates and Ellis George submitted invoices with inconsistent and
duplicative time entries.  For example, a total of four attorneys billed to prepare for
and attend the deposition of a single witness, David Lombardo, on May 5, 2023.
(Hoffman Dec., ¶6; COE, Exs. 19-20, pp. LACEY 00000166, LACEY 00000266).
Mr. Copeland – the only one to take the deposition – billed 7.5 hours.  (*Id.*; COE,
Ex. 19, p. LACEY 00000166).  His associate, Keian Vahedy, billed 8.25 hours to
"appear for/attend" the same deposition (almost an hour longer than Mr. Copeland).
(*Id.*).  Mr. Keech billed another 7.8 hours to "[p]repare for and attend" the
deposition, while Mr. Timm billed 6.3 hours to attend the deposition (about two
hours less than Mr. Vahedy for what appears to be the exact same task).  (*Id.*; COE,
Ex. 20, p. LACEY 00000266).  In all, counsel charged $22,569.75 for four attorneys
to attend a single day-long deposition of a non-party witness.

As another example, counsel billed for five separate attorneys to attend an
August 1, 2023 final status conference.  (Hoffman Dec., ¶6; COE, Exs. 19-20, pp.
LACEY 00000196, LACEY 00000307).  Mr. Vahedy billed 1.5 hours to attend the
conference.  (*Id.*; COE, Ex. 19, p. LACEY 00000196).  Mr. Copeland billed for his
time in a block-billed entry totaling 4.75 hours.  (*Id.*).  Mr. Sullivan similarly billed
4.7 hours while Mr. Keech billed 7.2 hours.  (*Id.*; COE, Ex. 20, p. LACEY

1   00000307).  Mr. Timm included his time in a 6.7 hour block-billed entry.  (*Id.*).

2   Entries for attending that single August 1 conference thus exceeded $18,679.75.

3        As these examples illustrate, block billing permeates the invoices from both K

4   & L Gates and Ellis George.  (Hoffman Dec., ¶6; COE, Exs. 19-20).  "Block billing

5   frustrates the ability . . . to evaluate the reasonableness of the time spent on each

6   task."  *Am. Rena. Int'l Corp. v. Sis-Joyce Int'l Co*., 2015 WL 12732433 at *43 (C.D.

7   Cal. Dec. 14, 2015).  "Without an itemization of the amount of time spent by the fee

8   applicant on each discrete task in the case, the court cannot accurately determine

9   whether the rates charged or hours spent by lawyers in a matter are reasonable.  An

10  excessive amount of block billing thereby forces the court to take a 'shot in the

11  dark' and guess whether the hours expended were reasonable …."  *Yeager v.*

12  *Bowlin*, 2010 WL 1689225, *1 (E.D. Cal. Apr. 26, 2010); *Grouse River Outfitters,*

13  *Ltd. v. Oracle Corp*., 848 Fed. Appx. 238, 245 (9th Cir. Feb. 26, 2021)

14  (disapproving of District Court's award of fees based on block-billed entries);

15  *Lahari v. Universal Music & Video Distrib. Corp*., 606 F.3d 1216, 1223 (9th Cir.

16  2010).

17        But this Court need not, and should not, expend its limited resources parsing

18  through *Cumis* counsel's exorbitant, duplicative and unjustifiable block-billed

19  charges over years of litigation.  Because this dispute centers on the rate,

20  reasonableness and necessity of *Cumis* counsel's fees, this Court should compel the

21  suit to arbitration so that an arbitrator, and not this Court, spends its time resolving

22  *Cumis* counsel's inflated invoices under Section 2860.

23  **C.    Lacey's Arguments Against Mandatory Arbitration Fail**

24        Despite the statutory mandate of arbitration here, Mrs. Lacey's counsel

25  refuses to arbitrate and intends to oppose this Motion.  Counsel contends that the

26  reasonableness and necessity of *Cumis* counsel's exorbitant bills in the *Abdullah*

27  Action should be left for the trier of fact in this case to decide, and not the arbitrator,

28

1    simply because State Farm did not accept Mr. Lacey's tender of defense of the

2    original Complaint in the *Abdullah* Action.  That claim fails.

3         "On its face, Section 2860 does not contain an exception for fee disputes

4    where other claims or issues are alleged."  *Compulink Mgmt. Ctr., Inc. v. St. Paul*

5    *Fire & Marine Ins. Co.*, 169 Cal. App. 4th 289, 296-97 (2008); *Long v. Century*

6    *Indem. Co*., 163 Cal. App. 4th 1460, 1474-1475 (2008), *rev. denied*, 2008 Cal.

7    LEXIS 11254 (Cal., Sept. 17, 2008).

8         California courts compel arbitration under Section 2860 where an insurer is

9    providing a defense through independent counsel, even if an insured alleges

10   coverage disputes exist.  *Truck Ins. Exch. v. Superior Court*, 51 Cal.App.4th 985,

11   990, 997 (1996) (compelling arbitration under Section 2860 notwithstanding

12   allegations of bad faith, fraud and negligent misrepresentation, and distinguishing

13   cases where the insurer refused to provide a defense through independent counsel);

14   *Fontana*, 2016 WL 9045966 at *3 (citing *Compulink*, *supra,* stating that "section

15   2860 requires courts to compel arbitration of any and all *Cumis* fee disputes, even

16   where other claims such as bad faith or breach of contract are alleged"); *Arrowood*

17   *Indem. Co. v. Bel Air Mart*, 2013 U.S. Dist. LEXIS 78535 (E.D. Cal. June 3, 2013)

18   (denying insured's request to stay arbitration pending resolution of the coverage

19   dispute reasoning that, "under *Truck*, fee disputes may be arbitrable prior to any

20   legal determination of coverage issues in cases where an insurer (1) is providing a

21   defense under a reservation of rights and (2) has agreed to independent counsel").

22        That includes allegations that a defending insurer initially wrongfully denied

23   a defense.  *See, e.g.*, *Long*, 163 Cal.App.4th at 1474-1475 (compelling arbitration

24   where insurer initially denied a defense and later accepted under reservation and

25   agreed to independent counsel); *Karsant Family Ltd. Partnership v. Allstate Ins.*

26   *Co*., 2009 WL 188036 at *5, 2009 U.S. Dist. LEXIS 7558 (N.D. Cal. Jan. 27, 2009)

27   (compelling arbitration where insurer "eventually agreed to defend" the insured

28   through independent counsel).  So long as the insurer assumed the defense and

-17-

1  agreed to pay independent counsel, California courts compel arbitration irrespective

2  of an initial coverage dispute.

3      That aligns with the general rule in California that an insured that accepts an

4  insurer's defense does so subject to the insurer's reservation of rights. *Blue Ridge v.*

5  *Jacobsen*, 25 Cal.4th 489, 498 (2001) ("An insurer can reserve its right to assert

6  noncoverage unilaterally merely by giving notice to the insured. [citation] By

7  accepting the insurer's defense under these circumstances, the insured is deemed to

8  have accepted this condition."). Thus, where an insured tenders its defense to an

9  insurer, the insurer accepts the tender under a reservation of rights, and the insurer

10  agrees to pay independent counsel pursuant to Section 2860, that insured also

11  implicitly accepts Section 2860's arbitration mandate to resolve any fee disputes.

12  *Id.*

13      Here, State Farm properly declined Mr. Lacey's tender of defense of the

14  original Complaint because it did not create the potential of coverage. The original

15  Complaint alleged only purposeful, not accidental, conduct by Mr. Lacey and no

16  potentially covered "offense" under the PLUP. It alleged that Mr. Lacey purposely

17  confronted the *Abdullah* plaintiffs with a gun, which allegations Mrs. Lacey echoes

18  in her Complaint in this action. (ECF 1-1, Complaint, ¶5). California courts have

19  repeatedly held that there is no accident where "the insured intended all of the acts

20  that resulted in the victim's injury." *Merced Mut. Ins. Co. v. Mendez*, 213

21  Cal.App.3d 41, 50 (1989). Moreover, "where the insured intended all of the acts

22  that resulted in the victim's injury, the event may not be deemed an 'accident'

23  merely because the insured did not intend to cause injury." *Scheffler v. Allstate Ins.*

24  *Co.*, 196 F. Supp. 2d 1003 (C.D. Cal. Mar. 19, 2002).[7]

25  _____

26  [7] *See also Delgado v. Interinsurance Exch. of Auto. Club of S. Cal.*, 47 Cal.4th 302, 311-312 (2009) (insured's subjective belief in the need for self-defense did not

27  convert an assault and battery into an accident); *Stellar v. State Farm General Ins.*

28  *Co.*, 157 Cal. App. 1498, 1505 (2007) ("An accident . . . is never present when the

1    Five months later, Mr. Lacey tendered defense of the Second Amended

2  Complaint, which still did not allege an "accident", but *did* allege a potentially

3  covered "offense" of "false imprisonment". (Zimmerman Dec., ¶¶12-13; COE, Ex.

4  7). Mrs. Lacey does not dispute that State Farm accepted Mr. Lacey's new tender of

5  the Second Amended Complaint and agreed to pay independent counsel. (ECF 1-1,

6  Complaint, ¶32). Mrs. Lacey also does not, and cannot, dispute that, in the more

7  than three years since State Farm's acceptance, State Farm has issued at least 35

8  separate payments to Mr. Lacey's independent counsel totaling more than $800,000.

9  (Hoffman Dec., ¶5; COE Ex. 18). Consequently, as a defending insurer, State Farm

10  has the right to compel arbitration of the fee dispute under Section 2860, irrespective

11  of Mrs. Lacey's meritless allegation that it wrongfully refused the initial tender.

12    In refusing to arbitrate the fee dispute, Mrs. Lacey's counsel relies on a case

13  that involved insurer conduct so egregious and so inconsistent with the insurer's

14  defense obligation that it effectively amounted to a total breach of the duty to

15  defend. (ECF 12, p. 10) (*Janopaul + Block Cos., LLC v. Sup. Ct.*, 200 Cal.App.4th

16  1239 (2011)). *Janopaul* is distinguishable.

17    Specifically, the insurer in *Janopaul* waited *two years* after tender to accept

18  the defense and, even then, only agreed to accept the defense after being threatened

19  with a bad faith suit. *Id.* at 1243, 1248. The insurer then waited nearly *three years*

20  to make a single payment towards the defense. *Id.* at 1248. Under those

21  circumstances, the court found that the coverage issues should be resolved before

22  deciding whether to compel the fee dispute to arbitration.[8] *Id.*

_____

insured performs a deliberate act . . . [W]here the insured intended all of the acts that
resulted in the victim's injury, the event may not be deemed an 'accident' merely
because the insured did not intend to cause injury."); *Commercial Union Ins. Co. v.
Super. Ct.*, 196 Cal. App.3d 1205, 1208 (1987).

[8] *Intergulf Develop. LLC v. Sup. Ct.*, 183 Cal.App. 4th 16 (2010), cited in *Janopaul*,
is similarly distinguishable. In *Intergulf*, the insurer waited eight months to accept
the insured's tender of defense, *never* agreed to provide independent counsel

1         According to Mrs. Lacey, simply alleging a breach of the duty to defend can

2  avoid mandatory Section 2860 arbitration under *Janopaul*.  But that proposition fails

3  under the same authority *Janopaul* relied on in reaching its result.  *Janopaul*, 200

4  Cal. App. 4th at 1251 (citing *Compulink* which involved a coverage dispute, and

5  *Long* which involved an initial denial of defense).  Both *Compulink* and *Long*, as

6  well as *Truck* (which *Janopaul* ignores), involved coverage disputes.  All three

7  Courts of Appeal nonetheless compelled arbitration of the *Cumis* fee dispute.  *Long*

8  *v. Century Indemnity Co.,* 163 Cal.App.4th 1460, 1474 (2008); *Compulink*

9  *Management Center, Inc. v. St. Paul Fire & Marine Ins. Co*., 169 Cal.App.4th 289,

10  300 (2008); *Truck Insurance Exchange v. Dynamic Concepts, Inc.,* 9 Cal.App.4th

11  1147, 1150 (1992).  They demonstrate that the critical issue is not whether a

12  coverage dispute exists, but whether the insurer accepted the defense and agreed to

13  independent or *Cumis* counsel.

14         The weight of California authority agrees that where the insurer accepts the

15  defense (even if not immediately), and agrees to independent counsel, the court

16  should compel arbitration of the fee dispute irrespective of any other purported

17  coverage disputes alleged.  *Long*, 163 Cal.App.4th at 1474; *Compulink*, 169

18  Cal.App.4th at 300; *Truck*, 9 Cal.App.4th at 1150; *Arrowood Indem. Co. v. Bel Air*

19  *Mart*, 2013 U.S. Dist. LEXIS 78535 (E.D. Cal. June 3, 2013) ("where independent

20  counsel is appointed, it would undermine the concept of reservation of rights to

21  _____

22  pursuant to Section 2860, and waited until five weeks before trial in the bad faith

23  suit to move to compel arbitration under Section 2860 (still without acknowledging any obligation to provide independent counsel).  *Id.* at 19.  *Intergulf* distinguished

24  *Compulink* and *Long* because those cases "did not involve the preliminary question of duty to defend or disputes over if and when the insurer recognized the insured's

25  right to select independent counsel." *Id.* at 22.  That purported distinction was inapt,

26  however, because in *Long*, the insurer *had* initially denied a defense before later accepting the defense and agreeing to provide independent counsel.  *Long,* 163

27  Cal.App.4th at 1465 ("Although initially refusing to provide a defense, INA

28  ultimately agreed to do so pursuant to a reservation of rights.").

preclude resolution of the issue until after the declaratory relief action has been decided"); *Pepsi-Cola Metro. Bottling Co. v. Ins. Co. of N. Am.*, 2010 WL 10875087, at \*12 (C.D. Cal. Dec. 28, 2010) (rejecting suggestion that any alleged breach of the duty to defend supports refusing to compel arbitration before resolving coverage disputes, and reasoning that the only way to reconcile *Compulink* and *Intergulf* "is to find that § 2860(c) must apply to a *Cumis* fee dispute as long as an insurer timely acknowledges its duty to pay for *Cumis* counsel").

Mrs. Lacey's attempt to avoid that rule here is particularly disingenuous given that State Farm admittedly (and timely) accepted Mr. Lacey's tender of defense of the Second Amended Complaint.  (ECF 1-1, ¶ 32).  Since 2021, State Farm has made at least 35 separate payments to *Cumis* counsel totaling more than $800,000.  (Zimmerman Dec., ¶21; COE, Ex. 14; Hoffman Dec.¶5; COE. Ex. 18).  This Court need not, and should not, expend its limited resources on *Cumis* counsel's meritless ask for more.  California's Legislature adopted Section 2860 for this exact reason – to alleviate courts from being forced to adjudicate these fee disputes.

## IV.  CONCLUSION

For the foregoing reasons, State Farm respectfully requests that the Court grant its Motion.


Dated:  September 24, 2024      SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By      _____
                        */s/ Jennifer M. Hoffman*
                        JENNIFER M. HOFFMAN
                        ANDREA S. WARREN

                        Attorneys for Defendant
                        STATE FARM GENERAL INSURANCE
                        COMPANY

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant, certifies that this brief contains __6,988__ words, which complies with the word limit of L.R. 11-6.1.

_/s/ Jennifer M. Hoffman_
JENNIFER M. HOFFMAN