# EXHIBIT A

JAMS - LOS ANGELES

HONORABLE MICHAEL R. WILNER, JUDGE (RETIRED)

. . .

```
JACQUELYN "JACKIE" LACEY, IN        )
HER INDIVIDUAL CAPACITY; AND        )
JACQUELYN "JACKIE" LACEY AS         )
TRUSTEE OF THE D AND J LACEY        )
FAMILY TRUST DATED NOVEMBER 23,     )
2016,                               )
                                    )
              Plaintiffs,           )
                                    )
     v.                             )Case 1210040394
                                    )
STATE FARM GENERAL INSURANCE        )
COMPANY, AN ILLINOIS                )
CORPORATION, AND DOES 1-50,         )
INCLUSIVE,                          )
                                    )
              Defendants.           )
_____)
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Monday, February 24, 2025

Pages 1 through 40

Reported by:  Cindy E. Pacatte, CSR 12839

Transcript of Proceedings
February 24, 2025

 1   Federal Rule 53.  This is a motion to compel arbitration
 2   based on a provision of California Civil Code relating
 3   to fee disputes between an insurer and lawyers.
 4          This was a motion that was pending in district
 5   court in front of Judge Olguin.  He referred that to me
 6   as part of my appointment.  In preparation for today, I
 7   reviewed the original motion, which -- not quite sure.
 8   It might have been a filing issue, but that's at Docket
 9   Number 30.  The opposition brief with a file Number 22,
10   which sounds like a time warp issue, but apparently
11   isn't.  And then there was a reply from the insurer at
12   Docket 27.
13          As it turns out, we had a status conference a
14   couple weeks ago, two weeks ago, in which I specifically
15   said I didn't want argument on the motion.  And then I
16   ended up getting, essentially, argument on the motion
17   from both sides.  It wasn't really argument on the
18   motion, but it was a discussion of the issues in the
19   case and some helpful background on the motion itself.
20          It really did actually enable me to then go
21   back and read the papers in significantly more depth and
22   to have a better understanding of the considerable
23   amount of decisional law that both sides presented to
24   me.
25          I promised that after having reviewed the

1  papers again and conducting research, both what you
2  provided me and what I confounded, that I would give you
3  my thoughts so that we could then have, if need be, a
4  discussion on the motion.
5              And my thoughts are the following:  First of
6  all, nice job by some really good lawyers on both sides
7  with a lot to fight about.  It's a sizable claim on both
8  sides, and it's worth fighting over.  And I understand
9  the need for visibility on this issue.
10             I also, before I dive into the papers and the
11 parties' positions, was kind of fascinated by how many
12 federal and state court decisions there are on -- I'm
13 going to get this wrong -- is it 2680 or 2860?  2860.
14 California Civil Code Section 2860.  Sorry, it's not
15 dyslexia.  It's just those numbers are so close
16 together.
17             There's a lot of law, and courts come out both
18 ways on what can be kind of gray or edge-related
19 questions.  The easy questions don't come up.  If
20 there's just a fee dispute for the lawyer who's hired as
21 Cumis counsel, then it's just an understanding that it's
22 going to go to arbitration.
23             And if there are really only issues of sort of
24 tort liability or substance disputes about coverage,
25 then I don't know why an insurer would waste the time

1    distress damages.

2              Okay.  That's not on the table for me now.

3    What is on the table for me now is to figure out, what

4    is the nature of the claim in federal court.  Because if

5    it's a fee dispute -- I'm going to get it right this

6    time -- 2860 says you arbitrate it.  And if it's a tort

7    claim, you stay in federal court and you litigate it.

8    And whether it's a waiver of arbitration or a deferral

9    of arbitration, the matter stays in federal court.

10             And if it's not particularly clear what the

11   nature of the action is, then we stay in federal court

12   until we are sure.  That's the key part of the interlink

13   paradox, which is assuming plaintiff doesn't get to

14   defeat arbitration just by saying, I've got a bad-faith

15   claim or denial of duty to defend a claim, muttering

16   those words doesn't do it; nor can an insurer take the

17   federal case and shift fee arbitration merely because

18   the insurer says, we didn't do nothing wrong --

19   actually, we have a reporter -- we didn't do anything

20   wrong and self-adjudicate.

21             And those are the poles.  Those are the

22   barriers.  And the cases that the parties have cited

23   could go either way.  They look at what the fight is

24   about, was there a claim of a breach of a duty to pay,

25   was there actually a denial for a defense for a period

Transcript of Proceedings
February 24, 2025

```
 1   suing.  Okay.  And most of these are business-related
 2   claims.  And even though there might be a bad faith --
 3   somehow defense claimed an allegation, they're
 4   consequential damages.  You know, the company didn't
 5   suffer.
 6            MR. ASFOUR:  I would, Your Honor -- oh, sorry.
 7   Go ahead.
 8            THE COURT:  The company isn't upset.  A couple
 9   of theses cases did have -- I think there was a property
10   case involving some individuals who owned a property,
11   but by and large, the circumstance here of individuals
12   bringing a claim -- and you're going to point me to
13   other things.  That's fine.  That's fine.
14            But my point is it's not that heavily
15   litigated.  And so, here we have a circumstance where
16   there is an initial tender -- tender -- and a denial of
17   defense.  That changes down the road, but that initial
18   fact, whether it was right or wrong, is an issue under
19   the cases and is an issue that the Court ordinarily must
20   resolve before making an arbitrability determination.
21            And secondly, with respect to the litigation
22   in this Court, Mrs. Lacey's somewhat quiet claim but
23   growing in volume, pretty -- it's pretty quiet in the
24   original allegation, but has grown -- and I take the
25   significance of it -- of tort damages here -- no matter
```

Transcript of Proceedings
February 24, 2025

 1   It's a bit gray.
 2              And welcome, Ms. Hoffman, colleague taking a
 3   shot at arguing me off of it.  I am here with an open
 4   mind, but you wanted my thoughts.  And my thoughts are
 5   there may be enough to deny arbitration, and it will
 6   clearly be without prejudice to representation of that
 7   request, if need be, down the road.  Because that's how
 8   cases often come out, which is you're just making the
 9   arbitration argument too early.
10              You didn't challenge the pleadings.  You
11   didn't take a run at a determination on coverage.  And I
12   recognize there may be discovery issues that may be more
13   expensive to get down the road.  I hear you.  You
14   haven't said it, but I hear you anyway.
15              But issues about self-adjudication, the
16   plaintiffs have raised, do land here.  And the fact that
17   Mr. Cronthall is a terrific lawyer, whose presentation
18   last time -- I had my headphones on.  They were killing
19   my ears.  He really wanted me -- and you took a shot at
20   it too, as I recall, Ms. Hoffman -- of, no, there's no
21   coverage here.  There was never a duty to defend.  That
22   ==is cart before the horse.  It just is.  Because the==
23   ==claim is colorable enough that it has to be adjudicated==
24   ==in a different way.  And to jam it into an arbitration==
25   ==motion, I'm not offended, I'm not unhappy, but it didn't==

1    get me there.

2             So I wanted you to have my thoughts.  I wanted
3    you to know I've gone through your papers.  Yes, you've
4    got a lot of cases.  If there's something you want me to
5    reread with a couple arguments in mind, I will do that.
6    I don't have an R and R ready to go.  I wanted to talk
7    to both sides here today.

8             And, Mr. Asfour, I want to hear your thoughts
9    even though Mr. Copeland is going to cut you off, but
10   just be strong.  Let me hear what you need here.  Even
11   less, you may want to hear what Ms. Hoffman has to say.
12   But where I come out, as I do find the motion, in a
13   close -- maybe closer-than-I-thought call to be
14   premature.

15            So let me offer you a couple of options right
16   now.  One is submit, go get lunch.  Number two, argue.
17   Number three, if you want to take five or ten minutes,
18   we could have a quick break.  I realize I gave you a lot
19   here as a tentative.

20            If you wanted to think about it, figure out
21   what you want to do, maybe have a chat with the other
22   side, you're welcome to do that.  That was kind of my
23   practice.  I came out and rambled for 15, 20,
24   25 minutes.  Oftentimes, just out of mercy, I would give
25   the parties a chance.

Transcript of Proceedings
February 24, 2025

1   out to Ellis George in October of 2020, and they signed

2   their retention agreement in November of 2020, one month

3   before State Farm sent its letter saying it would not

4   defend.

5         And in that retention agreement, Ellis George

6   provided a pro bono defense.  There were no fees

7   incurred by the Laceys as it relates to Ellis George,

8   ever, in the underlying case, which we now know.  There

9   were certainly not fees incurred to Ellis George before

10  State Farm accepted the defense in March of 2021.  And

11  we also know that nothing -- that very little occurred

12  in the underlying action before State Farm accepted the

13  defense in March of 2021, not a single document was

14  filed by either Lacey in the case before State Farm

15  picked up the defense.

16        So we have a copy of that Ellis George

17  agreement here today.  I'll submit it to the Court as

18  well.  This is something that we only obtained after

19  going back to Judge Audero twice on the issue.  And it

20  shows that Ellis George was under a pro bono obligation

21  to the Laceys.

22        THE COURT:  I'm sorry.  Was any of this filed

23  with your motion?

24        MS. HOFFMAN:  It was not, Your Honor, because

25  it was not produced.

Transcript of Proceedings
February 24, 2025

 1        THE COURT:  So what you did was, he answered
 2   your question for you.  You briefly answered mine to get
 3   to your answer, which is that deposition had not even
 4   occurred by the time you filed the motion.
 5        MS. HOFFMAN:  That's correct.
 6        THE COURT:  That weighs pretty strongly.  Nice
 7   argument and I totally hear what you're saying.  You
 8   want to get to the merits of the claim.  You want to get
 9   to the merits of the fee arbitration because you're
10   strong there, you believe, and you may well be.  And,
11   again, I'm hearing you.  But some of what you're telling
12   me about how this case has developed, I'm sure that
13   Mr. Asfour or even Mr. Copeland, if I might let him
14   speak, can tell me about things that have developed in
15   their favor, but that actually all supports a conclusion
16   that this motion was premature even though with the
17   passage of time and where you're entitled to augment it
18   by slapping a couple of pieces of paper on my table here
19   that issues about coverage and issues about the nature
20   of the cases are her interlink and job fall [sic]
21   supposed to be resolved first in a case like this.
22        You want to tell me how good your case is, you
23   want to tell me how thin their claims are, I don't know
24   that I disagree, but I think the orderly process of this
25   is have that adjudication.

Transcript of Proceedings
February 24, 2025

```
 1                THE COURT:  Understood.
 2                MS. HOFFMAN:  So it would be extremely
 3    efficient to resolve all of this together.  Again,
 4    Judge Olguin's standing order restricted both Rule 56
 5    and Rule 12(c) motions.  So we would happily file a very
 6    narrow motion solely on the issue to defend.  It could
 7    be resolved quickly and efficiently based solely on the
 8    complaint in this case and the pleadings in the
 9    underlying action.
10                THE COURT:  I'm with you now, and that's an
11    issue with the standing order because it deals with
12    run-of-the-mill cases.  And there may be something about
13    this case that I need to bring to the district judge's
14    attention.  Our district judge comes out on it, reserve
15    it to his discretion.
16                Okay.  I understand your position and
17    appreciate you telling me about that.
18                Anything else you want me to know about?
19                MS. HOFFMAN:  No, Your Honor.  However, we
20    would -- we'll go ahead and -- because I pulled these
21    documents out, we'll submit them formally in evidence
22    part of the record as well.
23                THE COURT:  What kind of move is that, just
24    shoving it on the table?
25                Mr. Asfour, I understand you want to talk to
```

```
 1                CERTIFICATE OF OFFICIAL REPORTER

 2

 3           I, CINDY E. PACATTE, C.S.R. No. 12839, hereby

 4   certify:

 5           THAT on February 24th, 2025 at the hour of 10:30

 6   a.m. thereof, I reported in shorthand writing the proceedings

 7   had in the matter of JACQUELYN "JACKIE" LACEY, IN HER

 8   INDIVIDUAL CAPACITY; AND JACQUELYN "JACKIE" LACEY AS TRUSTEE

 9   OF THE D AND J LACEY FAMILY TRUST DATED NOVEMBER 23, 2016,

10   versus STATE FARM GENERAL INSURANCE COMPANY, AN ILLINOIS

11   CORPORATION, AND DOES 1-50, INCLUSIVE,

12           THAT I thereafter caused my said shorthand writing

13   to be transcribed into longhand typewriting.

14           THAT the foregoing pages 1 through 41 constitute

15   and are a full, true, correct and accurate transcription of

16   my said shorthand writing and a correct and verbatim record

17   of the proceedings so had and taken, as aforesaid.

18

19

20           Dated this 7th day of March, 2025.

21
                                    [signature: Cindy E. Pacatte]
22                                  _____

23                                  CINDY E. PACATTE, CSR 12839

24

25
```