F I L E D
CLERK, U.S. DISTRICT COURT

5/6/25

CENTRAL DISTRICT OF CALIFORNIA
BY: ___V. Figueroa___ DEPUTY

1
2
3
4
5
6
7
8
9
10

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

11
12  JACQUELYN "JACKIE" LACEY, et al.,

Plaintiffs,

v.

STATE FARM GENERAL INSURANCE CO.,

Defendant.

Case No. CV 24-5205 FMO (MAAx)

**ORDER OF SPECIAL MASTER IMPOSING NON-MONETARY SANCTIONS AND AWARDING COSTS**

**FRCP 53**

### SUMMARY OF RULING

1.    The attorneys representing Plaintiff in this civil action submitted briefs to the Special Master[1] that contained bogus AI-generated research. After additional proceedings and considerable thought, I conclude that an award combining litigation sanctions against Plaintiff and financial payments from the lawyers and law firms is appropriate to address this misconduct.

---

[1]    Hon. Michael R. Wilner, former United States Magistrate Judge for the Central District of California.

2.    I also conclude that additional financial or disciplinary sanctions against the individual attorneys are not warranted.  This was a collective debacle, and is properly resolved without further jeopardy.

## RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

### Discovery Proceedings Before the Special Master

3.    In January 2025, the Court appointed me as Special Master in this insurance-related civil action.  Central to the reason for my appointment was an ongoing dispute between the parties regarding the insurer's assertion of various privileges in discovery.  (Docket # 70, 73.)

4.    After handling intervening legal issues, I met with the parties in early April to discuss the insurer's privilege invocations.  The parties provided me with detailed letter briefs regarding the discovery issue in advance of the meeting.  When we met, the parties agreed to provide supplemental briefing on a discrete issue regarding the propriety of in camera review of some of the disputed documents.

### The Briefs with AI Research

5.    As recounted in detail in orders I issued on April 15 and 20 (attached to the Appendix to this order), Plaintiff's supplemental brief contained numerous false, inaccurate, and misleading legal citations and quotations.  According to my after-the-fact review – and supported by the candid declarations of Plaintiff's lawyers – approximately nine of the 27 legal citations in the ten-page brief were incorrect in some way.  At least two of the authorities cited do not exist at all.  Additionally, several quotations attributed to the cited judicial opinions were phony and did not accurately represent those materials.[2]  The lawyers' declarations ultimately made clear

---

[2]    Some "pincites" were not correctly reported.  While this could certainly impede research and review, I consider those errors to be at the mild end of the AI hallucination spectrum.

that the source of this problem was the inappropriate use of, and reliance on, AI tools.

6.     Here's an abbreviated summary of the events.  Plaintiff is represented by a large team of attorneys at two law firms (a lawyer moved from the Ellis George firm to K&L Gates during the course of the state court litigation underlying the insurance coverage action; the representation in the present case is shared between the two firms).[3]  The lawyers admit that Mr. Copeland, an attorney at Ellis George, used various AI tools to generate an "outline" for the supplemental brief.  That document contained the problematic legal research.

7.  Mr. Copeland sent the outline to lawyers at K&L Gates.  They incorporated the material into the brief.  No attorney or staff member at either firm apparently cite-checked or otherwise reviewed that research before filing the brief with the Special Master.  Based on the sworn statements of all involved (which I have no reason to doubt), the attorneys at K&L Gates didn't know that Mr. Copeland used AI to prepare the outline; nor did they ask him.

8.     A further wrinkle.  During my initial review of Plaintiff's brief, I was unable to confirm the accuracy of two of the authorities that the lawyers cited.  I emailed the lawyers shortly after receiving the brief to have them address this anomaly.  Later that day, K&L Gates re-submitted the brief without the two incorrect citations – but with the remaining AI-generated problems in the body of the text.[4]  An associate attorney sent me an innocuous

---

[3]     Although it's necessary to identify some parties involved here, I decline to name-and-shame all of the lawyers in this order.  They know who they are, and don't need further notoriety here.

[4]     Copies of the Original Brief and the Revised Brief (identified as Versions 1 and 3 in my initial OSC) are attached in the Appendix.  I've marked the bogus citations in both briefs in red.  I noted that there was an intervening iteration of the brief submitted to me that contained the bogus AI research and an odd

(continued. . .)

1   e-mail thanking me for catching the two errors that were "inadvertently
2   included" in the brief, and confirming that the citations in the Revised Brief
3   had been "addressed and updated."

4       9.      I didn't discover that Plaintiff's lawyers used AI – and
5   re-submitted the brief with considerably more made-up citations and
6   quotations beyond the two initial errors – until I issued a later OSC soliciting
7   a more detailed explanation. The lawyers' sworn statements and subsequent
8   submission of the actual AI-generated "outline" made clear the series of events
9   that led to the false filings. The declarations also included profuse apologies
10  and honest admissions of fault.

11      10.     I subsequently set the matter for a hearing on the OSC. My
12  April 20 order gave the parties notice of the specific types of sanctions and fee-
13  shifting awards that I was considering based on Federal Rule of Civil
14  Procedure 11 and 37, along with my inherent (and Court-delegated) authority.
15  Plaintiff's lawyers responded to the OSC and addressed me during our recent
16  hearing. I also received a submission from the defense estimating the cost of
17  the preparation of their brief on the privilege issue. This order follows.

18  **RELEVANT LEGAL AUTHORITY**

19      11.     The district court's order appointing me as Special Master
20  authorized me to "take all appropriate measures to perform the assigned
21  duties fairly and efficiently." I possess the Court's authority to "regulate all
22  proceedings" before me pursuant to the Federal Rules of Civil Procedure. This
23  expressly includes the ability to impose "any noncontempt sanction provided
24  by Rule 37" or other authority. (Docket # 70.)

25

26

27  typographical error in one of the challenged citations. I don't understand the
    significance of that additional submission, but I don't believe that it adds much to
28  the sanctions analysis.

12.     Rule 11(b) states, in relevant part, that when an attorney presents "a pleading, written motion, or other paper" to a court, the attorney "certifies that to the best of that person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances [that the] legal contentions are warranted by existing law." Rule 11(c)(3-4) states that a court may impose a sanction "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." That may include "nonmonetary directives" or "an order directing payment [ ] of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."

13.     Rule 37(a)(5)(B) states that a court "must, after giving an opportunity to be heard, require [ ] the attorney filing [an unsuccessful discovery] motion [ ] to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." Litigation-related sanctions (for disobeying a court's discovery order, but generally applicable to other circumstances) may include prohibiting a party from "supporting or opposing designated claims or defenses" or "striking pleadings in whole or in part." Fed. R. Civ. 37(b)(2)(A)(ii-iii).

14.     Separate and apart from sanctions based on these rules, a court has the inherent authority to levy sanctions against a party or attorney for, inter alia, acting in "bad faith" or for otherwise "willfully abus[ing] judicial processes." Roadway Express, Inc. v. Piper, 447 U.S. 752, 766 (1980). Sanctions based on a federal court's inherent authority are "both broader and narrower than other means of imposing sanctions" because they encompass "a full range of litigation abuses." Chambers v. NASCO, Inc., 501 U.S. 32, 46-47 (1991).

15.    The Ninth Circuit has concluded that such sanctions "are available if the court specifically finds bad faith or conduct tantamount to bad faith" by an attorney.  <u>Fink v. Gomez</u>, 239 F.3d 989, 994 (9th Cir. 2001); <u>Rocha v. Fiedler</u>, 2025 WL 1219007 at *1 (9th Cir. Apr. 28, 2025) (same standard under Fed. R. Bankr. P. 9011); <u>Arrowhead Capital Finance, Ltd. v. Picturepro, LLC</u>, 2023 WL 109722 at *2 (9th Cir. Jan. 5, 2023) (same; affirming discovery sanction award).  The "tantamount to bad faith" standard includes "a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose."  <u>Fink</u>, 239 F.3d at 994.

16.    With greater frequency, courts are now regularly evaluating the conduct of lawyers and <u>pro se</u> litigants who improperly use AI in submissions to judges.  Whether that conduct supports the imposition of various types of sanctions requires a fact- and circumstance-specific analysis.  <u>See, e.g.</u>, <u>United States v. Hayes</u>, ___ F.Supp.3d ___, 2025 WL 235531 at *10-15 (E.D. Cal. Jan 17, 2025) (sanctioning criminal defense lawyer for using AI; when questioned by the court, the lawyer's response about the source of inaccurate legal citations "was not accurate and was misleading"); <u>Saxena v. Martinez-Hernandez</u>, 2025 WL 1194003 at *2 and n.5 (D. Nev. April 23, 2025) ("Saxena's use of AI generated cases – and his subsequent refusal to accept responsibility for doing so – is just another example of Saxena's abusive litigation tactics, and further explains why the court issued case-terminating sanctions") (collecting cases); <u>United States v. Cohen</u>, 724 F.Supp.3d 251, 254, 259 (S.D.N.Y 2024) (declining to find bad faith where defense lawyer voluntarily disclosed that she "had been 'unable to verify'" false citations in colleague's brief and lawyer acknowledged that he "would have withdrawn the [fake] citations immediately if given the opportunity").

## ANALYSIS

17.     I conclude that the lawyers involved in filing the Original and Revised Briefs collectively acted in a manner that was tantamount to bad faith.  Fink, 239 F.3d at 994.  The initial, undisclosed use of AI products to generate the first draft of the brief was flat-out wrong.  Even with recent advances, no reasonably competent attorney should out-source research and writing to this technology – particularly without any attempt to verify the accuracy of that material.  And sending that material to other lawyers without disclosing its sketchy AI origins realistically put those professionals in harm's way.  Mr. Copeland candidly admitted that this is what happened, and is unreservedly remorseful about it.

18.     Yet, the conduct of the lawyers at K&L Gates is also deeply troubling.  They failed to check the validity of the research sent to them.  As a result, the fake information found its way into the Original Brief that I read.  That's bad.  But, when I contacted them and let them know about my concerns regarding a portion of their research, the lawyers' solution was to excise the phony material and submit the Revised Brief – still containing a half-dozen AI errors.  Further, even though the lawyers were on notice of a significant problem with the legal research (as flagged by the brief's recipient: the Special Master), there was no disclosure to me about the use of AI.  Instead, the e-mail transmitting the new brief merely suggested an inadvertent production error, not improper reliance on technology.  Translation: they had the information and the chance to fix this problem, but didn't take it.  Cohen, 724 F.Supp.3d at 259.

19.     I therefore conclude that (a) the initial undisclosed use of AI, (b) the failure to cite-check the Original Brief, and (perhaps most egregiously), (c) the re-submission of the defective Revised Brief without adequate

disclosure of the use of AI, taken together, demonstrate reckless conduct with the improper purpose of trying to influence my analysis of the disputed privilege issues. The Ellis George and K&L Gates firms had adequate opportunities – before and after their error had been brought to their attention – to stop this from happening. Their failure to do so justifies measured sanctions under these circumstances.

20. Those sanctions are as follows. I have struck, and decline to consider, any of the supplemental briefs that Plaintiff submitted on the privilege issue. From this, I decline to award any of the discovery relief (augmenting a privilege log, ordering production of materials, or requiring in camera review of items) that Plaintiff sought in the proceedings that led up to the bogus briefs. I conclude that these non-monetary sanctions will suffice to "deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). If the undisclosed use of AI and the submission of fake law causes a client to lose a motion or case, lawyers will undoubtedly be deterred from going down that pointless route.[5]

21. The district judge's order appointing me initially required Defendant to pay the costs of the Special Master. However, that order expressly authorized me to shift fees when I deemed appropriate. (Docket # 70 at ¶ 7.) It's certainly appropriate here. I've calculated that the fees for dealing with this issue (reviewing the various iterations of the defective briefs, issuing various orders and reviewing the responses, conducting the OSC hearing, and issuing this sanctions order) were approximately $26,100 (including service fees from the provider). Because

---

[5]    At our recent hearing, Mr. Copeland movingly asserted that neither he nor his colleagues would engage in similar conduct in the future; exposure of these events was therefore sufficient to deter them from doing this again. I completely agree. But under the Rule, I also have to consider the goal of deterring other members of the legal community. In my estimation, more is required.

Defendant advanced those fees to JAMS, Ellis George and K&L Gates are jointly and severally directed to pay that sum to the defense in reimbursement within 30 days.

22.    I also gave serious consideration to ordering Plaintiff's lawyers to compensate the defense for time that Defendant's lawyers spent on their supplemental brief.  A shift of fees to the winning party in a discovery motion is authorized and commonplace under Federal Rule of Civil Procedure 37(a)(5), and falls well within the inherent authority of the court to deter this conduct by others in the future.  I also easily conclude that Plaintiff's lawyers were not "substantially justified" in using false information in advancing their legal positions on the privilege issue.  (Fed. R. Civ. P. 37(a)(5)(B).)

23.    However, the amount of fees that the defense attested to (at my request, not theirs) for preparing the brief and attending the recent hearing approached $25,000.  I don't have any reason to dispute that sum, but I don't believe that full compensation for the briefing process – one that the defense somewhat eagerly agreed to – isn't necessary for deterrence purposes.  In an exercise of discretion, I direct Plaintiff's lawyers to pay the defense a total of $5,000 for fees incurred here.[6]

24.    My sanction notice informed the parties that I planned to order the lawyers to inform Plaintiff personally about the substance and outcome of

---

[6]    I note, but don't ascribe any weight to, Plaintiff's argument that Defendant wasn't prejudiced by the AI debacle because the parties submitted their briefs at the same time.  Given the deterrence-based motivation of this sanction order, the serendipity of simultaneous v. sequential briefing is of limited relevance to my consideration of this point.

    I'm also not swayed by the observation (in my original OSC, and echoed in Plaintiff's response brief) that, as it turned out, the AI hallucinations weren't too far off the mark in their recitations of the substantive law.  That's a pretty weak no-harm, no-foul defense of the conduct here.

1  this issue.  The lawyers told me at the hearing that they already disclosed this

2  information to their client; that's sufficient for me.  I recognize that

3  Mrs. Lacey is clearly not at fault for the AI debacle, but will bear this outcome

4  as a consequence of her lawyers' actions.  She will <u>not</u>, however, be financially

5  responsible for the monetary awards described in this order.  Those will fall

6  solely on the lawyers and their firms.

7          25.    In a further exercise of discretion, I decline to order any sanction

8  or penalty against any of the individual lawyers involved here.  In their

9  declarations and during our recent hearing, their admissions of responsibility

10 have been full, fair, and sincere.  I also accept their real and profuse apologies.

11 Justice would not be served by piling on them for their mistakes.

12 **CONCLUSION**

13         A final note.  Directly put, Plaintiff's use of AI affirmatively misled me.

14 I read their brief, was persuaded (or at least intrigued) by the authorities that

15 they cited, and looked up the decisions to learn more about them – only to find

16 that they didn't exist.  That's scary.  It almost led to the scarier outcome (from

17 my perspective) of including those bogus materials in a judicial order.  Strong

18 deterrence is needed to make sure that attorneys don't succumb to this easy

19 shortcut.

20         For these reasons, Plaintiff's supplemental briefs are struck, and no

21 further discovery relief will be granted on the disputed privilege issue.

22 Additionally, Plaintiff's law firms are ordered (jointly and severally) to pay

23 compensation to the defense in the aggregate amount of $31,100.

24

25 Dated: May 5, 2025                          /s/ Judge Wilner

26                                             _____

27                                             HON. MICHAEL R. WILNER
                                               U.S. MAGISTRATE JUDGE (RET.)
28                                             SPECIAL MASTER

# APPENDIX OF MATERIALS

1.      Special Master's Order to Show Cause re: Sanctions (April 15, 2025).

2.      Special Master's Notice of Intended Sanctions and Fee Orders (April 20, 2025).

3.      Plaintiff's Brief in Support of Obtaining Relevant, Non-Privileged Documents from Defendant (Original Brief, as marked by Special Master) (filed April 14, 2025).

4.      Plaintiff's Brief in Support of Obtaining Relevant, Non-Privileged Documents from Defendant (Revised Brief, as marked by Special Master) (filed April 14, 2025).

5.      E-mail transmitting Revised Brief to Special Master (April 14, 2025).

6.      Declaration of Trent Copeland (filed April 18, 2025) plus a version of the AI outline sent to K&L Gates (referenced in declaration, received separately).

7.      Declaration of Ryan Keech (filed April 18, 2025).

8.      Declaration of Keian Vahedy (filed April 18, 2025).

9.      Plaintiff's Response to Special Master's Notice of Intended Sanctions and Fee Orders.

Appendix 1

JAMS CASE REFERENCE NO. 1210040394

USDC CASE NO. CV 24-5205 FMO (MAAx) (C.D. Cal.)

Jacqueline "Jackie" Lacey, et al.,

      Plaintiff,

           v.

State Farm General Insurance Co.,

      Defendant.

_____

## ORDER TO SHOW CAUSE RE: SANCTIONS

1.      The district court appointed me as Special Master in this action in January 2025. (Docket # 70, 71.) The Court's appointment order specifically authorized me to "impose on a party any noncontempt sanction provided by Rule 37 or 45, and may recommend [to the district court] a contempt sanction against a party and sanctions against a nonparty." (Docket # 70 at ¶ 3 (quoting Fed. R. Civ. P. 53(c)(2)).)

2.      Plaintiff's lawyers are ordered to show cause why the Special Master should not impose sanctions based on the following:

3.      **Version 1 of Plaintiff's supplemental brief**. I conducted a hearing on a discovery issue on April 7, 2025. During that hearing, I directed the parties to submit supplemental briefing on a disputed privilege issue.

4.      I received Plaintiff's supplemental brief (Version 1) at approximately noon on Monday, April 14.[1] During my review of Version 1 of Plaintiff's brief, I went onto Westlaw to read several of the judicial decisions cited or quoted in the pleading.

5.      The problem: I couldn't verify aspects of what Plaintiff's lawyers put into the brief. Specifically, Plaintiff's lawyers included what they presented as a lengthy quotation from a decision (National Steel Products) that appeared to

---

[1]      I also received a supplemental brief from Defendant. That submission is not relevant to this OSC.

strongly support their position on the privilege issue. The passage from Version 1 is reproduced in full:

> Rather, these internal notes reference the adjusters' recommendations, pending activities, and discussion with other State Farm claims representatives regarding the Lacey's insurance claim. *National Steel Products Co. v. Superior Court*, 164 Cal.App.3d 476, 489 (1985) ("Internal memoranda or claims file materials, although they may discuss legal theories, litigation tactics or potential liability, are not privileged unless they are written by or at the direction of counsel and prepared for the purpose of transmitting information to counsel for legal advice.")

Version 1 at 7.

6.    I reviewed the online version of the appellate decision in <u>National Steel Products</u>. The text quoted in Plaintiff's brief does not exist in that opinion.

7.    Additionally, Plaintiff's lawyers cited to another judicial decision that, again, appeared to strongly support their litigation position:

> California courts are especially skeptical of overbroad privilege assertions in bad faith insurance litigation, where the insurer's claims conduct is directly at issue. *See, Booth v. Allstate Ins. Co.*, 198 Cal.App.3d 1357, 1366 (1989) ("An insurer cannot assert privilege to shield evidence of bad faith.")

Version 1 at 10.

8.    I was unable to locate this judicial decision online. I tried inputting the citation that Plaintiff provided. I also searched for it using the case caption in the brief.[2] The decision does not appear to exist.

9.    I sent an e-mail to the lawyers via JAMS Access later that day. My e-mail (sent at around 4 pm PT on April 14) was primarily intended to set up another hearing on the discovery issue. Additionally, I asked Plaintiff's lawyers to check the accuracy of the <u>National Steel Products</u> and <u>Booth</u> citations. I expressly told the lawyers that I was unable to locate the items as stated in their brief.

---

[2]    I used a Boolean search (ti(booth and allstate))in the California and 9th Circuit jurisdictional databases on Westlaw. No result found.

10.    **Version 2**.  At roughly the same time, Plaintiff's lawyers filed an amended version of their supplemental brief (Version 2).  An e-mail from an administrative assistant at the Ellis George firm informed me that the only change to Version 2 of the brief was "cosmetic to correct the placement of the screenshots" of certain disputed documents that were copied in the filing.

11.    Despite that statement, there was a curious change to the <u>National Steel Products</u> parenthetical quotation.  The purported text from the decision was fundamentally the same.  However, the end of the quotation had garbled typing added to it: "[ ] prepared for the purpose of transmitting information **Page dfsadf**for legal advice."  Version 2 at 7 (emphasis added).  The <u>Booth</u> citation was unmodified.

12.    **Version 3**.  Plaintiff's lawyers filed a third version of the supplemental brief with JAMS at approximately 6 pm PT that same day (Version 3).  Version 3 did not contain the quoted language from the <u>National Steel Products</u> decision as quoted above.  Instead, it contained a parenthetical summation with the same internal pin cite.  The parenthetical read: "(Privilege is strictly construed because it suppresses relevant facts which may be necessary for a just decision.)"  Version 3 at 7.

13.    My review of the <u>National Steel Products</u> opinion showed that this language actually <u>was</u> a direct quotation from the text of the appellate decision.  However, it appears in a different portion of the decision (Cal. App. edition page 483, not page 489) than as cited in the brief.

14.    The reference to the <u>Booth</u> decision was omitted from Version 3 of the brief.  Instead, the same sentence of the brief ("California courts are especially skeptical. . .") is supported by a different citation.[3]  Version 3 at 10.

15.    I also received an e-mail from Mr. Vahedy, an associate at the K&L Gates firm.  That e-mail stated that the Version 3 brief:

> addresses the issues raised in [my] 4:06 pm e-mail.  Specifically, references to <u>National</u> and <u>Booth</u> were inadvertently included prior to filing.  These cites have since been addressed and updated within our respective papers.

16.    **OSC**.  I'm not satisfied by that explanation.  Based on the materials I reviewed on Monday, Plaintiff's lawyers may have presented falsified research on an issue of such significance (the dispute over privilege assertions) that it led to my

---

[3]    That decision – <u>State Farm Mutual Auto Ins. Co. v. Lee</u>, 13 P.3d 1169, 1183 (Ariz. 2000) – is a ruling of the Arizona Supreme Court that may (in part) have relied on California law.

appointment as Special Master. I'm also concerned that a brief (Version 2) that allegedly was amended for "cosmetic" reasons contained a bizarre modification in one of the problematic sections.

17.     Therefore, Plaintiff's lawyers are ordered to show cause why I should not impose sanctions (or recommend that the district judge impose sanctions) on them for this conduct. Plaintiff's lawyers may discharge this OSC by filing a sworn declaration attesting in adequate detail about the circumstances by which the erroneous National Steel Products and Booth materials made their way into Versions 1 and 2 of the brief. I specifically want to know which lawyers / staff members at the firms representing Plaintiff were responsible for this conduct. I also want a statement from a competent lawyer explaining whether or not any AI product was utilized in the preparation of the brief.

18.     I also will require Mr. Copeland or Mr. Keech to personally review every citation and quotation in Version 1 of the brief. One of these lawyers will attest to the accuracy of those materials or inform me of any other problems in the supplemental brief that I didn't catch.

19.     Plaintiff's lawyers will file these declarations with me via JAMS Access by or before noon on Friday, April 18. Note that, until I resolve this issue, neither this order nor the declarations of counsel should be filed on the federal court docket. Consistent with paragraph 7 of the appointment order, the parties are informed that I may consider cost-shifting of my fees regarding this situation.


Dated: April 15, 2025                          /s/ Judge Wilner
                                     _____
                                     Hon. Michael R. Wilner (Ret.)
                                     Special Master

4

Appendix 2

## JAMS CASE REFERENCE NO. 1210040394

## USDC CASE NO. CV 24-5205 FMO (MAAx) (C.D. Cal.)

Jacquelyn "Jackie" Lacey and
Jacquelyn Lacey, Trustee for D and J Lacey Trust,

      Plaintiff,

            v.

State Farm General Insurance Co.,

      Defendant.

_____

### NOTICE OF INTENDED SANCTIONS AND FEE ORDERS
### FRCP 11, 37

1.    The district court's order appointing me as Special Master authorizes me to "take all appropriate measures to perform the assigned duties fairly and efficiently."  I possess the Court's authority to "regulate all proceedings" before me pursuant to the Federal Rules of Civil Procedure.  This includes the ability to impose "any noncontempt sanction provided by Rule 37" or other authority. (Docket # 70.)

\* \* \*

2.    The candid declarations received from Plaintiff's lawyers in recent days reveal three uncontestable conclusions about their recent legal submissions:

      a.    Mr. Copeland used several AI tools to outline Plaintiff's supplemental brief on the disputed privilege issues.  Those tools resulted in the use of fake or inaccurate legal authorities in that brief.

      b.    Neither the Ellis George nor the K&L Gates law firms properly checked the legitimacy of those authorities before filing the brief on the Court's docket or with me.

      c.    The scope of the inaccurate authorities was considerably higher than that described in my April 15 OSC order.  The declarations

of Plaintiff's lawyers identified <u>nine</u> problematic citations (out of approximately 27 cited authorities in the brief), including a reference to a second non-existent judicial decision (<u>Davis</u>).

3.      I accept the sincerity of the apologies in the lawyer's declarations regarding this conduct.  I also accept Mr. Copeland's admission of responsibility for initiating this affair.  Further, I note the contentions in the lawyers' submissions that, although they presented false legal authorities to me, the basic principles advanced in the brief (a privilege assertion cannot be used as a sword and a shield, etc.) are likely legitimate.

4.      Nevertheless, justice requires a swift, certain, and measured response. It's simply unfathomable for me to consider that attorneys of this caliber would blithely outsource their legal research in such a haphazard and amateurish manner.  The bogus filing caused me to have considerable doubts about the accuracy of all of factual and legal contentions that Plaintiff's lawyers advanced in this action – whether attributable to an AI foul-up or not.

5.      Further, the lawyers' actions resulted in real expenses to Defendant. The reason for the supplemental briefing was because of Plaintiff's request that I order production of additional materials from the defense, a revised privilege log, and potentially <u>in camera</u> review of those documents.  That request, in turn, caused Defendant: (a) to incur attorney's fees in preparing the defense supplemental brief; and (b) to bear the special master's fees for those proceedings pursuant to the original appointment order.

* * *

6.      Therefore, consistent with the provisions of Federal Rules of Civil Procedure 11[1] and 37[2] and the Court's appointment order, I provide notice that I am likely to impose the following non-monetary sanctions and fee shifting awards:

---

[1]      Rule 11(b) states, in relevant part, that when an attorney presents "a pleading, written motion, or other paper" to a court, the attorney "certifies that to the best of that person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances [that the] legal contentions are warranted by existing law." Rule 11(c)(3-4) states that a court may impose a sanction "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."  That may include "nonmonetary directives" or "an order directing payment [ ] of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."

[2]      Rule 37(a)(5)(B) states that a court "must, after giving an opportunity to be heard, require [ ] the attorney filing [an unsuccessful discovery] motion [ ] to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees."  Litigation-related sanctions (for disobeying a court's

a.      Striking all three versions of Plaintiff's supplemental brief filed on April 14, 2025.

b.      Denying – on the merits, and for lack of support – Plaintiff's request for additional discovery relief as set forth in the Plaintiff's letter of April 4, 2025.

c.      Ordering the Ellis George and K&L Gates firms jointly and severally to pay reasonable attorney's fees that Defendant incurred in the preparation and filing of its supplemental brief (filed April 14).

d.      Ordering the Ellis George and K&L Gates firms jointly and severally to pay the special master fees incurred that relate to the receipt of the bogus briefs and the OSC proceedings.

e.      Requiring Mr. Copeland to communicate in writing to Ms. Lacey about the substance and outcome of these proceedings.

7.      Defense counsel are directed to file a short declaration with JAMS listing the fees charged to their client as discussed in ¶ 5.c above.  Please submit that by noon on April 23.  I'll separately get a rough calculation of the special master fees per ¶ 5.d.

8.      Pursuant to Federal Rules of Civil Procedure 11(c)(1) and 37(a)(5)(B), Plaintiff and her lawyers will have the opportunity to respond to this notice.  That response (NTE five pages – no AI to be used), if any, will be due by 4 p.m. on Friday, April 25.  I'll set the matter for a video hearing on Tuesday, April 29, 2025 at 10:30 a.m (PT).

9.      If Plaintiff's lawyers do not intend to challenge this tentative outcome, they may promptly inform my case manager.  I'll relieve them of the filing obligation and will vacate the video hearing.[3]

---

discovery order, but generally applicable to other circumstances) may include prohibiting a party from "supporting or opposing designated claims or defenses" or "striking pleadings in whole or in part."  Fed. R. Civ. 37(b)(2)(A)(ii-iii).

[3]      I note that I have long been of the opinion that a fee award under Rule 37 should <u>not</u> be considered a personal sanction on an attorney that is potentially reportable to the State Bar of California pursuant to Business and Professions Code section 6068(o)(3). <u>C.f.</u> <u>Medina v. United Parcel Service</u>, No. C-06-791 JW PVT, 2007 WL 2123699 (N.D. Cal. 2007) (state statute "exempts" discovery-related proceedings from self-reporting obligation).

\* \* \*

     10.    The parties are informed that I personally advised District Judge Olguin on April 18 about the nature of these proceedings and the substance of the lawyers' declarations.  (Docket # 70 at ¶ 3.)


Dated: April 20, 2025               /s/ Judge Wilner

                                     _____

                                       Hon. Michael R. Wilner (Ret.)
                                       Special Master

4

ELLIS GEORGE LLP                                Appendix 3
Eric M. George (SBN 166403)
egeorge@ellisgeorge.com
Trent Copeland (SBN 136890)
tcopeland@ellisgeorge.com
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone:  (310) 274-7100
Facsimile:   (310) 275-5697

K&L GATES LLP
Ryan Q. Keech (SBN 280306)
Ryan.Keech@klgates.com
Kevin S. Asfour (SBN 228993)
Kevin.Asfour@klgates.com
Keian Vahedy (SBN 316708)
Keian.Vahedy@klgates.com
10100 Santa Monica Blvd., 8th Floor
Los Angeles, California 90067
Telephone:  (310) 552-5000
Facsimile:   (310) 552-5001

Attorneys for Plaintiff Jacquelyn "Jackie"
Lacey (in her individual capacity and as trustee
of the D and J Lacey Family Trust)

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELYN "JACKIE" LACEY, in her individual capacity; and JACQUELYN "JACKIE" LACEY as trustee of the D and J Lacey Family Trust dated November 23, 2016,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM GENERAL INSURANCE COMPANY, an Illinois corporation, and DOES 1-50, inclusive,<br><br>Defendant. | Case No. 2:24-cv-05205-FMO-MAA<br><br>*Judge:  Hon. Fernando M. Olguin*<br><br>**PLAINTIFF JACQUELYN "JACKIE" LACEY'S BRIEF IN SUPPORT OF OBTAINING RELEVANT, NON-PRIVILEGED DOCUMENTS FROM DEFENDANT STATE FARM GENERAL INSURANCE COMPANY** |

508432015.1

Pursuant to the Special Master's instructions on April 7, 2025, Plaintiff Jacquelyn Lacey, individually, and as trustee of the D and J. Lacey Family Trust Dated November 23, 2016 ("Plaintiff") submits this brief to further address defendant State Farm General Insurance Company's ("State Farm") unjustified withholding of relevant, non-privileged documents and communications in its privilege log.

## I.     <u>PRELIMINARY STATEMENT</u>

This motion presents a focused and practical request:  that the Court exercise its authority under California Evidence Code § 915(a) and (b) to conduct an in camera review of a discrete set of documents for which Defendant State Farm asserts attorney-client privilege or work product protection, despite lacking a sufficient factual or legal basis for doing so.  The essential issue before the Court is whether State Farm may shield from discovery internal claims handling communications – many involving no attorneys, and created in the ordinary course of business – based solely on generalized and repetitive assertions of privilege that fail to meet the threshold burden required by law.

At the center of this case is a fundamental question: Did State Farm act in bad faith when it denied or delayed coverage for the Laceys' claim? That inquiry necessarily turns on the conduct and state of mind of the decision-makers— specifically, State Farm's claims adjusters—whose internal communications and reasoning during the claims process are directly at issue. Yet State Farm now seeks to withhold precisely those communications through boilerplate assertions of privilege, despite failing to demonstrate that any recognized legal privilege in fact applies.

Plaintiff challenges only a narrow subset of the documents identified in State Farm's privilege log—specifically, those highlighted in red and green in Exhibit B to Plaintiff's April 4, 2025 Letter Brief to the Special Master.  The red entries concern communications between claims representatives made during the ordinary course of claims handling, while the green entries reflect internal discussions about purported

"opinions" of outside counsel, though it is unclear whether those opinions were ever formally requested or provided as legal advice. Crucially, many of these documents were created at or near key decision points—when the claim was first tendered, when coverage was denied, and when it was later accepted under a reservation of rights—making them highly relevant to the bad faith analysis.

State Farm's privilege log does not provide individualized or substantive justifications for withholding these documents. Instead, it relies on uniform, cut-and-paste assertions that offer no meaningful detail on the nature or context of the communications. This lack of specificity precludes both Plaintiff and the Court from evaluating the legitimacy of the privilege claims. Moreover, State Farm has already selectively disclosed portions of the same communications, raising serious concerns about waiver and fairness.

Evidence Code § 915(b) is tailored for precisely this type of discovery dispute. Where, as here, a prima facie showing has been made that the claimed privilege may not apply, and the proponent has failed to substantiate its claim, the Court is expressly authorized to conduct an in camera review to resolve the issue. This mechanism is not only appropriate but necessary to safeguard the integrity of the discovery process, particularly where withheld documents go to the heart of the case.

Plaintiff's request is modest, narrowly tailored, and consistent with both statutory authority and principles of fairness. A limited in camera review of these selected documents (or a subset of these challenged documents) will allow the Court to determine whether State Farm's privilege claims are valid or merely an attempt to shield relevant, discoverable evidence. Because these documents bear directly on the conduct and state of mind of the claims personnel whose decisions are central to the bad faith claim, Plaintiff respectfully requests that the Court grant the request for in camera review pursuant to Evidence Code § 915(a) and (b).

## II.    LEGAL STANDARD

Under California Evidence Code section 915(a), when a party claims that a communication is privileged, the court may conduct an *in camera* review to determine whether that claim is valid, especially where there is a dispute or uncertainty regarding the scope or waiver of the privilege.[1] *People v. Superior Court*, 25 Cal.4th 703, 725 (2001) ("A trial court has broad discretion to review materials *in camera* to determine whether a claimed privilege applies."); *see also Costco Wholesale Corp. v. Superior Court*, 47 Cal.4th 725, 739 (2009) (Court did not preclude *in camera* review entirely.  It suggested that *in camera* review may be proper when there's a sufficient showing that the privilege may not apply — *e.g.*, because of waiver, third-party involvement, or a lack of legal content.)

As the Ninth Circuit has counseled, it is not the purpose of the attorney-client privilege "to permit an attorney to conduct his client's business affairs in secret." *Matter of Fischel,* 557 F.2d 209, 211 (9th Cir. 1977).  Therefore, caution should be taken to apply the privilege strictly to ensure that "[a]n attorney's involvement in, or recommendation of, a transaction does not place a cloak of secrecy around all the incidents of such a transaction." *Id.* at 212.  Countless authorities make clear that "a litigant cannot cloak business information in privilege by involving an attorney in the communication of business matters."

## III.    STATE FARM IS WITHHOLDING RELEVANT, NON-PRIVILEGED DOCUMENTS WITHIN ITS PRIVILEGE LOG

### A. State Farm Cannot Make a *Prima Facie* Showing That the "Dominant Purpose" For Its Redacted/ Withheld Documents Is For Legal Advice.

---

[1] While section 915 would preclude reviewing the billing records in their entirety, to the extent they disclose privileged information, it does not preclude the review of redacted versions. *Lincoln General Ins. Co. v. Ryan Mercaldo LLP*, No. 13 CV 2192-W (DHB), 2015 WL 12672143 at *5 (S.D. Cal. July 31, 2015) (ordering that plaintiff reduce amount of redactions to billing records to "provide more information about the general nature of the services performed without revealing privileged communications, or attorney thought processes.")

California law requires that a party asserting the attorney-client privilege bears the burden of establishing the preliminary facts necessary to support its application. *Costco, supra,* 47 Cal.4th at 733; *Wellpoint Health Networks, Inc. v. Superior Court,* 59 Cal.App.4th 110, 119 (1997). As the party seeking to withhold responsive documents based on the attorney-client privilege or work product doctrine, State Farm must show why Plaintiff's request for production and/or *in camera* review should not be granted. *Mancini v. Ins. Corp.,* Case No. 07-cv-1750-L(NLS), 2009 WL 1765295, at *1 (S.D. Cal. June 18, 2009).

The California Supreme Court in *Costco* held that the "proper procedure" to determine whether the attorney-client privilege applies is to consider "the dominant purpose of the relationship" rather than the dominant purpose of a particular communication. *Costco, supra,* 47 Cal.4th at 734 (**"If... the dominant purpose of the relationship was not that of attorney and client, the communications would not be subject to the attorney-client privilege and therefore would generally be discoverable."**) *Id.* at 740 (emphasis added).

As explained by *Ivy Hotel San Diego, LLC v. Houston Casualty Co.*, Case No. 10-cv-2183-L, 2011 WL 4914941 (S.D. Cal. Oct. 17, 2011), in the context of a bad faith case, "[t]he attorney-client privilege would not be applicable if [the insurance company's] dominant purpose was to have [the law firm] provide business advice or act as an claims adjuster." *Id.* at *4; *Aetna Cas. & Surety Co. v. Superior Court*, 153 Cal.App.3d 467, 476 (1984) ("Where the evidence sought is directly at issue… a party should not be allowed to use privilege as both a sword and a shield."); *Zurich American Ins. Co. v. Superior Court*, 155 Cal.App.4th 1485, 1503 (2007) ("Communications by corporate employees that are not made at the direction of counsel or for the purpose of legal advice are not privileged."

State Farm cannot meet its burden here, as its counsel's factual assertions are not sufficient to establish State Farm's privilege case. *See, e.g., League of California Cities v. Superior Court,* 241 Cal.App.4th 976, 991 (2015) (upholding trial court's

508432015.1

4

CASE NO. 2:24-CV-05205-FMO-MAA

PLAINTIFF'S BRIEF IN SUPPORT OF OBTAINING RELEVANT, NON-PRIVILEGED DOCUMENTS FROM DEFENDANT STATE FARM GENERAL INSURANCE COMPANY

finding that litigation attorney's representations were insufficient to establish privilege and applicability of Evidence Code section 915). It is not enough to claim that as long as an attorney provides any legal advice, that *per se* turns "the dominant purpose" of the relationship into one of attorney-client rather than adjuster-insurance corporation. This argument is untenable because it ignores *Costco*'s instruction to evaluate the purpose of the relationship as a whole. Indeed, in *Costco*, the communication at issue was made <u>directly</u> to legal counsel for the purpose of obtaining legal advice. In contrast, many of the communications at issue here do not involve legal counsel, and were exchanged between claims adjusters discussing routine claim handling activities. These communications are business-oriented, not legal in nature, and do not fall within the scope of the attorney-client privilege. Additionally, other communications were originated from a claims adjuster/handler and were sent directly to "State Farm Claim File" without any indication of how, when or where an attorney communication was involved. *Costco, supra*, 47 Cal.4th at 739 ("The privilege... applies only when the client intends to seek legal advice and the communication is made for that purpose.")

Many courts have explained that while the attorney might be retained to both adjust a claim and provide legal advice, the question of whether the communications are privileged hinges on what purpose predominated. *See, e.g., Cason v. Federated Life Ins. Co.*, Case No. C-10-0792 EMC, 2011 WL 1807427, 2 (N.D. Cal. May 11, 2011). Because the test is a holistic one, a few needles of legal advice amongst a haystack of claims adjusting does not turn a predominantly claims adjusting relationship into an attorney-client relationship. There are also multiple district court cases in which parties have been ordered to produce communications after a finding that the dominant purpose under the *Costco* analysis was not attorney-client. *See, e.g., Syncora Guarantee Inc. v. EMC Mortg. Corp.*, Case No. MC 13-80037 SI, 2013 WL 2552360, *3 (N.D. Cal. Jun. 10, 2013) (finding that "dominant purpose" of relationship under *Costco* was not that of attorney-client, ordering production).

508432015.1

5

CASE NO. 2:24-CV-05205-FMO-MAA

PLAINTIFF'S BRIEF IN SUPPORT OF OBTAINING RELEVANT, NON-PRIVILEGED DOCUMENTS FROM DEFENDANT STATE FARM GENERAL INSURANCE COMPANY

1   Suffice to say, the dominant purpose of State Farm's redacted and withheld
2   communications is to seek business advice and discuss claims handling functions,
3   not legal advice.  See *Costco*, *supra*, 47 Cal.4th at 735; *Davis v. City of Santa Ana*,
4   *51 Cal.App.5th 1094, 1115 (2020)*.  Its privilege log identifies 519 redactions and
5   documents, each uniformly withheld as: "legal communications, oversight, opinions
6   and strategy involving litigation counsel."  Approximately 44 entries (color-coded as
7   green) and 248 entries (color-coded as red) are claims file notes created by and
8   between State Farm's claims representatives in the ordinary course of business.  And
9   as argued before the Special Master, these entries do not comport with the
10  description.  State Farm fails to identify even a single attorney that was either (a) the
11  author or contributor of the "privileged" documents; or (b) a party to an allegedly
12  confidential communication with State Farm.  And the examples of this are both



25  expansive and egregious.
26  For example, State Farm's privilege log contains voluminous copy-and-paste
27  entries stating, "redaction of claim note reflecting legal communications, oversight,
28  opinions, and strategy involving coverage counsel," withheld as "ACP, AWP."  But

upon review of the documents themselves, the authors identified are claims adjusters,



not lawyers (*e.g.*, Richard Marks, Pierre Brookins, Jamie Johnson, and Stacey Allman). The communications are internal, identifying the recipients of the communications as "State Farm Claim File," rather than a person. See *e.g.*, SF-CF-(PLUP) 000074-75:

See also, SF-CF (PLUP) 000028:

Each of the above examples, *albeit limited given the page limits*, are claims file notes entered by claims adjusters assigned to handle the Lacey's claim file in the regular course of their business, none of which are addressed to counsel for legal opinions, nor are they attorney-work product. Rather, these internal notes reference the adjusters' recommendations, pending activities, and discussion with other State Farm claims representatives regarding the Lacey's insurance claim. *National Steel Products Co. v. Superior Court*, 164 Cal.App.3d 476, 489 (1985) ("Internal memoranda or claims file materials, although they may discuss legal theories, litigation tactics or potential liability, are not privileged unless they are written by or at the direction of counsel and prepared for the purpose of transmitting information to counsel for legal advice.")

What *Costco* also reaffirmed is the long-standing principle that "a client cannot protect unprivileged information from discovery by transmitting it to an attorney."

508432015.1

*Costco, supra,* 47 Cal.4th at 735. Indeed, "[b]ecause an in-house lawyer often has other functions in addition to providing legal advice, the lawyer's role on a particular occasion will not be self-evident as it usually is in the case of outside counsel." *Minebea Co., Ltd. v. Papst,* 228 F.R.D. 13, 21 (D.D.C. 2005). Accordingly, "courts impose a higher burden on in-house counsel to 'clearly demonstrate' that advice was given in a legal capacity." *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B,* 230 F.R.D. 398, 411 n.20 (D. Md. 2005) (citation omitted).

And the principle applies equally here with regard to State farm's coverage counsel. To justify withholding communications with coverage counsel, the "lawyer's role as a lawyer must be primary to her participation" in the communication. *In re Vioxx Prods. Liability Litig.,* 501 F. Supp. 2d 789, 798 (E.D. La. 2007). Communications with in-house counsel are not privileged to the extent they "would have been made because of a business purpose," regardless of whether there may have been a "perceived additional interest in securing legal advice." *McCaugherty v. Siffermann,* 132 F.R.D. 234, 238 (N.D. Cal. 1990). *See also, e.g.,* *Upjohn Co. v. U.S.,* 449 U.S. 383, 395-96 (1981) (ACP only protects communications from client to attorney, and not disclosure of underlying facts). Based on the foregoing, *Plaintiff has made* a factual showing that State Farm's claims file notes may not be privileged.

## B. *In Camera* Review Is Warranted Because the Claims Adjusters' Conduct Is the Core of the Bad Faith Claim and Cannot Be Shielded.

This case turns on what State Farm's claims personnel did, when they did it, and why. The internal communications reflect the evaluative process that led to State Farm's decisions regarding its initial denial of coverage to David Lacey. Indeed, State Farm seeks to withhold from disclosure even the <u>very</u> <u>first</u> entry into its claims file titled "**New Suit Notification**." This communication has been entirely redacted and reflects the entry as having been made into the file by a claims representative – without reference to an attorney (or even a communication with an attorney)

508432015.1

1   whatsoever. The wholesale redaction reflected in SF-CF (HO) 000110 is a further

2   illustration of this point:.

3       SF-CF (HO) 000110



4

16      In sum, to allow State Farm to hide those very communications would defeat

17  the truth-seeking purpose of discovery in bad faith litigation. *Lipton v. Superior*

18  *Court*, 48 Cal.App.4th 1599, 1619 (1996) ("A party may not use the privilege as both

19  a sword and a shield.")

20      Courts frequently conduct *in camera* review of communications in appropriate

21  circumstances. *See, e.g., Minebea Co., Ltd. v. Papst,* 228 F.R.D. 13, 21 (D.D.C.

22  2005) (ordering communications produced after *in camera* review: "Because an in-

23  house lawyer often has other functions in addition to providing legal advice, the

24  lawyer's role on a particular occasion will not be self-evident."). Here, review is

25  imperative given the lack of integrity of State Farm's privilege log more generally.

26      *First*, the issue remains that the description for every entry in State Farm's

27  privilege log is nearly the same: "Redaction of claim note reflecting legal

28  communications, oversight, opinions and strategy involving litigation counsel."

1  These kinds of inaccuracies alone can justify *in camera* review. *See,* e.g, *Hohider v.*
2  *United Parcel Service, Inc.,* 257 F.R.D. 80, 84 (W.D. Pa. 2009) (*in camera* review is
3  justified where "doubts" are present regarding the assertions and descriptions in a
4  privilege log).

5       *Second*, with regard to communications between State Farm's claims
6  representatives and coverage counsel, there is also no basis to withhold unless such
7  communications include the request or receipt of "legal advice." Communications
8  reflecting or containing coverage counsel's "impressions" or opinions of litigation
9  counsel and/or litigation counsels' strategy are not privileged. California courts are
10 especially skeptical of overbroad privilege assertions in bad faith insurance litigation,
11 where the insurer's claims conduct is directly at issue. *See*, *Booth v. Allstate Ins. Co.,*
12 198 Cal.App.3d 1357, 1366 (1989) ("An insurer cannot assert privilege to shield
13 evidence of bad faith.")

14       Here, State Farm has not provided sufficient information for Plaintiff to even
15 evaluate whether its coverage counsel was engaged in anything other than "claims
16 investigation activities." Indeed, it is hard to imagine what legal advice, if any, State
17 Farm could be seeking day after day for the entirety of its claim handling. There is
18 no basis for redacting claims representative documents, especially where this bad
19 faith action challenges State Farm's "oversight, opinions and strategy," all of which
20 prejudiced Plaintiff in the underlying matter. See *Nei v. Travelers Home and Marine*
21 *Ins. Co.*, 326 F.R.D. 652 (2018) holding that attorney-client privilege does not apply
22 when an attorney acts as a claims adjuster, supervisor, or investigation monitor rather
23 than a legal advisor).

## IV.   **CONCLUSION**

25       For the foregoing reasons, the Special Master should order those red and green
26 color-colored entries from State Farm's privilege log be submitted to the Special
27 Master for *in camera* review and, if appropriate based on such review, order them
28 produced to Plaintiff.

508432015.1

CASE NO. 2:24-CV-05205-FMO-MAA
PLAINTIFF'S BRIEF IN SUPPORT OF OBTAINING RELEVANT, NON-PRIVILEGED DOCUMENTS
FROM DEFENDANT STATE FARM GENERAL INSURANCE COMPANY

1

2    Dated:        April 14, 2025              Respectfully Submitted,

3                                             ELLIS GEORGE LLP

4

5                                             By:   /s/ Trent Copeland

6                                                  Eric M. George
                                                   Trent Copeland
7
                                             Attorneys for Plaintiffs
8                                            Jacquelyn "Jackie" Lacey and
                                             Jacquelyn "Jackie" Lacey as trustee
9                                            of the D and J. Lacey Family Trust
                                             Dated November 23, 2016
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

508432015.1

11    CASE NO. 2:24-CV-05205-FMO-MAA

PLAINTIFF'S BRIEF IN SUPPORT OF OBTAINING RELEVANT, NON-PRIVILEGED DOCUMENTS
FROM DEFENDANT STATE FARM GENERAL INSURANCE COMPANY

Appendix 4

ELLIS GEORGE LLP
Eric M. George (SBN 166403)
egeorge@ellisgeorge.com
Trent Copeland (SBN 136890)
tcopeland@ellisgeorge.com
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone:  (310) 274-7100
Facsimile:   (310) 275-5697

K&L GATES LLP
Ryan Q. Keech (SBN 280306)
Ryan.Keech@klgates.com
Kevin S. Asfour (SBN 228993)
Kevin.Asfour@klgates.com
Keian Vahedy (SBN 316708)
Keian.Vahedy@klgates.com
10100 Santa Monica Blvd., 8th Floor
Los Angeles, California 90067
Telephone:  (310) 552-5000
Facsimile:   (310) 552-5001

Attorneys for Plaintiff Jacquelyn "Jackie"
Lacey (in her individual capacity and as trustee
of the D and J Lacey Family Trust)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELYN "JACKIE" LACEY, in her individual capacity; and JACQUELYN "JACKIE" LACEY as trustee of the D and J Lacey Family Trust dated November 23, 2016,<br><br>        Plaintiff,<br><br>    v.<br><br>STATE FARM GENERAL INSURANCE COMPANY, an Illinois corporation, and DOES 1-50, inclusive,<br><br>        Defendant. | Case No. 2:24-cv-05205-FMO-MAA<br><br>*Judge:  Hon. Fernando M. Olguin*<br><br>**PLAINTIFF JACQUELYN "JACKIE" LACEY'S SECOND AMENDED BRIEF IN SUPPORT OF OBTAINING RELEVANT, NON-PRIVILEGED DOCUMENTS FROM DEFENDANT STATE FARM GENERAL INSURANCE COMPANY** |

508432015.1

Pursuant to the Special Master's instructions on April 7, 2025, Plaintiff Jacquelyn Lacey, individually, and as trustee of the D and J. Lacey Family Trust Dated November 23, 2016 ("Plaintiff") submits this brief to further address defendant State Farm General Insurance Company's ("State Farm") unjustified withholding of relevant, non-privileged documents and communications in its privilege log.

## I.    PRELIMINARY STATEMENT

This motion presents a focused and practical request:  that the Court exercise its authority under California Evidence Code § 915(a) and (b) to conduct an in camera review of a discrete set of documents for which Defendant State Farm asserts attorney-client privilege or work product protection, despite lacking a sufficient factual or legal basis for doing so.  The essential issue before the Court is whether State Farm may shield from discovery internal claims handling communications – many involving no attorneys, and created in the ordinary course of business – based solely on generalized and repetitive assertions of privilege that fail to meet the threshold burden required by law.

At the center of this case is a fundamental question: Did State Farm act in bad faith when it denied or delayed coverage for the Laceys' claim? That inquiry necessarily turns on the conduct and state of mind of the decision-makers—specifically, State Farm's claims adjusters—whose internal communications and reasoning during the claims process are directly at issue. Yet State Farm now seeks to withhold precisely those communications through boilerplate assertions of privilege, despite failing to demonstrate that any recognized legal privilege in fact applies.

Plaintiff challenges only a narrow subset of the documents identified in State Farm's privilege log—specifically, those highlighted in red and green in Exhibit B to Plaintiff's April 4, 2025 Letter Brief to the Special Master.  The red entries concern communications between claims representatives made during the ordinary course of claims handling, while the green entries reflect internal discussions about purported

1    "opinions" of outside counsel, though it is unclear whether those opinions were ever
2    formally requested or provided as legal advice. Crucially, many of these documents
3    were created at or near key decision points—when the claim was first tendered, when
4    coverage was denied, and when it was later accepted under a reservation of rights—
5    making them highly relevant to the bad faith analysis.

6         State Farm's privilege log does not provide individualized or substantive
7    justifications for withholding these documents. Instead, it relies on uniform, cut-and-
8    paste assertions that offer no meaningful detail on the nature or context of the
9    communications. This lack of specificity precludes both Plaintiff and the Court from
10   evaluating the legitimacy of the privilege claims. Moreover, State Farm has already
11   selectively disclosed portions of the same communications, raising serious concerns
12   about waiver and fairness.

13        Evidence Code § 915(b) is tailored for precisely this type of discovery dispute.
14   Where, as here, a prima facie showing has been made that the claimed privilege may
15   not apply, and the proponent has failed to substantiate its claim, the Court is expressly
16   authorized to conduct an in camera review to resolve the issue. This mechanism is
17   not only appropriate but necessary to safeguard the integrity of the discovery process,
18   particularly where withheld documents go to the heart of the case.

19        Plaintiff's request is modest, narrowly tailored, and consistent with both
20   statutory authority and principles of fairness. A limited in camera review of these
21   selected documents (or a subset of these challenged documents) will allow the Court
22   to determine whether State Farm's privilege claims are valid or merely an attempt to
23   shield relevant, discoverable evidence. Because these documents bear directly on the
24   conduct and state of mind of the claims personnel whose decisions are central to the
25   bad faith claim, Plaintiff respectfully requests that the Court grant the request for in
26   camera review pursuant to Evidence Code § 915(a) and (b).

27

28
     508432015.1

## II.     LEGAL STANDARD

Under California Evidence Code section 915(a), when a party claims that a communication is privileged, the court may conduct an *in camera* review to determine whether that claim is valid, especially where there is a dispute or uncertainty regarding the scope or waiver of the privilege.[1] *People v. Superior Court*, 25 Cal.4th 703, 725 (2001) ("A trial court has broad discretion to review materials *in camera* to determine whether a claimed privilege applies."); *see also Costco Wholesale Corp. v. Superior Court*, 47 Cal.4th 725, 739 (2009) (Court did not preclude *in camera* review entirely.  It suggested that *in camera* review may be proper when there's a sufficient showing that the privilege may not apply — *e.g.*, because of waiver, third-party involvement, or a lack of legal content.)

As the Ninth Circuit has counseled, it is not the purpose of the attorney-client privilege "to permit an attorney to conduct his client's business affairs in secret." *Matter of Fischel,* 557 F.2d 209, 211 (9th Cir. 1977).  Therefore, caution should be taken to apply the privilege strictly to ensure that "[a]n attorney's involvement in, or recommendation of, a transaction does not place a cloak of secrecy around all the incidents of such a transaction."  *Id.* at 212.  Countless authorities make clear that "a litigant cannot cloak business information in privilege by involving an attorney in the communication of business matters."

## III.    STATE FARM IS WITHHOLDING RELEVANT, NON-PRIVILEGED DOCUMENTS WITHIN ITS PRIVILEGE LOG

### A. State Farm Cannot Make a *Prima Facie* Showing That the "Dominant Purpose" For Its Redacted/ Withheld Documents Is For Legal Advice.

California law requires that a party asserting the attorney-client privilege bears the burden of establishing the preliminary facts necessary to support its application.

---

[1] While section 915 would preclude reviewing the billing records in their entirety, to the extent they disclose privileged information, it does not preclude the review of redacted versions. *Lincoln General Ins. Co. v. Ryan Mercaldo LLP*, No. 13 CV 2192-W (DHB), 2015 WL 12672143 at *5 (S.D. Cal. July 31, 2015) (ordering that plaintiff reduce amount of redactions to billing records to "provide more information about the general nature of the services performed without revealing privileged communications, or attorney thought processes.")

1   *Costco, supra*, 47 Cal.4th at 733; *Wellpoint Health Networks, Inc. v. Superior Court*,
2   59 Cal.App.4th 110, 119 (1997). As the party seeking to withhold responsive
3   documents based on the attorney-client privilege or work product doctrine, State
4   Farm must show why Plaintiff's request for production and/or *in camera* review
5   should not be granted. *Mancini v. Ins. Corp.*, Case No. 07-cv-1750-L(NLS), 2009
6   WL 1765295, at *1 (S.D. Cal. June 18, 2009).

7       The California Supreme Court in *Costco* held that the "proper procedure" to
8   determine whether the attorney-client privilege applies is to consider "the dominant
9   purpose of the relationship" rather than the dominant purpose of a particular
10  communication. *Costco, supra,* 47 Cal.4th at 734 (**"If... the dominant purpose of**
11  **the relationship was not that of attorney and client, the communications would**
12  **not be subject to the attorney-client privilege and therefore would generally be**
13  **discoverable."**) *Id.* at 740 (emphasis added).

14      As explained by *Ivy Hotel San Diego, LLC v. Houston Casualty Co.*, Case No.
15  10-cv-2183-L, 2011 WL 4914941 (S.D. Cal. Oct. 17, 2011), in the context of a bad
16  faith case, "[t]he attorney-client privilege would not be applicable if [the insurance
17  company's] dominant purpose was to have [the law firm] provide business advice or
18  act as an claims adjuster." *Id.* at *4; *Aetna Cas. & Surety Co. v. Superior Court*, 153
19  Cal.App.3d 467, 476 (1984) ("Where the evidence sought is directly at issue… a
20  party should not be allowed to use privilege as both a sword and a shield."); *Zurich*
21  *American Ins. Co. v. Superior Court*, 155 Cal.App.4th 1485, 1503 (2007)
22  ("Communications by corporate employees that are not made at the direction of
23  counsel or for the purpose of legal advice are not privileged.")

24      State Farm cannot meet its burden here, as its counsel's factual assertions are
25  not sufficient to establish State Farm's privilege case. *See, e.g., League of California*
26  *Cities v. Superior Court,* 241 Cal.App.4th 976, 991 (2015) (upholding trial court's
27  finding that litigation attorney's representations were insufficient to establish
28  privilege and applicability of Evidence Code section 915). It is not enough to claim

508432015.1

4          CASE NO. 2:24-CV-05205-FMO-MAA

1   that as long as an attorney provides any legal advice, that *per se* turns "the dominant

2   purpose" of the relationship into one of attorney-client rather than adjuster-insurance

3   corporation. This argument is untenable because it ignores *Costco*'s instruction to

4   evaluate the purpose of the relationship as a whole. Indeed, in *Costco*, the

5   communication at issue was made <u>directly</u> to legal counsel for the purpose of

6   obtaining legal advice. In contrast, many of the communications at issue here do not

7   involve legal counsel, and were exchanged between claims adjusters discussing

8   routine claim handling activities. These communications are business-oriented, not

9   legal in nature, and do not fall within the scope of the attorney-client privilege.

10  Additionally, other communications were originated from a claims adjuster/handler

11  and were sent directly to "State Farm Claim File" without any indication of how,

12  when or where an attorney communication was involved. *Costco*, *supr*a, 47 Cal.4th

13  at 739 ("The privilege... applies only when the client intends to seek legal advice and

14  the communication is made for that purpose.")

15      Many courts have explained that while the attorney might be retained to both

16  adjust a claim and provide legal advice, the question of whether the communications

17  are privileged hinges on what purpose predominated. *See*, *e.g.*, *Cason v. Federated*

18  *Life Ins. Co.*, Case No. C-10-0792 EMC, 2011 WL 1807427, 2 (N.D. Cal. May 11,

19  2011). Because the test is a holistic one, a few needles of legal advice amongst a

20  haystack of claims adjusting does not turn a predominantly claims adjusting

21  relationship into an attorney-client relationship. There are also multiple district court

22  cases in which parties have been ordered to produce communications after a finding

23  that the dominant purpose under the *Costco* analysis was not attorney-client. *See*,

24  *e.g., Syncora Guarantee Inc. v. EMC Mortg. Corp.*, Case No. MC 13-80037 SI, 2013

25  WL 2552360, *3 (N.D. Cal. Jun. 10, 2013) (finding that "dominant purpose" of

26  relationship under *Costco* was not that of attorney-client, ordering production).

27      Suffice to say, the dominant purpose of State Farm's redacted and withheld

28  communications is to seek business advice and discuss claims handling functions,

not legal advice.  See *Costco*, *supra*, 47 Cal.4th at 735; *Davis v. City of Santa Ana*, 51 Cal.App.5th 1094, 1115 (2020).  Its privilege log identifies 519 redactions and documents, each uniformly withheld as: "legal communications, oversight, opinions and strategy involving litigation counsel."  Approximately 44 entries (color-coded as green) and 248 entries (color-coded as red) are claims file notes created by and between State Farm's claims representatives in the ordinary course of business.  And as argued before the Special Master, these entries do not comport with the description.  State Farm fails to identify even a single attorney that was either (a) the author or contributor of the "privileged" documents; or (b) a party to an allegedly confidential communication with State Farm.  And the examples of this are both expansive and egregious.

For example, State Farm's privilege log contains voluminous copy-and-paste entries stating, "redaction of claim note reflecting legal communications, oversight, opinions, and strategy involving coverage counsel," withheld as "ACP, AWP."  But upon review of the documents themselves, the authors identified are claims adjusters, not lawyers (*e.g.*, Richard Marks, Pierre Brookins, Jamie Johnson, and Stacey Allman).  The communications are internal, identifying the recipients of the communications as "State Farm Claim File," rather than a person.  See *e.g.*, SF-CF-(PLUP) 000074-75:



508432015.1

6                    CASE NO. 2:24-CV-05205-FMO-MAA

PLAINTIFF'S SECOND AMENDED BRIEF IN SUPPORT OF OBTAINING RELEVANT, NON-PRIVILEGED DOCUMENTS FROM DEFENDANT STATE FARM GENERAL INSURANCE COMPANY

The three plaintiffs Dr. Melina Abdullah, Dahlia Ferlito and Justin Marks filed suit in Los Angeles County Superior Court for Negligence, Civil Rights Violations, Assault and Battery, and Intentional Infliction of Emotional Distress.

Please advise if you have any questions or suggestions.  Richard Marks 11/18/20

See also, SF-CF (PLUP) 000028:

03-30-2021 - 12:07 PM CDT          Performer: Brookins, Pierre                    Office:COWNPHX
    File Note: Casualty Pending
    Participant:                                              COL / Line (Participant):
    Category: Pending                                    Sub Category:
Investigation
•    Finalize potential for damages
•    MSJ outcome for Jacquelyn Lacey
•    Coverage questions surrounding false imprisonment for David Lacey
•    Review Amended Complaints
Liability
•    Finalize Liability
Damages/ Evaluation
•    Obtain damage docs that outline claimants damages
•    Respond to PL counsel regarding rates
03-30-2021 - 11:20 AM CDT          Performer: Brookins, Pierre                    Office:COWNPHX
    File Note: Casualty Claim Note
    Participant: ELLIS GEORGE CIPOLLONE               COL / Line (Participant):
    Category: Authority                                      Sub Category:
NI atty has provided this letter challenging the rate that we have advised that we are willing to pay in this matter. Insured Cumis Counsel is providing case law showing cases where higher rates have been considered.

03-16-2021 - 6:22 PM CDT           Performer: Bray, Joyce                          Office:COWNPHX

Date: 08-05-2024                                                                          Page 4

Each of the above examples, *albeit limited given the page limits*, are claims file notes entered by claims adjusters assigned to handle the Lacey's claim file in the regular course of their business, none of which are addressed to counsel for legal opinions, nor are they attorney-work product.  Rather, these internal notes reference the adjusters' recommendations, pending activities, and discussion with other State Farm claims representatives regarding the Lacey's insurance claim.  *National Steel Products Co. v. Superior Court*, 164 Cal.App.3d 476, 489 (1985) (Privilege is strictly construed because it suppresses relevant facts which may be necessary for a just decision.)

What *Costco* also reaffirmed is the long-standing principle that "a client cannot protect unprivileged information from discovery by transmitting it to an attorney." *Costco, supra,* 47 Cal.4th at 735.  Indeed, "[b]ecause an in-house lawyer often has

other functions in addition to providing legal advice, the lawyer's role on a particular occasion will not be self-evident as it usually is in the case of outside counsel." *Minebea Co., Ltd. v. Papst,* 228 F.R.D. 13, 21 (D.D.C. 2005). Accordingly, "courts impose a higher burden on in-house counsel to 'clearly demonstrate' that advice was given in a legal capacity." *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B,* 230 F.R.D. 398, 411 n.20 (D. Md. 2005) (citation omitted).

And the principle applies equally here with regard to State farm's coverage counsel. To justify withholding communications with coverage counsel, the "lawyer's role as a lawyer must be primary to her participation" in the communication. *In re Vioxx Prods. Liability Litig.,* 501 F. Supp. 2d 789, 798 (E.D. La. 2007). Communications with in-house counsel are not privileged to the extent they "would have been made because of a business purpose," regardless of whether there may have been a "perceived additional interest in securing legal advice." *McCaugherty v. Siffermann,* 132 F.R.D. 234, 238 (N.D. Cal. 1990). *See also, e.g*., *Upjohn Co. v. U.S.*, 449 U.S. 383, 395-96 (1981) (ACP only protects communications from client to attorney, and not disclosure of underlying facts). Based on the foregoing, *Plaintiff has made* a factual showing that State Farm's claims file notes may not be privileged.

**B. *In Camera* Review Is Warranted Because the Claims Adjusters' Conduct Is the Core of the Bad Faith Claim and Cannot Be Shielded.**

This case turns on what State Farm's claims personnel did, when they did it, and why. The internal communications reflect the evaluative process that led to State Farm's decisions regarding its initial denial of coverage to David Lacey. Indeed, State Farm seeks to withhold from disclosure even the <u>very first</u> entry into its claims file titled "**New Suit Notification**." This communication has been entirely redacted and reflects the entry as having been made into the file by a claims representative – without reference to an attorney (or even a communication with an attorney) whatsoever. The wholesale redaction reflected in SF-CF (HO) 000110 is a further

illustration of this point:. *See* SF-CF (HO) 000110



In sum, to allow State Farm to hide those very communications would defeat the truth-seeking purpose of discovery in bad faith litigation. *Lipton v. Superior Court*, 48 Cal.App.4th 1599, 1619 (1996) ("A party may not use the privilege as both a sword and a shield.")

Courts frequently conduct *in camera* review of communications in appropriate circumstances. *See, e.g., Minebea Co., Ltd. v. Papst,* 228 F.R.D. 13, 21 (D.D.C. 2005) (ordering communications produced after *in camera* review: "Because an in-house lawyer often has other functions in addition to providing legal advice, the lawyer's role on a particular occasion will not be self-evident."). Here, review is imperative given the lack of integrity of State Farm's privilege log more generally.

*First*, the issue remains that the description for every entry in State Farm's privilege log is nearly the same: "Redaction of claim note reflecting legal communications, oversight, opinions and strategy involving litigation counsel." These kinds of inaccuracies alone can justify *in camera* review. *See,* e.g, *Hohider v. United Parcel Service, Inc.,* 257 F.R.D. 80, 84 (W.D. Pa. 2009) (*in camera* review is justified where "doubts" are present regarding the assertions and descriptions in a privilege log).

9                CASE NO. 2:24-CV-05205-FMO-MAA
PLAINTIFF'S SECOND AMENDED BRIEF IN SUPPORT OF OBTAINING RELEVANT, NON-PRIVILEGED DOCUMENTS FROM DEFENDANT STATE FARM GENERAL INSURANCE COMPANY

1    *Second*, with regard to communications between State Farm's claims

2    representatives and coverage counsel, there is also no basis to withhold unless such

3    communications include the request or receipt of "legal advice." Communications

4    reflecting or containing coverage counsel's "impressions" or opinions of litigation

5    counsel and/or litigation counsels' strategy are not privileged. California courts are

6    especially skeptical of overbroad privilege assertions in bad faith insurance litigation,

7    where the insurer's claims conduct is directly at issue. *See*, *State Farm Mut. Auto.*

8    *Ins. Co. v. Lee*, 13 P.3d 1169, 1183 (2000) ("But a litigant cannot with one hand

9    wield the sword—asserting as a defense that, as the law requires, it made a reasonable

10   investigation into the state of the law and in good faith drew conclusions from that

11   investigation—and with the other hand raise the shield—using the privilege to keep

12   the jury from finding out what its employees actually did, learned in, and gained from

13   that investigation.")

14   Here, State Farm has not provided sufficient information for Plaintiff to even

15   evaluate whether its coverage counsel was engaged in anything other than "claims

16   investigation activities." Indeed, it is hard to imagine what legal advice, if any, State

17   Farm could be seeking day after day for the entirety of its claim handling. There is

18   no basis for redacting claims representative documents, especially where this bad

19   faith action challenges State Farm's "oversight, opinions and strategy," all of which

20   prejudiced Plaintiff in the underlying matter. See *Nei v. Travelers Home and Marine*

21   *Ins. Co.*, 326 F.R.D. 652 (2018) (holding that attorney-client privilege does not apply

22   when an attorney acts as a claims adjuster, supervisor, or investigation monitor rather

23   than a legal advisor).

24   **IV.   CONCLUSION**

25   For the foregoing reasons, the Special Master should order those red and green

26   color-colored entries from State Farm's privilege log be submitted to the Special

27   Master for *in camera* review and, if appropriate based on such review, order them

28   produced to Plaintiff.

508432015.1

10                    CASE NO. 2:24-CV-05205-FMO-MAA

1    Dated:       April 14, 2025             Respectfully Submitted,

2

3                                             ELLIS GEORGE LLP

4

5                                  By:   /s/ Trent Copeland

6                                          Eric M. George
                                         Trent Copeland

7                                          Attorneys for Plaintiffs
                                         Jacquelyn "Jackie" Lacey and

8                                          Jacquelyn "Jackie" Lacey as trustee
                                         of the D and J. Lacey Family Trust

9                                          Dated November 23, 2016

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S SECOND AMENDED BRIEF IN SUPPORT OF OBTAINING RELEVANT, NON-PRIVILEGED DOCUMENTS FROM DEFENDANT STATE FARM GENERAL INSURANCE COMPANY

Appendix 5

## Michael Wilner

| | |
|---|---|
| **From:** | Vahedy, Keian <Keian.Vahedy@klgates.com> |
| **Sent:** | Monday, April 14, 2025 6:37 PM |
| **To:** | Stephanie Barraza; Michael Wilner |
| **Cc:** | Keech, Ryan Q.; Trent Copeland; Asfour, Kevin; Kathleen McCormick; Jennifer Hoffman; Andre Cronthall; Eric M. George; Andrea Warren |
| **Subject:** | Lacey, Jacquelyn, et al. vs. State Farm General Insurance Company - JAMS#1210040394 |

 **Caution:** This email originated from outside JAMS. Do not click on links, scan QR codes, or open attachments unless you recognize the sender and know the content is safe. 

Good Afternoon Judge Wilner,

Plaintiff has submitted a Second Amended Brief in support of Obtaining Relevant Non-Privileged Documents from Defendant State Farm General Insurance Company. This version addresses the issues raised in your 4:06pm email.  Specifically, references to *National* and *Booth* were inadvertently included prior to filing.  These cites have since been addressed and updated within our respective papers.

We thank you for raising these issues.



**Keian Vahedy**
K&L Gates LLP
1 Park Plaza
Twelfth Floor
Irvine, CA 92614
Phone: 949 623-3579
Keian.Vahedy@klgates.com
www.klgates.com

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at Keian.Vahedy@klgates.com.

Appendix 6

ELLIS GEORGE LLP
Trent Copeland (State Bar No. 136890)
 tcopeland@ellisgeorge.com
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

K&L GATES LLP
Ryan Q. Keech (State Bar No. 280306)
 Ryan.Keech@klgates.com
Kevin S. Asfour (State Bar No. 228993)
 Kevin.Asfour@klgates.com
Keian Vahedy (State Bar No. 316708)
 Keian.Vahedy@klgates.com
10100 Santa Monica Blvd., 8th Floor
Los Angeles, CA 90067
Telephone: (310) 552-5000
Facsimile: (310) 552-5001

Attorneys for Plaintiff JACQUELYN
"JACKIE" LACEY, in her individual
capacity; and JACQUELYN "JACKIE"
LACEY as trustee of the D and J Lacey
Family Trust dated November 23, 2016

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELYN "JACKIE" LACEY, in her individual capacity; and JACQUELYN "JACKIE" LACEY as trustee of the D and J Lacey Family Trust dated November 23, 2016, <br><br> Plaintiffs, <br><br> vs. <br><br> STATE FARM GENERAL INSURANCE COMPANY, an Illinois corporation, and DOES 1-50, inclusive, <br><br> Defendants. | Case No. 2:24-cv-05205-FMO-MAA <br><br> **DECLARATION OF TRENT COPELAND IN RESPONSE TO SPECIAL MASTER'S ORDER TO SHOW CAUSE RE SANCTIONS** <br><br><br> [Assigned to the Hon. Fernando M. Olguin, Courtroom 6D] <br><br> Complaint filed: July 4, 2020 |

DECLARATION OF TRENT COPELAND IN RESPONSE TO SPECIAL MASTER'S ORDER TO SHOW CAUSE RE SANCTIONS

# DECLARATION OF TRENT COPELAND

I, Trent Copeland, declare and state as follows:

1.    I am an attorney at law, duly admitted to practice before this Court and all courts of the State of California.  I am a partner with Ellis George LLP, counsel of record for Plaintiffs Jacquelyn "Jackie" Lacey and Jacquelyn "Jackie" Lacey as trustee of the D and J. Lacey Family Trust Dated November 23, 2016 (collectively, "Plaintiffs") in this matter.

2.    I submit this Declaration pursuant to the Special Master's April 15, 2025, Order to Show Cause re: Sanctions (the "OSC").  I have personal knowledge of all the matters set forth herein, and could and would testify competently thereto if called upon to do so.

3.    This problem began with me—full stop – in my failure to advise my colleagues that a preliminary outline I forwarded to them had relied, in part, on the use of generative AI capabilities found in CoCounsel and Westlaw Precision and Google Gemini.  To the extent my colleagues were tasked with the primary responsibility for research and drafting of the memorandum, they did so in reliance—at least initially—on my preliminary outline and notes I had provided several days earlier.

4.    Since I was engaged in preparing for a trial scheduled to start April 14, 2025, I was unable to produce a more comprehensive work product, so I emailed my notes and high-level thoughts in outline format.  I did so because I wanted to assure our drafting team had the benefit of my preliminary thoughts and a general roadmap before beginning their research and writing.  I believe I initially used CoCounsel, which I had recently been exposed to through a firm training, as well as Westlaw's AI tool to undertake research.  I also briefly conducted internet research using Gemini, Google's AI product, for information and cases related to insurance companies defending against bad faith claims.  I compiled a significant number of notes which I believed (1) accurately reflected current law, and (2) had been

faithfully transcribed based on the sources I reviewed.  It is unclear to me whether there was human error in my transcription of that research, or whether one of the research tools I utilized returned some erroneous information.

5.      On April 9, 2025, I circulated to my colleagues Ryan Keech and Keian Vahedy some of my notes along with a bullet-point outline of the legal arguments I hoped the team would address as they prepared the memorandum.  By April 11, 2025, it was my understanding the K&L Gates team, along with an associate from Ellis George, had commenced drafting the memorandum.  I understand they engaged in their own legal research and writing to bring the brief to near-final form. It is clear that they relied on the accuracy of some of the case citations included in my initial outline, while also adding themselves the vast majority of the case authority to the brief.  In hindsight, there is no question I should have taken more care to first check the accuracy of these citations before sending or explicitly request my colleagues to do so before including any material from my preliminary outline in the final version of the brief.

6.      In reviewing versions 1 through 3 of the draft, it is apparent that no one confirmed the accuracy of some of citations pulled from my preliminary outline. Compounding matters, prior to the filing of version 2, my legal assistant noticed that we were working off of multiple drafts—none of which, we later realized, had been thoroughly checked.  Further, I cannot say with certainty how the parenthetical for *National Steel* changed between versions 1 and 2, but I suspect the switch resulted from uploading a different version that included the correct citation.  In our haste to meet the filing deadline, we failed to (1) ensure that the correct and final document had been uploaded, and (2) conduct a thorough citation check of the cases submitted to the Court—both of which should have occurred and which I assumed had been completed.

7.      In short, our process broke down at several levels across both firms. And as the most senior lawyer on our collective team — whether cite-checking was

my responsibility or not — I accept responsibility for (1) not alerting my colleagues with respect to the tools I utilized in conducting the initial research; and (2) failing to conduct cite-checking myself or to specifically request that the brief be properly reviewed for citation errors; and (3) not adequately supervising the cite-checking process. I am both deeply apologetic and embarrassed by this error. As for the "bizarre" modification the Court referenced in version 2, I am informed this was the result of a typographical error compounded by a technical glitch during the upload process by my assistant. Not at any time was there a deliberate effort to deceive or falsify the state of the law, nor did we.

8.    Importantly, even before this event, I had reviewed and was familiar with the State Bar's ethical guidance on the responsible use of generative AI in the practice of law. This guidance emphasized that while lawyers may use generative AI, our ethical obligations apply in the same way as with any other technology. Specifically, on July 24, 2024, the State Bar stated in its guidance order that "The State Bar recognizes that generative AI systems are not without risks. COPRAC's Practical Guidance, the State Bar's interim AI Guidelines, and other work we are doing to responsibly support the exploration of AI internally and within the legal profession balance opportunity against the risks of bias, inaccuracy, incompleteness, and falsehood that could undermine the benefits that generative AI will create." Additionally, I also understood that while the use of AI does not violate Business and Professions Code 6068(e)(2), my ethical duties included double-checking the source accuracy. Because I was aware of this guidance, I should have been more mindful and cautious about the risks, and I should have informed my team of my use of AI so that we could collectively mitigate any errors that might result, even from its good-faith use. I fell short in that regard and that will never happen again.

9.    Following the Special Master's instructions, I have personally reviewed each and every citation and quotation - and compared these findings with my colleagues - to be certain that we have found any possible issues with the citations,

1  including even the misplacement of a parenthetical. <u>The below constitutes a list of</u>

2  <u>items, including typographical errors, that we believe should be brought to the</u>

3  <u>Special Master's attention – irrespective of whether these errors are associated with</u>

4  <u>the use of AI, or not:</u>

5      a.  **Page 3 of Dkt. 98**:

6          i.   *People v. Superior Court*, 25 Cal.4th 703, 725 (2001) ("A

7  trial court has broad discretion to review materials in camera to

8  determine whether a claimed privilege applies.").–.there should be no

9  quotes in the parenthetical, which should refer to n. 7.

10     b.  **Page 4 of Dkt. 98**:

11         i.   *Wellpoint Health Networks, Inc. v. Superior Court*, 59

12  Cal.App.4th 110, 119 (1997) – the pincite should be page 123, <u>not</u> 119.

13         ii.  *Aetna Cas. & Surety Co. v. Superior Court*, 153

14  Cal.App.3d 467, 476 (1984) ("Where the evidence sought is directly at

15  issue… a party should not be allowed to use privilege as both a sword

16  and a shield.") – non-existent quote; however, this case exists and the

17  quote states a generally correct proposition of law.

18         iii. *Zurich American Ins. Co. v. Superior Court*, 155

19  Cal.App.4th 1485, 1503 (2007) ("Communications by corporate

20  employees that are not made at the direction of counsel or for the

21  purpose of legal advice are not privileged.") – the pincite should be

22  1504 and state: "otherwise routine, non-privileged communications

23  between corporate officers or employees transacting the general

24  business of the company do not attain privileged status solely because

25  in-house or outside counsel is 'copied in' on correspondence or

26  memoranda".

27     c.  **Page 5 of Dkt. 98**:

28         i.   *Costco, supra*, 47 Cal.4th at 739 – should not have quotes

within the parentheticals.

d.    **Page 6 of Dkt. 98**:

i.    *Davis v. City of Santa Ana*, 51 Cal.App.5th 1094, 1115 (2020)– inaccurate citation to a case that appears not to exist and should be removed and not relied upon.

ii.    *National Steel Products Co. v. Superior Court*, 164 Cal.App.3d 476, 489 (1985) ("Internal memoranda or claims file materials, although they may discuss legal theories, litigation tactics or potential liability, are not privileged unless they are written by or at the direction of counsel and prepared for the purpose of transmitting information to counsel for legal advice.") – the pincite should be 477, should not have quotes, and the parenthetical should be revised to reflect that privilege is strictly construed because it suppresses relevant facts which may be necessary for a just decision.

e.    **Page 9 of Dkt. 98**:

i.    *Lipton v. Superior Court*, 48 Cal.App.4th 1599, 1619 (1996) ("A party may not use the privilege as both a sword and a shield.") – inaccurate quote; quote from this case should be "The party claiming the privilege has the burden to show that the communication sought to be suppressed falls within the terms of the claimed privilege." *See D. I. Chadbourne, Inc. v. Superior Court* (1964) 60 Cal.2d 723, 729.

f.    **Page 10 of Dkt. 98**:

i.    *Booth v. Allstate Ins. Co*., 198 Cal.App.3d 1357, 1366 (1989) ("An insurer cannot assert privilege to shield evidence of bad faith.") – inaccurate quote to a case that appears not to exist but is a correct proposition of law. *See, e.g., Zurich Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 137 A.2d 401, 402 (1st Dep't 1988) ("Where it is alleged

1    that the insurer has breached that duty to its insured, the insurer may

2    not use the attorney-client or work product privilege as a shield to

3    prevent disclosure which is relevant to the insured's bad faith action");

4    *Boone v. Vanliner Ins. Co.*, 9 Ohio St. 3d 209, 213-14 (2001) ("in an

5    action alleging bad faith denial of insurance coverage, the insured is

6    entitled to discover claims file materials containing attorney client

7    communications related to the issue of coverage that were created prior

8    to the denial of coverage.").

9              ii.    *Nei v. Travelers Home and Marine Ins. Co.*, 326 F.R.D.

10    652 (2018) (holding that attorney-client privilege does not apply when

11    an attorney acts as a claims adjuster, supervisor, or investigation

12    monitor rather than a legal advisor) – pincites should be 658.

13    Executed this 18th day of April, 2025, at Los Angeles, California.

14    I declare under penalty of perjury under the laws of the State of California

15 that the foregoing is true and correct.

16

17

18

19                                    _____

20                                    Trent Copeland

21

22

23

24

25

26

27

28

DECLARATION OF TRENT COPELAND IN RESPONSE TO SPECIAL MASTER'S ORDER TO SHOW CAUSE
RE SANCTIONS

**Trent Copeland**

| | |
|---|---|
| **From:** | Trent Copeland |
| **Sent:** | Wednesday, April 9, 2025 3:18 PM |
| **To:** | Vahedy, Keian; Keech, Ryan Q. |
| **Cc:** | Vahedy, Keian; Kathleen McCormick |
| **Subject:** | Outline of Memorandum of Points and Authorities re In Camera Review / Lacey v. State Farm |

Keian / Ryan: I have fleshed out an outline for the memorandum of points and authorities Judge Wilner requested on the issue of an in camera review. This is not intended to be a guide, but rather my best effort to save craft where I think the argument needs to go and to provide the research that I think best assists our argument.

Primary Argument: State Farm Has Not Made a Prima Facie Showing That the Dominant Purpose of the Redacted Communications Is Attorney-Client Privileged

I. INTRODUCTION

The court is faced with a dilemma. Most of the documents and communications between State Farm claims representatives do not appear to be facially privileged. Nor does State Farm's privilege log – which largely provides identical cut/paste assertions of privilege for virtually hundreds of communications – give enough detail to allow the court (or Plaintiffs) to properly and fairly assess the basis for these claims of privilege. Although the court cannot simply accept a blanket assertion of privilege, nor can it require disclosure without proper foundation, the court may, upon a prima facie showing that the privilege may not apply to certain documents or that the privilege has potentially been waived, conduct an in camera review of a targeted subset of the disputed documents to determine whether the attorney-client privilege has been properly invoked. This limited review is appropriate and authorized under California Evidence Code Section 915(b) and where the proponent of the privilege (State Farm) has failed to meet its burden through non-substantive means, such as a privilege log or declaration.

Plaintiff provides this memorandum of points and authorities in support of the Court conducting an in camera review of documents State Farm has redacted (or withheld). The basis for Plaintiffs position is that State Farm's claims of privilege with respect to these documents is facially not apparent, despite having already partially disclosed portions of the same communications and State Farm failed to meet its burden affirmatively establishing that the privilege applies. These withheld materials consist of (1) internal communications between claims handlers/representative and consist of documents authored by or exchanged between State Farm's claims adjusters—not legal counsel—during the investigation and handling of Plaintiff's insurance claim; (2) communications between claims handlers regarding "opinions" of outside counsel and (3) documents created by claims handlers/representatives made in the ordinary course of business as those documents were sent directly to "State Farm Claim File."

As this court is well aware, this case centers on whether State Farm acted in bad faith in denying or delaying coverage. The conduct and state of mind of the State Farm's decision-makers—its claims adjusters—are at the very heart of the dispute. Yet State Farm now seeks to shield those very communications through unsupported assertions of privilege, despite the fact that:

- No attorneys are included in the majority of the withheld communications;
- The communications appear to concern ordinary claims handling business, not legal advice;
- Partial disclosures have already occurred, waiving any applicable privilege.

1

Plaintiff requests that the Court exercise its authority under Evidence Code § 915(a) and § 915(b) to conduct an in camera review to determine whether any of the withheld materials are properly subject to privilege.

## II. LEGAL STANDARD

Under California Evidence Code § 915(a), when a party claims that a communication is privileged, the court may conduct an in camera review to determine whether that claim is valid, especially where there is a dispute or uncertainty regarding the scope or waiver of the privilege.

*People v. Superior Court (Laff)* (2001) 25 Cal.4th 703, 725:
"A trial court has broad discretion to review materials in camera to determine whether a claimed privilege applies."

California Evidence Code § 912(a) provides that a party waives the privilege if they disclose a significant part of the communication or consent to its disclosure.

*McKesson HBOC, Inc. v. Superior Court* (2004) 115 Cal.App.4th 1229, 1239:
"Disclosure of a significant part of the communication constitutes waiver."

*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725:

Court did not preclude in camera review entirely. It suggested that in camera review may be proper when there's a sufficient showing that the privilege may not apply — e.g., because of waiver, third-party involvement, or a lack of legal content – which clearly exists here.

## III. ARGUMENT

### I. Prima Facie Showing Requires Proof of Dominant Purpose Being Legal Advice

Under California law, a party asserting the attorney-client privilege bears the burden of establishing the preliminary facts necessary to support its application. (See *Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733; *Wellpoint Health Networks, Inc. v. Superior Court* (1997) 59 Cal.App.4th 110, 119.)

The "dominant purpose" test governs whether communications involving in-house counsel or other dual-purpose actors (e.g., claims representatives) are privileged. The dominant purpose of the communication must be to seek or provide **legal advice**, not business advice or claims handling functions. (See *Costco, supra*, 47 Cal.4th at p. 735; *Davis v. City of Santa Ana* (2020) 51 Cal.App.5th 1094, 1115.)

In the federal context, courts follow a similar dominant purpose test. (See *United States v. Graf* (9th Cir. 2010) 610 F.3d 1148, 1156.)

#### A. Defendant Has Waived Any Privilege by Disclosing Portions of the Communications

State Farm has produced selected portions of internal claims file communications between claims personnel, while simultaneously withholding other parts of the same communications. This selective disclosure constitutes a waiver of privilege under Evidence Code § 912(a). (*We will attach screenshots as exemplars of some of the most offending redactions)

The law does not permit a party to produce only favorable excerpts of communications and withhold the rest as privileged. Waiver is not partial—it applies to the **entire communication and subject matter.**

*Southern Cal. Gas Co. v. Public Utilities Com.* (1990) 50 Cal.3d 31, 46:
"Voluntary disclosure waives the privilege for all other communications on the same subject matter."

**B. Costco Does Not Apply to Routine Business Communications Between Claims Adjusters**

State Farm will undoubtedly attempt to invoke *Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725 to bar in camera review. That case held that courts may not review facially privileged communications between counsel and client to determine their dominant purpose. But Costco is inapplicable here for a two important reasons:

First, in *Costco*, the communication at issue was made <u>directly</u> to legal counsel for the purpose of obtaining legal advice. In contrast, the communications at issue here involve no legal counsel, and were exchanged between claims adjusters discussing routine claim handling activities. These communications are business-oriented, not legal in nature, and do not fall within the scope of the attorney-client privilege. Additionally, other communications were originated from a claims adjuster/handler and were sent directly to "State Farm Claim File" without any indication of how, when or where an attorney communication was involved.

*Costco*, 47 Cal.4th at 739:
"The privilege... applies only when the client intends to seek legal advice and the communication is made for that purpose."

Further, applying *Costco* to prevent review of communications not even involving attorneys would lead to an improper expansion of the attorney-client privilege, effectively allowing insurers to cloak all internal conduct in secrecy, even when legal advice was neither sought nor given.

In bad faith cases, courts must guard against this misuse of privilege:

*Aetna Cas. & Surety Co. v. Superior Court* (1984) 153 Cal.App.3d 467, 476:
"Where the evidence sought is directly at issue... a party should not be allowed to use privilege as both a sword and a shield."

Second, Costco did not categorically preclude in camera review entirely. The Court suggested that in camera review may be proper when there is a sufficient showing that the privilege may not apply – which Plaintiffs have demonstrated.

"We emphasize that the court may not order disclosure of the content of the communication to determine whether the communication is privileged. However, the court may order in camera review where **there is a factual showing that the communication may not be privileged** — for example, because it was <u>not</u> made in the course of the attorney-client relationship or because it was disclosed to third parties."

— *Costco*, 47 Cal.4th at 739–740 (emphasis added)

Thus, *Costco* is distinguishable and should not control this case.

**C. Communications Between Claims Adjusters Are Not Privileged if Not Made for Legal Advice**

Even absent waiver, communications between non-attorney employees—such as claims handlers/adjusters—do not fall within the scope of the attorney-client privilege unless the dominant purpose was to secure legal advice. Internal discussions regarding claim status, liability, coverage evaluation, or recommendations are all ordinary business communications, and not protected.

*Zurich American Ins. Co. v. Superior Court* (2007) 155 Cal.App.4th 1485, 1503:
"Communications by corporate employees that are not made at the direction of counsel or for the purpose of legal advice are not privileged."

- "**Internal memoranda or claims file materials**, although they may discuss legal theories, litigation tactics or potential liability, **are not privileged unless they are written by or at the direction of counsel** and prepared

for the purpose of transmitting information to counsel for legal advice." - *National Steel Products Co. v. Superior Court*, 164 Cal.App.3d 476, 489 (emphasis added)

Here, State Farm has not shown that any of the withheld claims handlers/adjuster communications were made for legal advice or under the direction of counsel.  Absent such a showing, the privilege also does not apply.

### D. The Claims Adjusters' Conduct Is the Core of the Bad Faith Claim and Cannot Be Shielded

This case turns on what State Farms' claims personnel did, when they did it, and why.  The internal communications reflect the evaluative process that led to State Farm's decisions regarding its initial denial of coverage to David Lacey. To allow State Farm to hide those very communications would defeat the truth-seeking purpose of discovery in bad faith litigation.

*Lipton v. Superior Court* (1996) 48 Cal.App.4th 1599, 1619:
"A party may not use the privilege as both a sword and a shield."

Plaintiff is entitled to understand what motivated the denial of the claim relating to David Lacey, what was considered or disregarded, and whether Defendant acted unreasonably or with improper intent. That evidence lies squarely in the communications now being withheld.

Core Arguments:

- State Farm has waived any applicable privilege through partial disclosure;
- State Farm has not established – as a threshold matter – that the communications between claims handlers has as its "**dominant purpose**" seeking legal advice
- The communications are not protected under *Costco* or the attorney-client privilege;
- The documents were created during the ordinary course of claims handling;
- And the conduct of the adjusters is central to the bad faith claims.

E.  In Bad Faith Cases, Courts Scrutinize Privilege Assertions to Prevent Shielding of Claims Handling Conduct

California courts are especially skeptical of overbroad privilege assertions in bad faith insurance litigation, where the insurer's claims conduct is directly at issue. (See *Booth v. Allstate Ins. Co.* (1989) 198 Cal.App.3d 1357, 1366 ["An insurer cannot assert privilege to shield evidence of bad faith"].)

Even if some communications do involve legal counsel, if they were made in the ordinary course of claims investigation or involve coverage decisions, courts may find the dominant purpose was business-related and deny privilege. (*Handgards, Inc. v. Johnson & Johnson* (N.D. Cal. 1976) 413 F. Supp. 926, 929.)

**Trent Copeland** | Partner
ELLIS GEORGE LLP
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Main 310.274.7100 | Fax 310.275.5697
tcopeland@ellisgeorge.com
www.ellisgeorge.com

Appendix 7

ELLIS GEORGE LLP
Eric M. George (SBN 166403)
  egeorge@ellisgeorge.com
Trent Copeland (SBN 136890)
  tcopeland@ellisgeorge.com
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile:  (310) 275-5697

K&L GATES LLP
Ryan Q. Keech (SBN 280306)
  Ryan.Keech@klgates.com
Kevin S. Asfour (SBN 228993)
  Kevin.Asfour@klgates.com
Keian Vahedy (SBN 316708)
  Keian.Vahedy@klgates.com
10100 Santa Monica Blvd., 8th Floor
Los Angeles, California 90067
Telephone: (310) 552-5000
Facsimile:  (310) 552-5001

Attorneys for Plaintiff JACQUELYN
"JACKIE" LACEY, in her individual
capacity; and JACQUELYN "JACKIE"
LACEY as trustee of the D and J Lacey
Family Trust dated November 23, 2016

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JACQUELYN "JACKIE" LACEY, in her individual capacity; and JACQUELYN "JACKIE" LACEY as trustee of the D and J Lacey Family Trust dated November 23, 2016,<br><br>Plaintiffs,<br><br>vs.<br><br>STATE FARM GENERAL INSURANCE COMPANY, an Illinois corporation, and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 2:24-cv-05205-FMO-MAA<br><br>*Judge: Fernando M. Olguin*<br><br>**DECLARATION OF RYAN Q. KEECH IN RESPONSE TO THE SPECIAL MASTER'S ORDER TO SHOW CAUSE RE: SANCTIONS** |

**DECLARATION OF RYAN Q. KEECH IN RESPONSE TO THE SPECIAL MASTER'S ORDER TO SHOW CAUSE RE: SANCTIONS**

# DECLARATION OF RYAN Q. KEECH

I, Ryan Q. Keech, declare as follows:

1.    I am an attorney licensed to practice law in this court and all courts of the State of California.  I am a partner at the law firm of K&L Gates LLP, attorneys of record for Plaintiffs Jacquelyn "Jackie" Lacey and Jacquelyn "Jackie" Lacey as trustee of the D and J. Lacey Family Trust Dated November 23, 2016 (collectively, "Plaintiff"), in this action.

2.    I submit this Declaration pursuant to the Special Master's April 15, 2025 Order to Show Cause re: Sanctions (the "OSC").  I have personal knowledge of each of the matters set forth herein, and would testify competently thereto if called upon to do so.

3.    To begin, I have the utmost faith in and respect for the professional conduct and integrity of Mr. Copeland and his firm – with whom I have had the great privilege of working and from whom I have had the great privilege of learning as a partner and as co-counsel for years.  His and their professionalism and ethics are beyond reproach.

4.    As described herein, Mr. Copeland and Mr. Vahedy have been primarily responsible for the briefing associated with the privilege issue addressed by the Court on April 7, 2025.  I had limited involvement in the preparation and did not sign, file or provide final approval of the contents of any of the three versions of the brief addressed in the OSC prior to filing.

5.    However, I understand and take seriously the critical importance of accuracy in case citations in order for the process to function and know that my colleagues and co-counsel have a similar view.  I apologize that these versions of the brief contained the inaccuracies initially identified by the Special Master, apologize further that I did not personally catch and correct those inaccuracies, and respectfully request, because – as discussed herein and as confirmed by the declarations of my

-2-

1  colleagues – these inaccuracies were inadvertent and the subject of an honest
2  miscommunication, the OSC be discharged.

3      6.    After the Court's April 7, 2025 hearing, I discussed the Special Master's
4  request for briefing regarding the in-camera review procedures with Mr. Vahedy.  I
5  provided initial guidance on what I thought the brief should contain.  Mr. Vahedy
6  offered to prepare the draft of the brief, and I agreed.

7      7.    Two days later, on April 9, 2025, I was copied on an email from Mr.
8  Copeland to me and to Mr. Vahedy, providing what appeared to be a detailed outline
9  of the brief.  I recall that the outline contained a number of case citations.  Mr.
10  Copeland re-forwarded that outline on April 10, 2025.  Mr. Copeland did not indicate
11  where those citations came from and I did not independently verify those citations.
12  Given our long experience working with Mr. Copeland and his firm and our utmost
13  respect for his and his firm's professional integrity – which respect, once again,
14  continues – I did not doubt the accuracy of any of those citations.

15      8.    On the afternoon of Friday, April 11, 2025, Mr. Vahedy copied me on
16  his transmission to Mr. Copeland and his associate, Ms. Carpenter, of what I
17  understood to be an initial draft of the requested brief.  I had not received a draft of
18  this brief prior to Friday.

19      9.    While I knew that Mr. Copeland was taking the lead on this issue, I
20  reviewed that draft on the morning of Saturday, April 12, 2025 and provided high-
21  level comments aimed at ensuring that we were making a properly-tailored request
22  and citing appropriately illustrative factual examples.  I did not conduct a cite-by-cite
23  review of the document.  Mr. Copeland provided additional comments and instructed
24  Mr. Vahedy and Ms. Carpenter to provide a revised draft.  I understand that Mr.
25  Vahedy worked with Mr. Copeland and Ms. Carpenter to address these comments
26  throughout the day on April 12, 2025 and circulated a revised version of the brief late
27  in the morning of April 13, 2025.

28

-3-
**DECLARATION OF RYAN Q. KEECH IN RESPONSE TO THE SPECIAL MASTER'S
ORDER TO SHOW CAUSE RE: SANCTIONS**

10. Early in the afternoon of April 13, 2025, Mr. Copeland confirmed that the revisions were appropriate and that he and his firm would take responsibility for finalizing, filing and submission to the Court. After Mr. Copeland provided that confirmation, later that same afternoon, I made a high-level suggestion for Mr. Copeland to consider incorporating relating to the brief's introduction. I presumed, but did not specifically confirm, that the finalization, filing and submission process would include an appropriately robust proof and cite-checking procedure.

11. I did not participate in finalizing or filing this brief and did not sign off on its contents. I did not hear anything relating to the brief until approximately noon on April 14, 2025, when I learned that Mr. Copeland's firm was experiencing formatting and submission issues with the JAMS system that were creating difficulty with meeting the Court's noon deadline and that the initial filed version of the brief was not able to correct all of those issues. A subsequent version of the brief was filed that, I understand, corrected some of those issues. I had no involvement in these filings.

12. After the Special Master sent his message to the parties on April 14, 2025 identifying apparent issues with two decisions in the brief, Mr. Copeland sent two messages to me and to Mr. Vahedy identifying replacement parentheticals and citations for the *Boone* and *National Steel* decisions identified in the Special Master's email. Mr. Copeland promptly filed a corrected brief, which I again did not review and sign, and Mr. Vahedy sent an explanatory email to the Special Master explaining the inadvertent inclusion of these two citations. While it was obvious by this point that whatever cite check had been performed had issues, I was confident that the issue was most likely limited to the issues identified by the Court, caught by my colleagues and, even then, most likely had been caused by the formatting and submission difficulties described above that had earlier come to my attention.

13. I can confirm that none of our firm's work on this brief involved our use of AI. In providing that confirmation, I do not mean to suggest that there is anything

wrong with the appropriate use of AI: indeed, I understand that numerous profession-specific AI tools are becoming available – including Co-Counsel and Westlaw AI – which clients are increasingly demanding that counsel develop familiarity with in order to better align with their business focus, legal needs and market reality.  What I do mean to say is that our firm has developed policies and procedures governing access to profession-specific AI tools, including Co-Counsel, and has decided to block access to these tools absent, *inter alia*, tool-specific training developed for use at our firm.  Neither I nor Mr. Vahedy have such access.  We did not have such access at the time of the preparation and filing of these briefs.

14.     However, in light of the OSC, I came to the conclusion that the citation issue was broader than I had initially believed was the case when I reviewed the Court's April 14, 2025 correspondence.   Accordingly, while Mr. Copeland was conducting his own check, I personally conducted a check of each of the citations in the brief in order to catch whatever issues may have escaped the Special Master's review.

15.     After having conducted this check, I have determined that while most citations in the brief stand for the propositions for which they are cited, and the remainder of the citations largely involve familiar and supportable legal propositions present in other cases, the following citations should be changed.  I apologize once again that, regardless of my and our level of involvement, I did not catch this issue prior to the filing of the brief:

        a.  Page 3 of Dkt. 98:

            i.  *People v. Superior Court*, 25 Cal.4th 703, 725 (2001) ("A trial court has broad discretion to review materials in camera to determine whether a claimed privilege applies.") – there should be no quotes in the parenthetical, which should refer to n. 7.

        b.  Page 4 of Dkt. 98:

**DECLARATION OF RYAN Q. KEECH IN RESPONSE TO THE SPECIAL MASTER'S ORDER TO SHOW CAUSE RE: SANCTIONS**

      i. *Wellpoint Health Networks, Inc. v. Superior Court*, 59 Cal.App.4th 110, 119 (1997) – the pincite should be page 123, not 119.

      ii. *Aetna Cas. & Surety Co. v. Superior Court*, 153 Cal.App.3d 467, 476 (1984) ("Where the evidence sought is directly at issue… a party should not be allowed to use privilege as both a sword and a shield.") – inaccurate quote; however, this case exists and this is generally a correct proposition of law.

      iii. *Zurich American Ins. Co. v. Superior Court*, 155 Cal.App.4th 1485, 1503 (2007) ("Communications by corporate employees that are not made at the direction of counsel or for the purpose of legal advice are not privileged.") – the pincite should be 1504 and state: "otherwise routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is 'copied in' on correspondence or memoranda."

c. Page 5 of Dkt. 98:

      i. *Costco, supra*, 47 Cal.4th at 739 – should not have quotes within the parentheticals.

d. Page 6 of Dkt. 98:

      i. *Davis v. City of Santa Ana*, 51 Cal.App.5th 1094, 1115 (2020) – inaccurate citation to a case that I have not been able to find and should thus be removed.

      ii. *National Steel Products Co. v. Superior Court*, 164 Cal.App.3d 476, 489 (1985) ("Internal memoranda or

**DECLARATION OF RYAN Q. KEECH IN RESPONSE TO THE SPECIAL MASTER'S
ORDER TO SHOW CAUSE RE: SANCTIONS**

1    claims file materials, although they may discuss legal

2    theories, litigation tactics or potential liability, are not

3    privileged unless they are written by or at the direction

4    of counsel and prepared for the purpose of transmitting

5    information to counsel for legal advice.") – the pincite

6    should be 477 and the parenthetical should be revised to

7    reflect that privilege is strictly construed because it

8    suppresses relevant facts which may be necessary for a

9    just decision.

10    e.  Page 9 of Dkt. 98:

11        i.  *Lipton v. Superior Court*, 48 Cal.App.4th 1599, 1619

12            (1996) ("A party may not use the privilege as both a

13            sword and a shield.") – inaccurate quote; however, this

14            case exists and this is a correct proposition of law.

15    f.  Page 10 of Dkt. 98:

16        i.  *Booth v. Allstate Ins. Co.*, 198 Cal.App.3d 1357, 1366

17            (1989) ("An insurer cannot assert privilege to shield

18            evidence of bad faith.") – inaccurate quote to a case that

19            appears not to exist, but is a holding made by other

20            courts: *See, e.g., Zurich Ins. Co. v. State Farm Mut.*

21            *Auto. Ins. Co.*, 137 A.2d 401, 402 (1st Dep't 1988)

22            ("Where it is alleged that the insurer has breached that

23            duty to its insured, the insurer may not use the attorney-

24            client or work product privilege as a shield to prevent

25            disclosure which is relevant to the insured's bad faith

26            action"); *Boone v. Vanliner Ins. Co.*, 9 Ohio St. 3d 209,

27            213-14 (2001) ("in an action alleging bad faith denial of

28            insurance coverage, the insured is entitled to discover

**DECLARATION OF RYAN Q. KEECH IN RESPONSE TO THE SPECIAL MASTER'S
ORDER TO SHOW CAUSE RE: SANCTIONS**

claims file materials containing attorney client communications related to the issue of coverage that were created prior to the denial of coverage.").

ii. *Nei v. Travelers Home and Marine Ins. Co.*, 326 F.R.D. 652 (2018) (holding that attorney-client privilege does not apply when an attorney acts as a claims adjuster, supervisor, or investigation monitor rather than a legal advisor) – pincite should be 658.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Executed this 18th day of April 2025, in Los Angeles, California.


                                        */s/ Ryan Q. Keech*
                                        Ryan Q. Keech

**DECLARATION OF RYAN Q. KEECH IN RESPONSE TO THE SPECIAL MASTER'S ORDER TO SHOW CAUSE RE: SANCTIONS**

ELLIS GEORGE LLP
Eric M. George (SBN 166403)
  egeorge@ellisgeorge.com
Trent Copeland (SBN 136890)
  tcopeland@ellisgeorge.com
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile:  (310) 275-5697

K&L GATES LLP
Ryan Q. Keech (SBN 280306)
  Ryan.Keech@klgates.com
Kevin S. Asfour (SBN 228993)
  Kevin.Asfour@klgates.com
Keian Vahedy (SBN 316708)
  Keian.Vahedy@klgates.com
10100 Santa Monica Blvd., 8th Floor
Los Angeles, California 90067
Telephone: (310) 552-5000
Facsimile:  (310) 552-5001

Attorneys for Plaintiff JACQUELYN
"JACKIE" LACEY, in her individual
capacity; and JACQUELYN "JACKIE"
LACEY as trustee of the D and J Lacey
Family Trust dated November 23, 2016

Appendix 8

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JACQUELYN "JACKIE" LACEY, in her individual capacity; and JACQUELYN "JACKIE" LACEY as trustee of the D and J Lacey Family Trust dated November 23, 2016,<br><br>Plaintiffs,<br><br>vs.<br><br>STATE FARM GENERAL INSURANCE COMPANY, an Illinois corporation, and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 2:24-cv-05205-FMO-MAA<br><br>*Judge: Fernando M. Olguin*<br><br>**DECLARATION OF KEIAN VAHEDY IN RESPONSE TO THE SPECIAL MASTER'S ORDER TO SHOW CAUSE RE: SANCTIONS** |

1        **DECLARATION OF KEIAN VAHEDY**

2        I, Keian Vahedy, declare as follows:

3        1.      I am an attorney licensed to practice law in this Court and Associate at

4    the law firm of K&L Gates LLP, attorneys of record for Plaintiffs Jacquelyn "Jackie"

5    Lacey and Jacquelyn "Jackie" Lacey as trustee of the D and J. Lacey Family Trust

6    Dated November 23, 2016 (collectively, "Plaintiff"), in this action.  I have personal

7    knowledge of each of the matters set forth herein, and would testify competently

8    thereto if called upon to do so.

9        2.      I submit this Declaration pursuant to the Special Master's Order to Show

10    Cause re: Sanctions, explaining my role in assisting with preparing Plaintiff's

11    supplemental brief regarding defendant State Farm General Insurance Company's

12    ("State Farm") privilege log.

13        3.      While I did not finalize the brief for filing, I sincerely apologize for the

14    evident errors in the citations provided within Plaintiff's brief submitted on April 14,

15    2025 ("Brief").  The inaccuracies contained therein were inadvertent and a result of

16    honest miscommunication.  I should have caught these errors beforehand and

17    apologize for not more actively checking all sources contained within Plaintiff's

18    Brief.  I take seriously the critical importance of accuracy in case citations in order

19    for the Special Master and the Court to meaningfully do their jobs, and I know that

20    my colleagues share the same view.   I believed that the research submitted to me

21    when I worked on drafting the brief was accurate and that the cases were properly

22    cited.  I had no information suggesting that any of the citations may have come from

23    artificial intelligence and had no involvement in finalizing or submitting the document

24    for filing.  But it is still no excuse.  As the associate tasked with drafting Plaintiff's

25    Brief, I should have made sure to cite-check not only the cases I provided, but also

26    the cases that originated from Mr. Copeland's outline.

27        4.      To begin: I and Mr. Copeland have been primarily responsible for the

28    briefing associated with the privilege issue addressed by the Court on April 7, 2025.

**DECLARATION OF KEIAN VAHEDY IN RESPONSE TO THE SPECIAL MASTER'S ORDER TO SHOW CAUSE RE: SANCTIONS**

After the Court's April 7, 2025 hearing, I spoke with Mr. Keech, who provided me with an update regarding the hearing and initial guidance as to what the brief should contain. I offered to prepare the draft of the brief, and he agreed.

5.    On April 9, 2025, I and Mr. Keech received an email from Mr. Copeland, providing what appeared to be a detailed outline of the brief. This brief contained a number of case citations. Mr. Copeland re-forwarded that outline on April 10, 2025. While Mr. Copeland did not indicate where those citations came from, having previously worked at Ellis George LLP and understanding the high quality and standards that the firm and Mr. Copeland uphold in their practice, I relied on this outline when drafting the brief believing that its sources were true, accurate, and already cite checked. I separately conducted legal research exclusively on Westlaw: reviewing additional cases, secondary sources, and published trial documents, each of which I relied upon to lay foundation and draft Plaintiff's Brief. With respect to the cases I found on Westlaw, I made sure to verify that these cases were valid and stood for the proposition for which they were cited.

6.    I submitted a draft of the brief on Friday, April 11, 2025 to Mr. Copeland and his associate Ms. Carpenter, copying Mr. Keech. Mr. Keech provided high-level comments on Saturday, April 12, 2025, which was followed by Mr. Copeland providing additional comments to me and to Ms. Carpenter. Throughout the day on April 12, 2025 I worked with Mr. Copeland and Ms. Carpenter to address these comments. I circulated a revised version of the brief on the morning of April 13, 2025.

7.    On April 13, 2025, Mr. Copeland informed me that the revisions were appropriate and that he and his firm would take responsibility for finalizing, filing and submission to the Court. I offered to provide assistance in this regard, though did not hear anything relating to the brief until approximately noon on April 14, 2025, when I learned that Mr. Copeland's firm was experiencing formatting and submission issues with the JAMS system that were creating difficulty with meeting the Court's deadline.

I assumed, again, that the citations provided to me on April 9 and 10 were accurate for the propositions they represented.

8.    After the Court sent its message to the parties on April 14, 2025 identifying apparent issues with two decisions in the brief, Mr. Copeland sent two messages to me and to Mr. Keech identifying replacement parentheticals and citations for the *Boone* and *National Steel* decisions identified in the Special Master's email to the parties. I confirmed the accuracy of those parentheticals and prepared an email for submission to the Special Master, which I then sent in close proximity to the filing of the further revised brief.

9.    After the Court issued its OSC, I personally conducted a full cite check of the brief that was filed with the Court in order to catch whatever issues may have escaped review.

10.    At no point did I use or knowingly rely on any artificial intelligence tool or program to assist in drafting any version of this Brief. I do not have access to Co-Counsel at our firm. I have never used artificial intelligence, or any artificial intelligence program, with respect to my legal research or any law and motion practice in my career, nor is or would it be my practice to do so.

11.    I confirm personally conducting a citation-by-citation check of the citations in the brief in order to catch whatever issues may have escaped the Special Master's review. I confirm that most citations in the brief stand for the propositions for which they are cited. However, I also confirm finding that the following citations should be noted as follows and apologize again for not catching these issues sooner:

    a.  Page 3 of Dkt. 98:

        i.  *People v. Superior Court*, 25 Cal.4th 703, 725 (2001) ("A trial court has broad discretion to review materials in camera to determine whether a claimed privilege applies.") – there should be no quotes in the parenthetical which should refer to n. 7.

---

**DECLARATION OF KEIAN VAHEDY IN RESPONSE TO THE SPECIAL MASTER'S ORDER TO SHOW CAUSE RE: SANCTIONS**

b. Page 4 of Dkt. 98:

    i. *Wellpoint Health Networks, Inc. v. Superior Court*, 59 Cal.App.4th 110, 119 (1997) – the pincite should be page 123, not 119.

    ii. *Aetna Cas. & Surety Co. v. Superior Court*, 153 Cal.App.3d 467, 476 (1984) ("Where the evidence sought is directly at issue… a party should not be allowed to use privilege as both a sword and a shield.") – inaccurate quote; however, this case exists and this is a correct proposition of law.

    iii. *Zurich American Ins. Co. v. Superior Court*, 155 Cal.App.4th 1485, 1503 (2007) ("Communications by corporate employees that are not made at the direction of counsel or for the purpose of legal advice are not privileged.") – the pincite should be 1504 and state: "otherwise routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is 'copied in' on correspondence or memoranda"

c. Page 5 of Dkt. 98:

    i. *Costco, supra*, 47 Cal.4th at 739 – should not have quotes within the parentheticals.

d. Page 6 of Dkt. 98:

    i. *Davis v. City of Santa Ana*, 51 Cal.App.5th 1094, 1115 (2020) – inaccurate citation to a case that appears not to exist and should be removed.

**DECLARATION OF KEIAN VAHEDY IN RESPONSE TO THE SPECIAL MASTER'S ORDER TO SHOW CAUSE RE: SANCTIONS**

ii. *National Steel Products Co. v. Superior Court*, 164 Cal.App.3d 476, 489 (1985) ("Internal memoranda or claims file materials, although they may discuss legal theories, litigation tactics or potential liability, are not privileged unless they are written by or at the direction of counsel and prepared for the purpose of transmitting information to counsel for legal advice.") – the pincite should be 477, should not have quotes, and the parenthetical should be revised to reflect that privilege is strictly construed because it suppresses relevant facts which may be necessary for a just decision.

e. Page 9 of Dkt. 98:

i. *Lipton v. Superior Court*, 48 Cal.App.4th 1599, 1619 (1996) ("A party may not use the privilege as both a sword and a shield.") – inaccurate express quote; however, this case exists and this is a correct proposition of law.

f. Page 10 of Dkt. 98:

i. *Booth v. Allstate Ins. Co.*, 198 Cal.App.3d 1357, 1366 (1989) ("An insurer cannot assert privilege to shield evidence of bad faith.") – inaccurate quote to a case that appears not to exist, but is a correct proposition of law. *See, e.g., Zurich Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 137 A.2d 401, 402 (1st Dep't 1988) ("Where it is alleged that the insurer has breached that duty to its insured, the insurer may not use the attorney-client or work product privilege as a shield to prevent disclosure which is relevant to the insured's bad faith action");

**DECLARATION OF KEIAN VAHEDY IN RESPONSE TO THE SPECIAL MASTER'S ORDER TO SHOW CAUSE RE: SANCTIONS**

*Boone v. Vanliner Ins. Co.*, 9 Ohio St. 3d 209, 213-14 (2001) ("in an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney client communications related to the issue of coverage that were created prior to the denial of coverage.").

ii. *Nei v. Travelers Home and Marine Ins. Co.*, 326 F.R.D. 652 (2018) (holding that attorney-client privilege does not apply when an attorney acts as a claims adjuster, supervisor, or investigation monitor rather than a legal advisor) – pincite should be 658.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Executed this 18th day of April 2025, in Irvine, California.


/s/ Keian Vahedy
Keian Vahedy

-7-

**DECLARATION OF KEIAN VAHEDY IN RESPONSE TO THE SPECIAL MASTER'S ORDER TO SHOW CAUSE RE: SANCTIONS**

ELLIS GEORGE LLP
Eric M. George (SBN 166403)
  egeorge@ellisgeorge.com
Trent Copeland (SBN 136890)
  tcopeland@ellisgeorge.com
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile:  (310) 275-5697

K&L GATES LLP
Ryan Q. Keech (SBN 280306)
  Ryan.Keech@klgates.com
Kevin S. Asfour (SBN 228993)
  Kevin.Asfour@klgates.com
Keian Vahedy (SBN 316708)
  Keian.Vahedy@klgates.com
10100 Santa Monica Blvd., 8th Floor
Los Angeles, California 90067
Telephone: (310) 552-5000
Facsimile:  (310) 552-5001

Attorneys for Plaintiff JACQUELYN
"JACKIE" LACEY, in her individual
capacity; and JACQUELYN "JACKIE"
LACEY as trustee of the D and J Lacey
Family Trust dated November 23, 2016

Appendix 9

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JACQUELYN "JACKIE" LACEY, in her individual capacity; and JACQUELYN "JACKIE" LACEY as trustee of the D and J Lacey Family Trust dated November 23, 2016,<br><br>Plaintiffs,<br><br>vs.<br><br>STATE FARM GENERAL INSURANCE COMPANY, an Illinois corporation, and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 2:24-cv-05205-FMO-MAA<br><br>Judge Fernando M. Olguin<br><br>JAMS Case No. 1210040394 Proceeding before Special Master Hon. Michael R. Wilner (Ret.)<br><br>**PLAINTIFF'S RESPONSE TO SPECIAL MASTER'S NOTICE OF INTENDED SANCTIONS AND FEE ORDERS**<br><br>Date:      April 29, 2025<br>Time:     10:00 a.m.<br>Place:    Remote via Zoom |

Plaintiff and her counsel, Ellis George LLP and K&L Gates LLP, hereby respond to the Special Master's April 20, 2025 Notice pursuant to Paragraph 8 thereof and its five-page limitation. This submission consists of three discrete components: **Section I**, submitted jointly by Plaintiff, Ellis George, and K&L Gates; **Section II**, by K&L Gates alone; and **Section III**, by Ellis George alone.

I.    **JOINT SUBMISSION (BY PLAINTIFF AND BOTH FIRMS)**

A. **Introduction**

As reflected in the declarations already submitted,[1] Plaintiff humbly acknowledges, apologizes for, and takes full responsibility for the erroneous AI-generated citations that were inadvertently included in its briefing filed with the Special Master on April 14, 2025. This has never happened before in this case (nor in any other matter handled by these attorneys) and it will never happen again. Respectfully, however, most of the contemplated sanctions referenced in the Notice are unsupported by the facts and controlling legal principles, disproportionate to the circumstances at hand, and run counter to the ends of justice, as detailed below.

B. **Plaintiff's Use of Erroneous AI-Generated Material Was Inadvertent, Promptly Disclosed, and Cured Without Causing Any Prejudice**

Given limited space, and the Special Master's familiarity with the facts from the submitted declarations, Plaintiff will not provide a comprehensive discussion of the facts here, but summarizes the following points germane to the arguments:

- Following the OSC, Plaintiff's counsel candidly disclosed that limited portions of the Supplemental Brief were initially drafted with the aid of generative artificial intelligence ("AI"), in an effort to explore time-saving methods during a period of constrained resources. Upon internal review, counsel acknowledged all of the case authority that had been AI-generated, and additionally identified and disclosed other inconsistencies, including pin cite errors and misplacement of parentheticals. Plaintiff's counsel specifically requested the Court not to rely upon the two nonexistent cases.

---

[1] *See* Declarations of Trent Copeland ("Copeland Decl."), Ryan Keech ("Keech Decl.") and Keian Vahedy ("Vahedy Decl."), all submitted April 18, 2025.

**PLAINTIFF'S RESPONSE TO SPECIAL MASTER'S NOTICE**

There is no indication whatsoever that any of Plaintiff's counsel ever acted with malice, an intent to deceive, or bad faith of any kind.

- Despite the above citation issues, Plaintiff's Supplemental Brief did not present any incorrect or non-existent proposition of law. Rather, Plaintiff's arguments stem from established legal principles supported by valid precedent. Thus, the brief did not advance a frivolous legal position.

- Defendant did not rely upon, suffer any prejudice, or incur any expense due to the incorrect citations. Indeed, such would be impossible, logically and temporally, since per the Special Master's orders, each side **concurrently** submitted their Supplemental Brief on April 14, 2025. In other words, Defendant's submission was *not* filed in response to Plaintiff's submission, nor did the Special Master's orders permit either side to file a "reply" brief in response to the Supplemental Briefs.

### C. The Contemplated Sanctions Are Not Appropriate Under the Law

The Ninth Circuit has long held that "[i]n determining the validity of any judicial sanction, we must first consider the underlying authority for the court's action." *Zambrano v. City of Tustin*, 885 F.2d 1473, 1476 (9th Cir. 1989). "For a sanction to be validly imposed, the conduct in question must be sanctionable under the authority relied on." *Id.* at 1476-77 (citations omitted). Here, the Notice identifies three sources of authority for imposing sanctions: (i) the Court's inherent authority to "regulate all proceedings" before it; (ii) FRCP 11; and (iii) FRCP 37.

To impose sanctions under the Court's **inherent authority**, the target "must have 'engaged in bad faith or willful disobedience of a court's order.'" *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001); *see also U.S. v. Stoneberger*, 805 F.2d 1391, 1393 (9th Cir. 1986) ("A specific finding of bad faith...must 'precede any sanction under the court's inherent powers.'") (citations omitted). As detailed above, there is no bad faith here, and thus sanctions under the Court's inherent powers are not appropriate. *See, e.g., United States v. Cohen*, 724 F. Supp. 3d 251, 258 (S.D.N.Y. 2024) (declining to impose sanctions upon attorney for mistaken inclusion of erroneous AI material in brief, holding that "the Court cannot find that

1  it was done in bad faith"); *compare Unites States v. Hayes*, --- F. Supp. 3d. ---, 2025

2  WL 235531, at \*9 (E.D. Cal. 2025) (issuing sanctions against attorney who *declined*

3  to admit use of AI and persisted in asserting the validity of non-existent cases

4  despite opposition that expressly raised fictitious case concerns); *Mata v. Avianca*,

5  678 F. Supp. 3d 443, 466 (S.D.N.Y. 2023).

6      Likewise, for **Rule 11**: where, as here, the proposed sanction is imposed *sua*

7  *sponte*, a finding of bad faith is a prerequisite.  *See, e.g., United National Ins. Co. v.*

8  *R&D Latex Corp.*, 242 F.3d 1102, 1116 (9th Cir. 2001) ("*sua sponte* sanctions 'will

9  ordinarily be imposed only in situations that are *akin to a contempt of court*'"); *see*

10  *also Cohen*, 724 F. Supp. 3d at 258 ("*sua sponte* [Rule 11] sanctions should only

11  issue upon a finding of subjective bad faith").  Again, there is no bad faith here.[2]

12      Turning to **Rule 37**:  The specific prongs of the Rule cited in the Notice are

13  Rule 37(a)(5)(B) (award of attorney's fees) and Rule 37(b)(2)(A)(ii-iii) (prohibiting

14  a party from "supporting or opposing designated claims or defenses" and "striking

15  pleadings in whole or in part").  Starting with the latter (Rule 37(b)(2)(A)(ii-iii)): by

16  their own terms, those provisions have no applicability here.  To impose any

17  sanction under Rule 37(b)(2)(A), the Court must find that a party has "fail[ed] to

18  obey an order to provide or permit discovery."  Fed. R. Civ. P. 37(b)(2)(A).  Here,

19  nothing of the sort is even alleged to have occurred, and thus there is no basis for the

20  contemplated sanction of striking Plaintiff's Supplemental Brief wholesale.  By

21  extension, then, the automatic denial of the underlying motion due to the

22  contemplated striking of Plaintiff's brief is likewise inappropriate.  Further, the

23  Notice's contemplated sanction of ordering Plaintiff's counsel "to pay reasonable

24  attorney's fees that Defendant incurred in the preparation of its supplemental brief

---

[2] Moreover, a Rule 11 sanction imposed *sua sponte* can **never** include a payment of attorney's fees to the opposing party, given the provision in Rule 11(c)(4) that fee awards are only available "if imposed *on motion*."  Fed. R. Civ. P. 11(c)(4) (emphasis added); *see also Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998); *Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.*, 174 F.3d 87, 94 (2nd Cir. 1999).

**PLAINTIFF'S RESPONSE TO SPECIAL MASTER'S NOTICE**

1   (filed April 14)" is, respectfully, not appropriate:  <u>First</u>, Defendant's Supplemental

2   Brief was filed *concurrently* with Plaintiff's Supplemental Brief.  Thus, any fees

3   expended in its preparation could not have resulted from any mistaken citations in

4   Plaintiff's Supplemental Brief.  <u>Second</u>, any attorney's fee award under Rule

5   37(a)(5)(B) requires that the movant have lost the motion; as noted above, the

6   striking of Plaintiff's brief is not permitted under these circumstances, and thus the

7   motion should not automatically be denied.  <u>Third</u>, even if the Court denies the

8   motion on its merits, Rule 37(a)(5)(B) provides that "the court must not order this

9   payment if the motion was substantially justified."  And here, Plaintiff respectfully

10  submits that, if nothing else, the motion was substantially justified.

11      Finally, even when considering AI hallucination matters in isolation (separate

12  and apart from the foregoing legal impediments), Plaintiff respectfully notes that the

13  proposed sanctions discussed above do not comport with the principle that "any

14  sanction imposed must be proportionate to the offense and commensurate with

15  principles of restraint."  *Zambrano*, 885 F.2d at 1480.  Here, given the candor of

16  Plaintiff's counsel, the fundamental correctness of the legal arguments advanced, the

17  lack of any bad faith, and the lack of prejudice, Plaintiff respectfully submits that

18  imposing sanctions that substantively impact the case—including the striking of

19  briefing and denial of the motion—would unfairly penalize Plaintiff and her case.

20  *See, e.g., id.* at 1476 (cautioning against penalizing litigants for inadvertent

21  transgressions by counsel).

22      D. **CONCLUSION**

23      Plaintiff respectfully submits that the contemplated sanctions set forth in

24  Paragraph 6(a), 6(b), and 6(c) of the Notice are not appropriate.  That said,

25  Plaintiff's counsel reiterates their acknowledgement of the errors that occurred here

26  and their sincere apologies, and stipulate to the contemplated sanctions set forth in

27  Paragraph 6(d) (apportionment to Plaintiffs' counsel of Special Master fees relating

28  to correction of the foregoing errors and these OSC proceedings) and Paragraph 6(e)

-4-

**PLAINTIFF'S RESPONSE TO SPECIAL MASTER'S NOTICE**

1 (written disclosures to Plaintiff).

2 **II.    <u>SUBMISSION BY K&L GATES, ONLY</u>**

3      K&L Gates briefly notes the following additional facts and mitigating factors

4 specific to it and its lawyers.  K&L Gates has strict policies and prohibitions on the

5 use of generative AI tools, and indeed blocks its attorneys from accessing such tools

6 absent, *inter alia*, tool-specific training.  (*See* Keech Decl., ¶ 13; Vahedy Decl.,

7 ¶ 10.)  None of the K&L Gates attorneys who worked on the subject brief used any

8 AI tools; had access to any AI tools; or had any awareness that an Ellis George

9 attorney had used such tools in connection with the subject brief, until after the

10 Special Master's inquiries.  (*See* Keech Decl., ¶ 13; Vahedy Decl., ¶ 10; *see also*

11 Copeland Decl., ¶ 3.)  K&L Gates further notes that it had no reason to doubt the

12 accuracy of the citations provided by its trusted co-counsel, and that it did not sign

13 or file the subject brief.  (*See* Keech Decl., ¶¶ 3-7; Vahedy Decl., ¶¶ 3-5.) *see also*

14 *Braun ex rel Advanced Battery Techs., Inc. v. Zhiguo Fu*, 2015 WL 4389893, at *19

15 (S.D.N.Y. Jul. 10, 2015) (declining to impose sanctions where no evidence that

16 anybody at firm had actual knowledge that pleading contained false allegation).  No

17 sanctions against K&L Gates are appropriate in this situation.

18 **III.    <u>SUBMISSION BY ELLIS GEORGE, ONLY</u>**

19      Ellis George notes the following mitigating factors specific to its lawyer,

20 Trent Copeland: Mr. Copeland used generative AI tools specifically designed for

21 legal professionals when providing his colleagues with his initial thoughts in outline.

22 When doing so, he specifically indicated that they were "not intended to be a guide"

23 but rather an overview of the potential arguments. (*See* Copeland Decl., ¶¶ 4-8.)

24 Because Mr. Copeland was not tasked with primary responsibility for drafting the

25 brief, he assumed that case authority would be cite-checked by those who were

26 responsible for its drafting. Mr. Copeland acknowledges that, in hindsight, he should

27 have alerted the primary draftsman of his initial use of AI to assure proper cite

28 checking prior to submission.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

ELLIS GEORGE LLP
   Eric M. George
   Trent Copeland

Date: April 25, 2025    By: s/ Trent Copeland
                  Trent Copeland

*Attorneys for Plaintiff Jacquelyn "Jackie" Lacey in all capacities*

Respectfully submitted,

K&L GATES LLP
   Ryan Q. Keech
   Kevin S. Asfour
   Keian Vahedy

Date: April 25, 2025    By: s/ Kevin S. Asfour
                  Kevin S. Asfour

*Attorneys for Plaintiff Jacquelyn "Jackie" Lacey in all capacities*

-6-

**PLAINTIFF'S RESPONSE TO SPECIAL MASTER'S NOTICE**