SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
JENNIFER HOFFMAN, Cal. Bar No. 240600
ANDRE J. CRONTHALL, Cal. Bar No. 117088
350 South Grand Avenue, 40th Floor
Los Angeles, California 90071-3460
Telephone: 213.620.1780
Email:     jhoffman@sheppardmullin.com
           acronthall@sheppardmullin.com

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
JEFFREY S. CROWE, Cal. Bar No. 216055
650 Town Center Drive, 4th Floor
Costa Mesa, California 92626-1993
Telephone: 714.513.5100
Email:     jcrowe@sheppardmullin.com

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
ANDREA S. WARREN, Cal. Bar No. 327033
501 West Broadway, 18th Floor
San Diego, California 92101-3598
Telephone: 619.338.6500
E mail:    awarren@sheppardmullin.com

Attorneys for Defendant
STATE FARM GENERAL INSURANCE COMPANY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JACQUELYN "JACKIE" LACEY, in her individual capacity; and JACQUELYN "JACKIE" LACEY as trustee of the D and J Lacey Family Trust dated November 23, 2016,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM GENERAL INSURANCE COMPANY, an Illinois corporation, and DOES 1-50, inclusive,<br><br>Defendants. | Case No.: 2:24-cv-05205-FMO-MAA<br><br>Hon. Fernando M. Olguin<br><br>**DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SANCTIONS**<br><br>Date:  May 22, 2025<br>Time:  10:00 a.m.<br>Crtrm:  6D<br><br>*[Declaration of Jennifer Hoffman, Compendium of Exhibits and [Proposed] Order filed concurrently.]* |

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD*:***

      **PLEASE TAKE NOTICE** that on May 22, 2025, at 10:00 a.m., in Courtroom 6D, located at the First Street Courthouse, 350 West 1st Street, Los Angeles, California 90012, Defendant State Farm General Insurance Company ("State Farm"), will and hereby does move this Court for an order imposing sanctions pursuant to Federal Rule of Civil Procedure 11 ("Rule 11"), 28 U.S.C. § 1927, and/or the Court's inherent power.  State Farm requests the Court to issue an order:  (a) striking the false allegations contained in the Complaint (ECF 1-1); (b) ordering Mrs. Lacey's counsel of record, Ellis George LLP and K&L Gates LLP, jointly and severally, to pay State Farm's reasonable attorneys' fees and costs incurred to date in defending itself in this action, which exceed $500,000 or, at a minimum, fees incurred in bringing this Motion, which will likely exceed $20,000; and (c) imposing any other sanction against the law firms or their attorneys of record that the Court deems warranted to deter comparable misconduct.

      This Motion is made after State Farm repeatedly requested, and Mrs. Lacey's counsel refused, to complete a meet and confer pursuant to Local Rule 7-3. (Declaration of Jennifer Hoffman ("Hoffman Dec."), ¶¶ 16-21).  Pursuant to Rule 11(c)(2), State Farm served this Motion on Plaintiff's counsel at least 21 days before filing it with the Court.  (Hoffman Dec., ¶ 25).

      State Farm basis its Motion on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Jennifer M. Hoffman, the Compendium of Exhibits, and all other pleadings and papers filed, and any oral argument in support thereof.

1   Dated:  March 31, 2025          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

2
                                    By      /s/ Jennifer M. Hoffman
3                                          _____
                                            JENNIFER M. HOFFMAN
4                                           ANDRE J. CRONTHALL
                                            ANDREA S. WARREN
5                                           JEFFREY S. CROWE

6
                                            Attorneys for Defendant
7                                    STATE FARM GENERAL INSURANCE
                                            COMPANY
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   RELEVANT BACKGROUND ....................................................................... 3

    A.    Ellis George Agrees to Defend Mr. Lacey *Pro Bono* ........................... 3

    B.    The Laceys Tender Defense of the *Abdullah* Action to State Farm ........................................................................................................ 4

    C.    State Farm Accepts Mr. Lacey's Tender of Defense of an Amended Complaint and His Selection of *Cumis* Counsel ................... 5

    D.    Mrs. Lacey's Counsel Based This Complaint on False Allegations That Mrs. Lacey Owes Ellis George More Than $1 Million in Attorneys' Fees ........................................................................ 6

    E.    Mrs. Lacey's Counsel Repeatedly and Systematically Presented Their False Allegations During Discovery ............................................. 7

    F.    Discovery Revealed That Mrs. Lacey Did Not Owe Ellis George *Any* Attorneys' Fees ............................................................................. 8

    G.    The Special Master Issues a Report and Recommendation Which Relies on the False Allegations ............................................................. 9

III.  LEGAL STANDARD ................................................................................. 12

IV.   THIS COURT SHOULD ISSUE SANCTIONS ......................................... 13

    A.    The Complaint Misrepresents Mrs. Lacey's Claims and Damages ...... 13

    B.    Mrs. Lacey's Counsel Continued to Advance These Misrepresentations in its Opposition Papers and Discovery Responses ............................................................................................ 16

    C.    This Court Should Order Sanctions Pursuant to Rule 11, 28 U.S.C. Section 1927, and/or the Court's Inherent Powers ................... 18

    D.    State Farm Requests its Fees and Costs in Defending This Action ...... 19

V.    CONCLUSION ........................................................................................... 21

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

### <u>Cases</u>

4   *Arenson v. Nat'l Auto. & Cas. Ins. Co.*
5       48 Cal. 2d 528 (1957) ........................................................................ 16

6   *Buster v. Greisen*
7       104 F.3d 1186 (9th Cir. 1997) ........................................................... 13

8   *Caputo v. Tungsten Heavy Powder, Inc.*
        96 F.4th 1111 (9th Cir. 2024) ............................................................ 19
9
    *Chambers v. NASCO, Inc.*
10      501 U.S. 32 (1991) ............................................................................. 13

11  *Christian v. Mattel, Inc.*
12      286 F.3d 1118 (9th Cir. 2002) ..................................................... 12, 13

13  *Gaskell v. Weir*
14      10 F.3d 626 (9th Cir. 1993) ............................................................... 19

15  *Havensight Cap. LLC v. Nike, Inc.*
16      2015 WL 13899007 (C.D. Cal. Sept. 22, 2015), *aff'd*, 891 F.3d 1167 (9th
        Cir. 2018) .......................................................................................... 19
17
    *Holgate v. Baldwin*
18      425 F.3d 671 (9th Cir. 2005) ............................................................. 20
19
    *Jeff Tracy, Inc. v. Scottsdale Ins. Co.*
20      2015 WL 12765541 (C.D. Cal. Dec. 7, 2015) ................................... 14

21  *Kaas Law v. Wells Fargo Bank, N.A.*
22      799 F.3d 1290 (9th Cir. 2015) ........................................................... 12

23  *Kleiner v. First National Bank*
24      751 F.2d 1193 (11th Cir. 1985) ......................................................... 13

25  *Moser v. Bret Harte Union High Sch. Dist.*
26      366 F. Supp. 2d 944 (E.D. Cal. 2005) ......................................... 12, 19

27  *Roe v. Rivian Auto. LLC*
        2020 WL 8812913 (C.D. Cal. Dec. 11, 2020) ................................... 19
28

*Truesdell v. S. California Permanente Med. Grp.*
    209 F.R.D. 169 (C.D. Cal. 2002).......................................................................12

*Uziel v. Superior Court*
    2021 WL 5830040 (C.D. Cal. Oct. 19, 2021) ....................................................20

**<u>Statutes</u>**

28 U.S.C.
    § 1927 ......................................................................................................12, 18, 19

Cal. Civ. Code
    § 2860 ..............................................................................1, 2, 5, 6, 9, 10, 16, 17

**<u>Other Authorities</u>**

Fed. R. Civ. P. 11......................................................2, 10, 11, 12, 14, 16, 18, 19, 20

Fed. R. Civ. P. 11(b) ...........................................................................................13

Fed. R. Civ. P. 11(b)(1)-(3) ...............................................................................12

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Counsel for Plaintiff Jacquelyn Lacey, all officers of this court, have premised this case on a falsity.  State Farm only recently discovered the true facts, which Mrs. Lacey's counsel concealed for months and now refuse to correct.  Their false factual allegations—designed to avoid mandatory arbitration under California Civil Code Section 2860—have needlessly multiplied and prolonged these proceedings, and their recalcitrance warrants sanctions.

Mrs. Lacey's counsel alleges that her central damages in this case are attorneys' fees that Mrs. Lacey owes to them, which include more than $1 million owed to Ellis George alone, for defending David Lacey in an underlying lawsuit, *Abdullah et al. v. Lacey et al.* (the "*Abdullah* Action").  The *Abdullah* Action was filed at the end of October 2020 after Mr. Lacey, Mrs. Lacey's late husband, confronted protestors on the Laceys' property with a gun.  State Farm ultimately accepted Mr. Lacey's tender of defense in the *Abdullah* Action in March 2021 subject to a reservation of rights and agreed to pay his selected counsel pursuant to Section 2860.[1]  But, months earlier, Mr. Lacey retained Ellis George to defend him *pro bono*.

The Ellis George *pro bono* agreement meant that Ellis George could never charge the Laceys a dime for attorneys' fees in connection with the *Abdullah* Action.  But, neither the Laceys nor their counsel told State Farm, or the Court, the true facts.  Instead, dissatisfied with State Farm's attorneys' fees payments pursuant to Section 2860, Ellis George filed this lawsuit falsely alleging that Mrs. Lacey

---

[1]  Originally enacted as part of a tort reform act sponsored by former Attorney General Bill Lockyer, Section 2860 limits an insurer's obligation to pay independent counsel to rates "which are actually paid by the insurer to attorneys retained by it" in similar actions and provides that "any dispute concerning attorney's fees . . . shall be resolved by final and binding arbitration by a single neutral arbitrator selected by the parties to the dispute."

owed them a direct debt of more than $1 million in attorneys' fees.  They repeat that allegation throughout their Complaint, expressly alleging that the Laceys are "responsible for the difference between the reasonable hourly rates actually charged by Ellis George versus the reduced rates State Farm agreed to pay."  (ECF 1-1, ¶ 32).  And, they claim that that purported debt to Ellis George, allegedly assumed as a result of State Farm's initial coverage position, caused Mrs. Lacey emotional distress.  They made all of those false allegations in an effort to avoid mandatory arbitration of fee disputes under Section 2860.  And, it worked.

State Farm moved to compel arbitration in September 2024, before the *pro bono* revelation.  It was only months later, and after two informal discovery conferences with the Court, that Ellis George and its co-counsel K&L Gates finally produced the *pro bono* retention agreement.  State Farm then raised the *pro bono* agreement during the February 2025 hearing on the motion to compel arbitration. The Special Master responded that allegations falsely alleging a debt not owed may well raise a Rule 11 issue, but that neither Rule 11 nor the *pro bono* agreement was properly before him.  Instead, he recommended denial of State Farm's motion based on the finding that the gravamen of this case was not a fee dispute between counsel and State Farm.  And, the Special Master appeared to base that finding, at least in part, on the false allegations that Mrs. Lacey had incurred more than $1 million in debt to Ellis George.  But the extent (or even the fact) of the Special Master's reliance on those false allegations is not the issue here.

This Motion centers on counsel's misconduct.  Ellis George has known all along that it defended Mr. Lacey *pro bono*.  Their written *pro bono* agreement means that the Laceys did not, and could not, as a matter of fact and California law, incur direct liability to them for *any* fees in connection with the *Abdullah* Action. And, if K&L Gates and Mrs. Lacey did not know before that Ellis George was falsely alleging that the Laceys incurred over $1 million in liability to Ellis George, they know now.  Yet, they persist in pursuing those false allegations here, without

any factual, legal, or ethical justification.  Even worse, they have doubled down on their false allegations to avoid mandatory arbitration of this fee dispute.  Their misconduct should not be countenanced.

The Court should strike the false allegations in the Complaint and sanction counsel for their recalcitrance.

## II.  RELEVANT BACKGROUND

### A.  Ellis George Agrees to Defend Mr. Lacey *Pro Bono*

Mrs. Lacey served as District Attorney for Los Angeles County when the Black Lives Matter movement began.  (ECF 1-1, ¶ 4).  On March 2, 2020, Black Lives Matter demonstrators assembled at the Laceys' residence to protest.  (*Id.*, ¶¶ 5, 20).  Mrs. Lacey's late husband, Mr. Lacey, confronted three demonstrators with a gun.  (*Id.*).  On October 19, 2020, the three demonstrators filed the *Abdullah* Action.  (*Id.*, ¶ 21).

The same day, Mrs. Lacey reached out to her longtime friend Eric George, a named partner at Ellis George, formerly known as Browne George Ross O'Brien Annaguey & Ellis.  (Compendium of Exhibits ("COE") Ex. H, 32:7-22, 33:12-21, 55:21-56:4, 57:1-2 & Ex. 3).  Eric George agreed to undertake Mr. Lacey's defense *pro bono*, or, as Mrs. Lacey understood, "for free." [2]  (*Id.* at 198:24-199:1, 214:13-18, 215:13-24).  "No one ever talked to [her] and told [her]" that she could be held responsible for any attorney's fees to Ellis George or anyone else.  (*Id.* at 233:5-15; 238:3-8).

According to Mrs. Lacey, the Laceys' attorney-client relationship with Ellis George began with that initial conversation between Mrs. Lacey and Eric George on or around October 19, 2020.  (COE Ex. H, 33:8-34:15 & Ex. 3).  On November 24, 2020, Mr. George sent the Laceys a retention agreement memorializing the *pro bono*

---

[2]  Ellis George appears to have viewed the retention as a marketing opportunity, given Mrs. Lacey's former status as a public figure and that the representation is still listed as the first bullet point on an Ellis George partner's firm bio.  (COE, Ex. R).

retention (the "Ellis George *Pro Bono* Agreement").  (COE Ex. G).  The Ellis George *Pro Bono* Agreement begins:

> Pardon the formality of this letter, but California law requires that attorney fee agreements be in writing.  Consequently, this letter — together with the accompanying Standard Terms of Retention . . . **will serve as the fee agreement . . . and will confirm the scope and terms of our *pro bono* representation of [Mr. Lacey] in this matter.**  The agreement may not be changed or modified except by a subsequent document signed by all of us.

(*Id.* at LACEY000662) (emphasis added).  So as to leave no doubt as to the *pro bono* nature of the retention, the Ellis George *Pro Bono* Agreement goes on to expressly state: "All attorney and paralegal time will be performed for you *pro bono*."  (*Id.* at LACEY0006623).

Mr. Lacey countersigned the agreement on December 4, 2020.  (*Id.*).  Its terms controlled Ellis George's retention as Mr. Lacey's counsel through the life of the *Abdullah* Action; Mrs. Lacey confirmed that no other written agreement between Mr. Lacey and Ellis George existed.  (COE Ex. H, 181:6-11, 233:23-234:23).

## B.  The Laceys Tender Defense of the *Abdullah* Action to State Farm

Meanwhile, on October 20, 2020, the Laceys' personal counsel, Jeffrey Zinder, sent a copy of the *Abdullah* Complaint to State Farm.  (ECF 30-2, Ex. 3).  State Farm considered the tender and, due to coverage questions raised, retained coverage counsel Wade & Lowe.  (ECF 30-1, ¶ 8).

After completing its investigation, on December 15, 2020, State Farm sent a letter explaining that the *Abdullah* Complaint did not support a potential of covered damages against Mr. Lacey or a defense obligation under his State Farm policies.[3]  (COE Ex. H, Ex. 6).

---

[3] Different considerations applied to Mrs. Lacey, however.  State Farm separately agreed to provide her with a defense and retained counsel to defend her.  (ECF 30-2, Exs. 5-6).  State Farm's defense of Mrs. Lacey is not at issue on this Motion.

**C.**    **State Farm Accepts Mr. Lacey's Tender of Defense of an Amended Complaint and His Selection of *Cumis* Counsel**

In February 2021, the plaintiffs in the *Abdullah* Action filed a Second Amended Complaint which alleged a new cause of action for "false imprisonment," a potentially covered "offense" under the Laceys' Umbrella policy.  (ECF 30-2, Ex. 7).  On February 19, 2021, Ellis George sent a copy of the Second Amended Complaint to State Farm.  (*Id.*).

On or around March 12, State Farm accepted Mr. Lacey's tender of defense subject to a reservation of rights based on the new false imprisonment cause of action.  (ECF 30-2, Ex. 8).  State Farm also tentatively agreed to Mr. Lacey's selection of Ellis George as independent or *Cumis* counsel subject to compliance with Section 2860, and notified Ellis George that it would reimburse reasonable and necessary defense fees at a rate of $225 per hour pursuant to Section 2860.[4]  (ECF 30-2, Ex. 9).

Instead of billing at Section 2860 rates, however, and without informing State Farm of the *pro bono* agreement, for the next three years Ellis George sent State Farm invoices charging its full rates for Mr. Lacey's defense, up to $850 an hour.  (ECF 30-2, Ex. 19).

State Farm paid Ellis George's invoices as *Cumis* counsel at the Section 2860 rates it had agreed to pay.  (ECF 30-2, Exs. 9, 13).  Consistent with Mr. Lacey's *pro bono* agreement, Ellis George never billed the Laceys for attorneys' fees.[5]  (COE Ex. H, 192:14-20; 199:22-24).

---

4 The parties dispute the adequacy of the Section 2860 rates that State Farm paid, which fee dispute is not at issue on this Motion.  It is undisputed, however, that the rates State Farm paid Ellis George exceeded the "panel rates" State Farm paid retained defense counsel for Mrs. Lacey.  (ECF 22, 8:24-9:8).
5  Years later, in 2023, Ryan Keech moved to K&L Gates and asked Mrs. Lacey to sign a second retention agreement with his new firm on behalf of David Lacey's Estate.  That agreement is itself unfair to Mrs. Lacey and unenforceable under

In 2023, Mrs. Lacey was dismissed with prejudice from the *Abdullah* Action. (*Id.*, Ex. 13).  In 2024, the parties mediated the remaining claims against Mr. Lacey's Estate and reached a tentative settlement, which *Cumis* counsel prepared. (ECF 30-2, Ex. 16).  State Farm fully funded the mediated settlement, and the *Abdullah* Action was dismissed with prejudice.  (COE Ex. H, 117:23-25, 140:1-14, Ex. 13).  In all, State Farm paid Ellis George and K&L Gates more than $800,000 in attorneys' fees and costs.  (COE Ex. B).  But, Ellis George and K&L Gates wanted more.

**D.     Mrs. Lacey's Counsel Based This Complaint on False Allegations That Mrs. Lacey Owes Ellis George More Than $1 Million in Attorneys' Fees**

In March 2024, even before the dismissal of the *Abdullah* Action was finalized, Ellis George and K&L Gates demanded from State Farm the balance of their billed rates.  (ECF 30-2, Exs. 19 & 20).  State Farm responded that it had paid the rates required under Section 2860 and, if counsel disagreed with the payment, the fee dispute should proceed to mandatory arbitration.  (ECF 17-1, ¶¶ 2-4).

K&L Gates and Ellis George refused.  In May 2024, they filed this lawsuit on behalf of Mrs. Lacey.  (ECF 1-1).  To create the façade that this case is about more than a fee dispute between them and State Farm, their Complaint expressly, repeatedly, and falsely alleges that State Farm's December 2020 denial of Mr. Lacey's initial tender of defense caused Mr. Lacey to retain Ellis George and thereby assume liability for more than $1 million in attorneys' fees.  (ECF 1-1).  The Complaint, signed by Ellis George attorney Trent Copeland and K&L Gates attorney Ryan Keech, states:

- "Within months of the representation commencing, State Farm either 'slow paid,' 'low paid' or, as time went on 'no paid' **Mr.**

_____

California law for other reasons, but not directly at issue on this Motion.  (COE Ex. Q, 15-16, 21-24).  Regardless, State Farm paid K&L Gates' invoices, which billed attorneys' fees at rates of up to $990 an hour, at Section 2860 rates, subject to a reservation of rights.  (ECF 30-2, Exs. 9, 13, 15, 20 (LACEY00000351)).

**Lacey's legal fees — leaving the Laceys exposed to massive legal expenses** which State Farm had agreed to pay and was obligated by law to pay." (*Id.*, ¶ 8 (emphasis added)).

- "The job of defending the underlying conduct would be left to **the insureds alone, paying for Mr. Lacey's defense . . . .**" (*Id.*, ¶ 27 (emphasis added)).

- "**After State Farm's denial . . . the Laceys had no choice but to incur additional expenses by hiring counsel on their own**, Ellis George LLP (formerly known as Browne George Ross O'Brien Annaguey & Ellis LLP) . . . to defend David Lacey in the Underlying Action and protect his interests." (*Id.*, ¶ 29 (emphasis added)).

- "It was not until March 12, 2021 . . . that State Farm reluctantly agreed to extend a limited defense to Mr. Lacey — subject to . . . **a significant hourly rate reduction . . . leaving Mr. Lacey responsible for the difference between the reasonable hourly rates actually charged by Ellis George versus the reduced rates State Farm agreed to pay.**" (*Id.*, ¶ 32 (emphasis added)).

- State Farm "**[left] the Laceys exposed to massive legal expenses**. [Plaintiff] as Trustee of the Trust (and as a beneficiary thereof), in particular, remains damaged as **she is left holding the bag for Mr. Lacey's (and later the Trust's) attorney's fees.**" (*Id.*, ¶ 33 (emphasis added)).

- State Farm "refused to pay a vast amount of the attorney's fees incurred in the defense of Mr. Lacey, **leaving Mrs. Lacey holding the bag for these sums.**" (*Id.*, ¶ 48 (emphasis added)).

**E.** <u>**Mrs. Lacey's Counsel Repeatedly and Systematically Presented Their False Allegations During Discovery**</u>

During discovery Ellis George and K&L Gates continued to advance the false theory that, as a result of State Farm's December 2020 coverage position letter, the Laceys retained Ellis George (whom they had actually retained in October 2020) and now owed Ellis George more than $1 million in attorneys' fees. (Hoffman Dec., ¶¶ 3-5; COE Exs. B-D). The only damages that Mrs. Lacey addressed with particularity were for attorney's fees, and the only documents offered as support for the purported $1 million owed to Ellis George were invoices that Ellis George billed to State Farm alone. (*Id.* & COE Ex. H, 199:20-24).

Ellis George and K&L Gates insisted that their produced invoices constituted *all* supporting documents showing that Mrs. Lacey was "exposed" and "incurred" such fees.  (COE Exs. B-D).  However, they failed to produce *any* retention agreement reflecting that the Laceys assumed any obligation to pay the exorbitant fees they claimed.  (Hoffman Dec., ¶¶ 7-8).

After Ellis George and K&L Gates failed to produce retention agreements with Mrs. Lacey's supplemental disclosures, State Farm served requests specifically asking for them.  (Hoffman Dec., ¶ 6).  Mrs. Lacey's counsel, however, *still* failed to produce them.  (Hoffman Dec., ¶¶ 7-8).

## F.   Discovery Revealed That Mrs. Lacey Did Not Owe Ellis George *Any* Attorneys' Fees

It was not until October 2024, during an Informal Discovery Conference ("IDC") necessitated by counsel's failure to produce the agreements and other documents, that counsel explicitly agreed to produce them.  (ECF 33; Hoffman Dec., ¶ 9; COE Ex. E, 28:13-23; 37:4-10).  However, even then, their subsequent production only included a K&L Gates agreement from 2023, years after State Farm undertook Mr. Lacey's defense.[6]  (Hoffman Dec., ¶ 10).  That partial production necessitated another IDC, during which counsel claimed the omission of the Ellis George *Pro Bono* Agreement was inadvertent.  (ECF 45; Hoffman Dec., ¶ 11; COE Ex. F).

Counsel finally produced the Ellis George *Pro Bono* Agreement on November 15, 2024.  (COE Ex. G).  That production provided the first notice to State Farm that Ellis George had defended Mr. Lacey *pro bono* all along.  (*Id.*).

During her December 11, 2024 deposition, Mrs. Lacey authenticated the Ellis George *Pro Bono* Agreement, confirmed that she was "not aware of any other

---

[6] Also following the first IDC, Ellis George and K&L Gates produced a privilege log including communications between Mrs. Lacey and Ellis George dating back to October 19, 2020.  (COE, Exh. H, Exh. 3).

document modifying" it, and testified that it was the complete agreement between Ellis George and David Lacey.[7]  (COE Exh. H, pp. 59-62).  She testified that, consistent with the Ellis George *Pro Bono* Agreement, Ellis George never billed, and Mrs. Lacey never paid, attorneys' fees to Ellis George for Mr. Lacey's defense. (COE Ex. H, 192:14-20, 199:20-24).  According to her, she understood *pro bono* meant "free."  (*Id.* at 198:2-199:1).

## G. <u>The Special Master Issues a Report and Recommendation Which Relies on the False Allegations</u>

Two months before the *pro bono* revelation, State Farm moved to compel arbitration pursuant to Section 2860.  (ECF 30).  Section 2860 mandates arbitration of fee disputes between independent counsel and insurers, and State Farm argued that this case should be referred to arbitration because it is a thinly veiled attorneys' fee dispute between it and *Cumis* counsel.  (*Id.*).

*Cumis* counsel, Mrs. Lacey's counsel herein, opposed the motion.  (ECF 22). Still having failed to produce the Ellis George *Pro Bono* Agreement or disclose the *pro bono* arrangement, they expressly argued that the court should not compel arbitration because of Mrs. Lacey's purported debt to Ellis George.  (*Id.*).  They reiterated that false claim no less than ***four separate times*** in their Opposition. (ECF 22 at 5, 7, 9, 22).  As support, *Cumis* counsel cited only the dramatic, and false, allegations of their Complaint that the Laceys were left "holding the bag" for

---

[7] After a break in her deposition (during which she met with attorneys Ryan Keech and Trent Copeland), and in response to questioning from Mr. Copeland, Mrs. Lacey said that she "believed" she had an obligation to pay Ellis George's legal fees once State Farm accepted Mr. Lacey's tender of defense.  (COE Ex. H, p. 227). During further examination, Mrs. Lacey admitted there was no mention of any contingency in the *Pro Bono* Agreement related to State Farm's defense before the break in her deposition, and confirmed that the *Pro Bono* Agreement was never modified.  (COE Ex. H, p. 233-234)  It is therefore both legally and factually false to suggest that some fee obligation existed, as discussed below and as State Farm's expert details in her report.  (COE, Ex. Q).

the balance of Ellis George's fees which State Farm's December 2020 denial purportedly caused them to incur (all while knowing the true facts that the Laceys had hired Ellis George *pro bono* months earlier). (*Id.* at 7, 22). The Court took the motion under submission on October 21, 2024, weeks before Ellis George produced the *pro bono* agreement. (ECF 31).

In January 2025, the Court appointed a Special Master and referred State Farm's Motion to Compel Arbitration to the Special Master for a Report and Recommendation. (ECF 30, 70, 73). During the hearing on the motion, the Special Master raised that Mrs. Lacey's emotional distress claim stemming from State Farm's alleged denial of Mr. Lacey's defense and the Laceys' retention of Ellis George at their expense, may be determinative to his decision. (COE Ex. I, 12:4-13:7; 16:21-17:2; 19:12-14). State Farm responded by raising the *pro bono* agreement, which it could not have raised before briefing closed because counsel had not produced the agreement. (*Id.* at 20:23-23:25). State Farm argued that that new information disproved counsel's central argument in opposition to arbitration *i.e.* that the gravamen of the case was more than a *Cumis* fee dispute because Mrs. Lacey alleged that she was forced to incur significant, personal financial liability to Ellis George due to State Farm's December 2020 denial. (*Id.*). The Special Master responded that counsel's allegations may well raise a "Rule 11 issue," but that issue was not before the Court. (*Id.* at 26:1-27:4).

The Special Master expressly declined to consider the *pro bono* agreement and Mrs. Lacey's testimony regarding the same in his Report on the grounds that the evidence was not submitted with the briefing. (ECF 78 at 9 n.6). The Special Master acknowledged that merely alleging that an insurer breached the duty to defend or engaged in bad faith does not avoid mandatory arbitration under Section 2860. (*Id.* at 5:12-14). However, he recommended denying State Farm's motion as "premature" based on his view that the "gravamen" of the action was not a fee dispute. (*Id.* at 1:10-16, 5:18-26, 7-9). That finding relied at least in part on the

false allegations included in the Complaint and recounted above.  (*Id.* at 1, 9 n.6 ("Plaintiff's allegations affect the consideration of the gravamen of the federal action.")).  The Special Master thus found that Mrs. Lacey's allegations of emotional distress stemming from "a fear that she owed a large amount of money to her independent lawyers" tipped the scales.[8]  (*Id.* at 8:16-9:3).

As discussed, and as Ellis George and K&L Gates knew, those allegations that Mrs. Lacey owed Ellis George more than $1 million in attorneys' fees were false.  Despite repeated opportunities, and even the Special Master's acknowledgement of a potential Rule 11 issue, they refuse to correct them.  (Hoffman Dec., ¶¶ 14, 16-21; COE Exs. K-P, Ex. I, 26:1-27:4).  Instead, on March 27, 2025, they urged this Court to enter the Special Master's Report and Recommendation based on their false allegations.  (ECF 87, p. 7:22-23) (urging adoption of the Report because "the pleadings … were analyzed [by the Special Master] to determine what the gravamen of the case actually is.").  This Motion followed.

---

[8]  The Special Master also referenced alleged misconduct by Harry Safarian, counsel that State Farm retained to defend Mrs. Lacey in the *Abdullah* Action.  (*Id.* at 8:19-20).  Those allegations are also meritless, as evidenced by Mrs. Lacey's deposition testimony, counsel's records, and counsel's offer to withdraw them entirely if State Farm agreed to not pursue counsel's depositions.  (*See, e.g.*, Hoffman Dec., ¶ 15; COE Ex. J & Ex. H, 90:13-21, 137:5-138:18; 139:9-140:14 (attesting that Mrs. Lacey "liked" Harry Safarian, "love[d] working with" him, "admire[d] and respect[ed]" him and the other lawyers on her "team," and did not recall Mr. Safarian attending the March 2024 mediation which resulted in a settlement agreement), 148:8-149:21 (attesting that the only signatories to the March 2024 mediation settlement agreement were plaintiffs, plaintiffs' counsel, Trent Copeland, Ryan Keech, and Mrs. Lacey); ECF 30-2, Exs. 16, 19 (LACEY00000242), 20 (LACEY00000348-351)).  Those false allegations underscore counsel's disregard for Rule 11, and constitute another basis for sanctions.

### III.  <u>LEGAL STANDARD</u>

Courts have broad discretion to impose sanctions.  The power to sanction derives from federal procedural rules, federal statutes, and a court's inherent power. *Moser v. Bret Harte Union High Sch. Dist.,* 366 F. Supp. 2d 944 (E.D. Cal. 2005).

### A.    <u>Rule 11</u>

Rule 11 imposes an affirmative duty on counsel to investigate the facts and law in an objectively reasonable manner before filing any "pleading, written motion, or other paper."  *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127-30 (9th Cir. 2002) (quoting Fed. R. Civ. P. 11); *see also Truesdell v. S. California Permanente Med. Grp.*, 209 F.R.D. 169, 176-78 (C.D. Cal. 2002) (awarding sanctions against plaintiff's counsel for his "entire course of conduct" in filing and then refusing to withdraw a complaint based on his "specious interpretation" of contractual obligations and factual misrepresentations).  Accordingly, courts may impose sanctions whenever an attorney or party signs, files, submits or advocates any pleading or other paper with the Court: (1) for "any improper purpose, such as to harass, cause unnecessary delay or needlessly increase the cost of litigation;" (2) that is not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;" or (3) that lacks evidentiary support for its factual contentions.  Fed. R. Civ. P. 11(b)(1)-(3).

### B.    <u>28 U.S.C. Section 1927</u>

28 U.S.C. § 1927 provides: "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  In contrast to Rule 11, which authorizes sanctions against attorneys or law firms, Section 1927 applies to individual attorneys.  *Kaas Law v. Wells Fargo Bank, N.A.,* 799 F.3d 1290, 1294 (9th Cir. 2015).

**C.**   <u>**Court's Inherent Power**</u>

A court may rely on its inherent powers to issue sanctions for bad faith litigation misconduct, including where the misconduct "at issue is not covered by one of the other sanctioning provisions." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50-51 (1991).  Sanctions under the court's inherent power may include attorney disqualification. *Kleiner v. First National Bank*, 751 F.2d 1193, 1209 (11th Cir. 1985) (affirming disqualification of counsel under district court's inherent power).

**IV.  <u>THIS COURT SHOULD ISSUE SANCTIONS</u>**

**A.**   <u>**The Complaint Misrepresents Mrs. Lacey's Claims and Damages**</u>

Counsel's "signature on a complaint is tantamount to a warranty that the complaint is well grounded in fact and 'existing law' . . . and that it is not filed for an improper purpose." *Christian*, 286 F.3d 1118, 1127 (9th Cir. 2002).  The signature "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that "the factual contentions have evidentiary support[.]"  Fed. R. Civ. P. 11(b).  This obligation applies to complaints filed in state court and later removed to federal court. *Buster v. Greisen*, 104 F.3d 1186, 1190 n.4 (9th Cir. 1997).  Where, as here, a complaint forms a basis for sanctions, courts must conduct a "two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted a 'reasonable and competent inquiry' before signing and filing it." *Christian*, 286 F.3d at 1127 (citation omitted).

The Complaint in this action centers on false allegations that, as a result of State Farm's December 2020 coverage position letter, the Laceys retained Ellis George (whom they had retained months earlier) and incurred a debt of more than $1 million to Ellis George, which caused Mrs. Lacey emotional distress.  Ellis George and K&L Gates falsely and repeatedly misrepresented that Mrs. Lacey sustained over $1 million in damages based on a purported direct obligation to pay Ellis George's full billed rates.  (*See, e.g.*, ECF 1-1, ¶¶ 8, 33 (alleging the Laceys are

-13-

"exposed to massive legal expenses"), ¶ 27 ("the insureds alone [were left to pay] for Mr. Lacey's defense"), ¶ 29 ("the Laceys had no choice but to incur additional expenses by hiring counsel on their own"), ¶ 32 (Mr. Lacey was "responsible for the difference"), ¶¶ 33, 48 (Mrs. Lacey is left "holding the bag. . . .")).

Mrs. Lacey's counsel should have never certified these allegations because the evidence reflects that they knew all along that Ellis George had defended Mr. Lacey *pro bono*. (COE Ex. H, 181:6-11, 233:23-234:23); *see Jeff Tracy, Inc. v. Scottsdale Ins. Co.*, 2015 WL 12765541, at *12 (C.D. Cal. Dec. 7, 2015) (finding counsel "should have known" their allegations required investigation because they were copied on emails indicating they were false). Ellis George drafted the *pro bono* retention agreement. (COE Ex. G). Mr. George, lead counsel of record for Ellis George, signed the *pro bono* retention agreement. (*Id.*). Mr. Keech, lead counsel for K&L Gates and former counsel at Ellis George, was staffed on the *Abdullah* Action when the *pro bono* retention agreement was entered, and for years thereafter. (ECF 30-2, Ex. 19 (LACEY000003); COE Ex. H, 126:23-127:2).

The evidence also reflects that counsel knew that State Farm's initial coverage position did not cause Mr. Lacey to hire Ellis George. According to Mrs. Lacey's testimony and counsel's privilege log, Ellis George's retention began in October 2020, months before State Farm's December 2020 letter to the Laceys notifying them that the allegations of the Complaint did not trigger a potential of coverage as to Mr. Lacey. (COE Ex. H, 33:8-34:15; 234:12-19 & Ex. 3).

As a courtesy, before incurring the cost of bringing this Motion, State Farm's counsel sent Ellis George and K&L Gates a letter notifying them that the false allegations of a more than $1 million debt owed by Mrs. Lacey to Ellis George and caused by State Farm, violated Rule 11 and their ethical obligations to counsel and the Court. (COE Ex. K). Ellis George and K&L Gates responded with various unsupported and frivolous arguments, none of which denied their knowledge of the

1  Ellis George *Pro Bono* Agreement, or the indisputable fact that the Laceys owed no

2  direct obligation to pay attorneys' fees to Ellis George.  (COE Ex. O).

3      For example, they argued that the Ellis George *Pro Bono* Agreement was

4  orally modified at some unspecified time in some way.  (*Id.*).  Mrs. Lacey and her

5  counsel, who are experienced lawyers and officers of the court, understand the

6  importance of fully-integrated fee agreements and their terms, including that any

7  modification must be in writing.  As written, the integrated Ellis George *Pro Bono*

8  Agreement expressly barred oral modifications.  (*See* COE Ex. G).  Mrs. Lacey's

9  counsel should have known that any purported oral agreement made between Mrs.

10  Lacey, who was not a contracting party, and Ellis George to pay the full billed rates

11  would be in direct contravention of the express terms of the agreement and

12  California law.  (*See* COE Ex. Q, 10, 14-15, 17-21 (opining that any modification

13  "transforming [the agreement] from *pro bono* to hourly at an unspecified rate"

14  would be illegal, void, and unenforceable and in violation of basic contract law and

15  ethical and fiduciary duties)).

16      Ellis George's conduct underscored the fact that she owed them no fee

17  obligation.  (COE Ex. H, 132:4-15, 215:13-24; 232:20-233:15, 238:3-8, 240:15-

18  241:4; *see also* Ex. Q, 19 ("At best," Mrs. Lacey's testimony and Ellis George's

19  decision not to invoice the Laceys "indicates that Ms. Lacey's understanding was

20  that Ellis George would bill State Farm for its legal services after coverage was

21  accepted, not that the Lacey[]s would be on the hook for any fees.")).  Both the

22  Laceys and Ellis George always acted consistent with the *pro bono* retention, as

23  Ellis George never billed the Laceys for attorneys' fees and the Laceys never paid

24  Ellis George for attorneys' fees.  It is therefore both factually and legally baseless

25  for them to assert that Mrs. Lacey suffered damages of over $1 million purportedly

26  "owed" to Ellis George as a result of State Farm's conduct.  (COE Ex. Q, 14-15, 17-

27  21, 26-28).

28

SMRH:4916-7575-0440.5

Ellis George and K&L Gates also responded to State Farm's Rule 11 warning letter by arguing that fees for services provided *pro bono* can be recovered from third parties under certain circumstances. (COE Ex. O (citing *inter alia*, *Arenson v. Nat'l Auto. & Cas. Ins. Co.*, 48 Cal. 2d 528 (1957), a pre-Section 2860 case suggesting that an attorney may seek fees from a carrier if not from their client)). That is not the issue here. State Farm is not disclaiming its own agreement to pay rates pursuant to Section 2860. Rather, State Farm moved to compel arbitration of that fee dispute. The issue here is that Ellis George and K&L Gates pursued this lawsuit, and opposed State Farm's motion to compel arbitration, based on false factual allegations that Mrs. Lacey directly owes Ellis George more than $1 million. (*See* COE Ex. Q, 26-28 ("Statements by the attorneys in this action to the effect that the Laceys owed **any** legal fees to Ellis George would constitute material false statements of fact. . . .")).

**B.** **Mrs. Lacey's Counsel Continued to Advance These Misrepresentations in its Opposition Papers and Discovery Responses**

Despite knowing that the Laceys owed Ellis George nothing in attorneys' fees due to the *pro bono* agreement, Ellis George and K&L Gates attorneys continued to advance their false allegations of a purported $1 million debt owed directly by Mrs. Lacey.

They repeated their false allegations in written discovery, asserting that Mrs. Lacey was "exposed" to over $2 million in unpaid fees, based on the total "billed by counsel of record at Ellis George LLP ($1,887,218.28) and K & L Gates LLP ($1,121,957.48)." (COE Exs. B-D). They argued that the Ellis George invoices supported Mrs. Lacey's damages, which showed a balance owed to Ellis George alone of over $1 million. (*Id.*; ECF 30-2, Ex. 19).

They doubled-down on their false allegations, by repeating them to the Court in their Opposition to State Farm's Motion to Compel Arbitration. (ECF 22). They argued throughout that Opposition that the Court should refuse to compel arbitration

based on their false allegations that Mrs. Lacey incurred more than $1 million in debt to Ellis George as a result of State Farm's purported conduct:

- "As alleged in Plaintiff's complaint, when State Farm belatedly agreed to defend Mr. Lacey—five months into the case—it did so only partially and prospectively, **leaving him to shoulder the burden of the remainder of his defense, including** *all* of his **fees** and costs **incurred** thus far. . . . As to his fees and costs going forward, State Farm improperly invoked Section 2860 . . . as a basis to refuse to pay the fees **actually incurred**." (*Id.* at 5 (emphasis added)).

- "Mr. Lacey, abandoned by his insurer, thus had no choice but to retain counsel on his own and **at his own expense**." (*Id.* at 7 (emphasis added)).

- State Farm agreed to pay only panel counsel rates "**leaving Mr. Lacey to pay the significant difference between those rates and the market rates actually charged by his counsel**." (*Id.* at 7 (emphasis added)).

- State Farm cannot properly label as "*Cumis* fees" the defense fees and costs **that Mr. Lacey incurred during the first five months of the case**—for which State Farm has refused to provide him with *any* defense, to this day. (*Id.* at 9 (emphasis added)).

- "Plaintiff has pleaded claims against State Farm in this action for breach of contract and bad faith due to, *inter alia*, State Farm's express refusal to defend Mr. Lacey during the earlier stages of the Underlying Action, leaving him to retain counsel on his own, **at his own expense**." (*Id.* at 22 (emphasis added)).

As support, counsel cited only to the allegations of the Complaint. (ECF 22). Not once did they disclose, or even suggest, the *pro bono* arrangement with Ellis George. Nor did they acknowledge their own position that the Laceys retained Ellis George as counsel as of October 19, 2020, months before State Farm notified Mr. Lacey of its initial coverage determination. (COE Ex. H, Ex. 3).

State Farm raised these misrepresentations by addressing the *pro bono* agreement at the hearing. (COE Ex. I, 20:23-23:25.) When State Farm argued to the Special Master that "the documents produced . . . show that those are false statements," the Special Master replied:

> Well, we can take that up at the appropriate time, and there may be some sort of *Rule 11 issue that you may want to put in front of the district court*.

(*Id.* at 26:23-27:4) (emphasis added).  However, the Special Master declined to consider the *pro bono* agreement on the ground that it was not properly before him with the briefing.  (ECF 78 at 9 n.6).

Rather than acknowledge the *pro bono* agreement consistent with their duty of candor to the court and counsel, the Ellis George and K&L Gates attorneys avoided it.  Mrs. Lacey's counsel responded at the February 24, 2025 hearing that they objected "across the board" to "virtually every representation" made by State Farm's counsel and suggested they were not "germane to this motion."  (COE Ex. I, 32:2-7).  Counsel doubled-down on that objection, filing an objection and motion to strike upon State Farm's submission of the *pro bono* agreement, which the Court sustained on procedural grounds.  (ECF 77, 77-1).  Counsel then urged the Court to adopt the Special Master's report, which they conceded was based, at least in part, on an examination of the allegations of the Complaint.  (ECF 87, p. 7:22-23).  Not once, whether at the hearing before the Special Master, or in their objection, or in their opposition to State Farm's Motion for Review before the Court, did Ellis George or K&L Gates attorneys acknowledge the *pro bono* agreement.  (COE Ex. I; ECF 77, 77-1).

**C.    This Court Should Order Sanctions Pursuant to Rule 11, 28 U.S.C. Section 1927, and/or the Court's Inherent Powers**

Counsel's brazen false allegations, which they have doubled-down on instead of correcting, and have thus far successfully relied upon to avoid mandatory arbitration, show that their misconduct will continue undeterred.  The Court should issue sanctions, whether under Rule 11, Section 1927 or its inherent power.  While Rule 11 violations focus on the papers, sanctions under Section 1927 and the court's inherent powers may focus on the misconduct.

For example, a court may sanction counsel for repeatedly misstating and omitting critical facts, especially when they contradict the record. *See, e.g.*, *Moser v. Bret Harte Union High Sch. Dist.*, 366 F. Supp. 2d 944, 976, 978 (E.D. Cal. 2005). One court found this behavior "insidious" because the misinformation was "provided by an officer of the court." *Id.* It explained this unnecessary misconduct places an undue burden on the parties and the court, and that the repeated behavior could not be "anything other than a bad faith attempt to mislead the [c]ourt, obscure the real facts of the case, to obstruct, and/or to harass." *Id.* Accordingly, the court inferred bad faith and found sanctions could be imposed under Rule 11, § 1927, and the court's inherent authority. *Id.* at 979.

Here, the Ellis George and K&L Gates attorneys should be sanctioned for repeatedly presenting and continuing to advance false statements that contradict their own personal experience and records establishing that the Laceys retained Ellis George *pro bono*.[9] (*See* COE Ex. Q, 15, 26, 28).

**D.    State Farm Requests its Fees and Costs in Defending This Action**

"In a case like this, where the original complaint is the improper pleading, all attorney fees reasonably incurred in defending against the claims asserted in the complaint form the proper basis for sanctions." *Gaskell v. Weir*, 10 F.3d 626, 628-29 (9th Cir. 1993) (affirming sanctions for certifying allegations that "were so baseless that the complaint was frivolous) (citation omitted); *see also Roe v. Rivian Auto. LLC*, 2020 WL 8812913, at *3 (C.D. Cal. Dec. 11, 2020) (awarding reasonable fees and costs incurred to defend against frivolous complaint); *Havensight Cap. LLC v. Nike, Inc.*, 2015 WL 13899007 (C.D. Cal. Sept. 22, 2015), *aff'd*, 891 F.3d 1167 (9th Cir. 2018) (same). Moreover, courts may impose sanctions for perpetuating factual misrepresentations that "wrongfully proliferate[] litigation," even if the entire suit is not frivolous. *Caputo v. Tungsten Heavy*

---

[9] *See supra* Sections A (false allegations) and B (continued misrepresentations).

*Powder, Inc.*, 96 F.4th 1111, 1153 (9th Cir. 2024) .  As the Ninth Circuit has recognized, "'the mere existence of one non-frivolous claim' in a complaint does not immunize it from Rule 11 sanctions." *Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005).

In *Uziel v. Superior Court*, the Central District awarded sanctions for all fees incurred to defend an action because the plaintiff's Rule 11 violations "infected" the entire action.  2021 WL 5830040, at *5 (C.D. Cal. Oct. 19, 2021), *adopting report and recommendation*, 2021 WL 5830036 (C.D. Cal. Nov. 22, 2021), *aff'd*, 2023 WL 4311631 (9th Cir. July 3, 2023).  The court emphasized that the factual allegations, which served as "cornerstones" of plaintiff's legal theory, "were unsupported, and even contradicted by the record of underlying proceedings."  *Id.* at *5.

Here, Ellis George and K&L Gates attorneys falsely alleged in the Complaint and have argued throughout this lawsuit that Mrs. Lacey owes more than $1 million to Ellis George.  They intentionally and misleadingly recast this fee dispute into a tort action based on purported emotional distress arising from a fear of owing Ellis George attorneys' fees that they knew were never owed.  (*See* COE Ex. Q, 26-27 (opining that counsel "violated their duties of honesty" by presenting material false statements of fact in their papers, discovery, and appearances).  Their refusal to withdraw and correct these wrongful assertions infected the entire proceeding, as reflected by the Special Master's apparent reliance on them in finding arbitration "premature."  (ECF 78 at 1, 9 ("The complaint adequately and colorably pled tort damages that are distinct from a bare claim of unpaid lawyer fees."); *Id.* at 9 n.6 ("Plaintiff's allegations affect the consideration of the gravamen of the federal action.")).  But the extent to which the Special Master or the Court actually relied on the false allegations of a nonexistent attorneys' fees debt to Ellis George related to the defense of the *Abdullah* Action is *not* determinative here.  What matters here is the fact that counsel made those allegations, and refused to correct them.  Had those

false allegations not appeared in the Complaint, the entire action may have been litigated differently and the arbitration question already resolved.

Accordingly, State Farm requests an Order striking the false allegations in the Complaint and ordering Ellis George and K&L Gates to pay its reasonable fees and costs incurred in defending this action.  (Hoffman Dec., ¶ 23).  At minimum, the Court should award the fees incurred to defend and redress these misrepresentations, which will likely exceed $20,000 in bringing this Motion alone, and any other appropriate sanctions as determined by the Court.  (Hoffman Dec., ¶ 24).

## V.  CONCLUSION

State Farm requests that the Court grant this Motion, strike the false allegations in the Complaint, and assess sanctions against Ellis George, K&L Gates, and/or their attorneys, jointly and severally, for its reasonable attorneys' fees incurred in defending this suit, or bringing this Motion, or in some other amount pursuant to Rule 11, Section 1927 and/or the Court's inherent powers to deter comparable misconduct.

Dated:  April 22, 2025          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  _____
                    */s/ Jennifer M. Hoffman*
                JENNIFER M. HOFFMAN
                ANDRE J. CRONTHALL
                ANDREA S. WARREN
                JEFFREY S. CROWE

                Attorneys for Defendant
                STATE FARM GENERAL
                INSURANCE COMPANY

1

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for State Farm, certifies that this brief contains 6,957 words, which complies with the word limit of L.R. 11-6.1.

Dated:  March 31, 2025        By:        _/s/ Jennifer M. Hoffman_
                                          JENNIFER M. HOFFMAN
                                          ANDRE J. CRONTHALL
                                          ANDREA S. WARREN
                                          JEFFREY S. CROWE

                                          Attorneys for Defendant
                                          STATE FARM GENERAL
                                          INSURANCE COMPANY

SMRH:4916-7575-0440.5

<u>PROOF OF SERVICE</u>

<u>STATE OF CALIFORNIA, COUNTY OF LOS ANGELES</u>

At the time of service, I was over 18 years of age and **not a party to this action**.  I am employed in the County of Los Angeles, State of California.  My business address is 350 South Grand Avenue, 40th Floor, Los Angeles, California 90071-3460.

On March 31, 2025, I served true copies of the following document(s) described as **INDEX AND COMPENDIUM OF EXHIBITS IN SUPPORT OF DEFENDANT STATE FARM GENERAL INSURANCE COMPANY'S MOTION FOR SANCTIONS** on

**Eric M. George, Esq.**                    *Attorneys for Plaintiff*
**Trent Copeland, Esq.**
**ELLIS GEORGE LLP**
**2121 Avenue of the Stars, 30th Floor**
**Los Angeles, CA  90067**
**egeorge@ellisgeorge.com**
**tcopeland@ellisgeorge.com**
**kmccormick@ellisgeorge.com**

**Ryan Q. Keech, Esq.**                    *Attorneys for Plaintiff*
**Kevin A. Asfour, Esq.**
**Zachary T. Timm, Esq.**
**Keian Vahedy, Esq..**
**K&L GATES LLP**
**10100 Santa Monica Boulevard, 8th Floor**
**Los Angeles, CA  90067**
**Ryan.Keech@klgates.com**
**Kevin.Asfour@klgates.com**
**Zach.Timm@klgates.com**
**keian.Vahedy@klgates.com**
**klgateseservice@klgates.com**
**Jonathan.randolph@klgates.com**
**Litigation.docketing@klgates.com**

☒    **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address gpasquale@sheppardmullin.com to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒    **BY HAND DELIVERY:**  I caused such envelope(s) to be delivered by hand to the office of the addressee(s).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

-1-                                    Case No. 2:24-cv-05205-FMO-MAA

SMRH:4900-8212-0200.5

1         Executed on March 31, 2025, at Los Angeles, California.

2

3    057V-391525

               Gino Pasquale

SMRH:4900-8212-0200.5